# EXHIBIT 1

# Photo Sheet

Insured:   JEFFREY COVINGTON

Claim #:   1002-67-8208

Policy #:   HO54008561

**CSAA Fire & Casualty Insurance Company**
**P.O. Box 24523**
**Oakland, CA 94623-1524**
**Phone:  1(888)335-2722**
**Fax:  1(877)548-1610**



**Interior/Furnace Room - 19**

Date Taken: 5/25/2018

Taken By:   Alan Heise

normal



**Interior/Furnace Room - 20**

Date Taken: 5/25/2018

Taken By:   Alan Heise

multiple water stains

CSAA_COVINGTON 0033

# Photo Sheet

**CSAA Fire & Casualty Insurance Company**

**P.O. Box 24523**
**Oakland, CA 94623-1524**
**Phone:  1(888)335-2722**
**Fax:  1(877)548-1610**

Insured:   JEFFREY COVINGTON

Claim #:   1002-67-8208

Policy #:   HO54008561



**Interior/Furnace Room - 29**

Date Taken: 5/25/2018

Taken By:   Alan

left, multiple water stains on drywall and
subfloor, mold is evident



**Interior/Furnace Room - 30**

Date Taken: 5/25/2018

Taken By:   Alan Heise

left front closeup

CSAA_COVINGTON 0038

# Photo Sheet

**CSAA Fire & Casualty Insurance Company**
P.O. Box 24523
Oakland, CA 94623-1524
Phone: 1(888)335-2722
Fax: 1(877)548-1610

Insured:   JEFFREY COVINGTON

Claim #:   1002-67-8208

Policy #:   HO54008561



**Interior/Bedroom 1 - 129**

Date Taken: 5/25/2018

Taken By:   Alan Heise

no moisture barrier is evident and it appears the bamboo was installed over the structural subfloor



**Interior/Bedroom 1 - 130**

Date Taken: 5/25/2018

Taken By:   Alan Heise

subfloor appears to have been or currently be wet based on multiple water stains and mold

CSAA_COVINGTON 0088

# Photo Sheet

**CSAA Fire & Casualty Insurance Company**
**P.O. Box 24523**
**Oakland, CA 94623-1524**
**Phone: 1(888)335-2722**
**Fax: 1(877)548-1610**

Insured:     JEFFREY COVINGTON
Claim #:     1002-67-8208
Policy #:    HO54008561



**Interior/Master Bedroom - 255**

Date Taken: 5/25/2018

Taken By:    Alan Heise

near an area along front elevation
crawlspace vents



**Interior/Master Bedroom - 256**

Date Taken: 5/25/2018

Taken By:    Alan Heise

reading appeared to decrease moving
toward the front elevation porch wall

CSAA_COVINGTON 0151

# Photo Sheet

**CSAA Fire & Casualty Insurance Company**
P.O. Box 24523
Oakland, CA 94623-1524
Phone: 1(888)335-2722
Fax: 1(877)548-1610

| | |
|---|---|
| Insured: | JEFFREY COVINGTON |
| Claim #: | 1002-67-8208 |
| Policy #: | HO54008561 |



**Home Exterior/Front Elevation - 281**

Date Taken: 5/25/2018

Taken By:    Alan Heise

downspout venting too close to the exterior wall



**Home Exterior/Front Elevation - 282**

Date Taken: 5/25/2018

Taken By:    Alan Heise

Crawlspace vents on the master bedroom wall near the end table with the lower floor reading.

CSAA_COVINGTON 0164

**Claims Department**
9450 SW Gemini Dr. #39525
Beaverton, OR 97008-7105



Headquarters in Choctaw, Oklahoma

Friday, May 18, 2018

CSAA Fire & Casualty Insurance Company
PO BOX 24523
Oakland CA 94623-1523

Subject:       Contact Letter
               Claim# 1002678208 and Policy# HO5-004008561
               Date of Loss: 08/08/2017, Adjusted: TBD, Re-inspected: TBD

Dear Alan Heise, CSAA Fire & Casualty Insurance Company ("AAA"), and To Whom It May Concern:

We are writing with information for the above-referenced claim.

As an initial matter, the Policy Declarations indicate the insurance is underwritten by AAA Fire & Casualty Insurance Company; however, certain correspondence from your office lists CSAA Fire & Casualty Insurance Company. We have reason to believe CSAA is now assignee of said policy. All correspondence from this point forward shall be construed to be addressed to both AAA Fire & Casualty Insurance Company and CSAA Fire & Casualty Insurance Company jointly ("AAA").

Please be advised that we have been retained by your insured and now represent their interest in a Water loss claim of benefits under AAA Policy# HO5-004008561, which we understand occurred on or about 08/08/2017.

We understand the insured removed excess water and ran fans shortly on or about 08/08/2017 to mitigate their damage. The insured was under the impression the wood floors would completely dry-out on their own and that all the water had been removed, until 05/12/2018 when the insured was advised otherwise (based on moisture meter readings) by a professional claims adjuster. The insured was also unaware until 05/12/2018 that said Water loss was likely covered by insurance, prompting the instant claim.

AAA shall immediately provide us with a Certified Policy Copy and direct further inquiry through our office:

       Claims Department
       9450 SW Gemini Dr. #39525
       Beaverton, OR 97008

Once the Certified Policy Copy is received, we understand AAA may seek to conduct a field inspection. In the meantime, we may submit a Proof of Loss for consideration by AAA. Feel free to call or write with questions or for assistance.

Sincerely,

Ian Rupert
Ian's Enterprise, LLC
(405) 622-8721
Ian@IansEnterprise.com

For Insured Jeffrey Covington and Tammy Covington

Nothing in this letter is intended to be, nor should be construed by you, an estoppel or waiver of any rights, terms, conditions, or defenses to any contract.

***** CONFIDENTIAL: You are hereby notified that any use, disclosure, copying, or distribution of the contents of this information is strictly prohibited and may result in legal action against you. This correspondence and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended recipient/addressee, please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. *****

CSAA_COVINGTON 0191

DocuSign Envelope ID: 0AF9F1C7-A2AA-47C8-9969-77CB83801981

v15.10

## NOTICE OF LOSS, NOTICE OF REPRESENTATION, AND LOSS DRAFTS ADDENDUM

**Insured:** Jeffrey Covington and Tammy Covington

**Adjuster:** Ian Rupert dba  Ian's Enterprise, LLC

**NOTICE OF LOSS.**    To:  AAA Fire & Casualty Ins. Co

   **Insured** engages **Adjuster** to provide services consisting of

   Insurance Claims Adjusting on behalf of Named Insured  Jeffrey Covington and Tammy Covington

   under Policy#  HO5-004008561    issued by  AAA Fire & Casualty Ins. Co.    for a  Water    loss

   sustained at  17121 SE 59th St, Choctaw, OK 73020    , (hereinafter referred to as the "**Services Scope**");

### NOTICE OF REPRESENTATION.

   To:  AAA Fire & Casualty Ins. Co

   As insurer for the above-mentioned loss, you are directed to immediately open claim(s) and promptly provide **Adjuster** with a certified copy of the applicable insurance policy(ies). **Insured** hereby retains **Adjuster** to represent **Insured's** interests in the adjustment of said claim(s). **Insured** hereby directs insurer and their representatives communicate directly with **Adjuster**, and immediately cease further direct contact with **Insured**. **Insured** also hereby directs insurer to simultaneously copy **Adjuster** on all correspondence addressed to **Insured**. **Insured** also hereby directs insurer to honor, and **Insured** irrevocably consents to, including **Adjuster** Ian's Enterprise, LLC on all loss drafts insurer issues in the above-mentioned loss, and mailing said drafts and correspondence to **Adjuster** as follows:

                    Claims Department
                    9450 SW Gemini Dr. #39525
                    Beaverton, OR 97008-7105
                    Phone:    (405) 622-8679
                    Fax:       (405) 622-8677
                    E-Mail:    Support@IansEnterprise.com

**LOSS DRAFTS. Insured** and **Adjuster** agree insurer shall, pursuant to the above-mentioned loss, immediately open claim(s) and promptly provide **Adjuster** with a certified copy of the applicable insurance policy(ies). **Insured** hereby retains **Adjuster** to represent **Insured's** interests in the adjustment of said claim(s) **Insured** irrevocably assigns to **Adjuster** insurer proceeds to the extent compensation is promised by **Insured** for **Services Scope** related performance, the amount of which is secured by insurer proceeds and the loss location entitling **Adjuster** to a lien, in addition to any other rights and remedies available hereunder this **Agreement**, in equity, or by law. **Insured** hereby authorizes **Adjuster** to endorse **Insured's** name onto any drafts issued in the above-mentioned loss, and to deposit said loss drafts for the benefit of the **Insured** into **Adjuster's** non-interest bearing escrow account, offsetting said loss drafts by any amount due to **Adjuster** by **Insured**. In the event a mortgagee encumbers the loss location and/or becomes named on any loss draft, **Insured** authorizes **Adjuster** to coordinate directly with said mortgagee for the purpose of effectuating prompt release of repair funds; in the event a mortgagee requires repairs be completed prior to their endorsement of any loss draft, **Insured** authorizes **Adjuster** to coordinate directly with said mortgagee for the purpose of obtaining a release for at least the amount owed by **Insured** to **Adjuster**, hereby authorizing and directing said mortgagee to issue payment to **Adjuster** for the amount owed by **Insured**. **Insured** and **Adjuster** agree insurer and insurer's representatives shall: 1) communicate directly with **Adjuster**, and immediately cease further direct contact with **Insured**, 2) simultaneously copy **Adjuster** on all correspondence addressed to **Insured**, and 3) honor, and **Insured** irrevocably consents to, including **Adjuster** Ian's Enterprise, LLC on all loss drafts insurer issues in the above-mentioned loss, and mailing said drafts and correspondence to **Adjuster. LOSS DRAFTS** provision and obligations will survive indefinitely upon termination of this **Agreement**.

This is an Addendum to the **Agreement** executed by **Insured** and **Adjuster** for the **Services Scope** listed above. By signing, the parties agree and consent to amend said **Agreement** to include all of the provisions contained herein.

Insured Signature(s): A _Jeffrey Covington_    B _Tammy Covington_    C _____    D _____

Adjuster Signature: E. _Ian Rupert_    Date Signed by Adjuster: 5/17/2018    Date Signed by Insured: 5/17/2018



**AAA Fire & Casualty Insurance Company**
P.O. Box 24524 Oakland, CA 94623-1524
For c a ms or customer serv ce ca :
**(800) 207-3618**

# Homeowners Policy Declarations

**POLICY NUMBER: HO5 - 004008561**
**TIER: R2**
**RENEWAL DECLARATION**

**LOCATION OF INSURED PROPERTY**
17121 SE 59TH ST
CHOCTAW OK 73020

**AGENCY NAME AND ADDRESS**
AAA OKLAHOMA/100780/BURDINE
044-100780
101 N DOUGLAS BLVD STE Y
MIDWEST CITY OK 73130          (405) 717-8265

**NAMED INSURED AND MAILING ADDRESS**

ɫᵈᵖᵗᵈᵖᵗᵈᵖᵗᵈᵖᵗᵈᵖᵗᵈᵖᵗᵈᵖᵗᵈᵖᵗᵈᵖᵗᵈᵖᵗᵈᵖᵗᵈ

JEFFREY COVINGTON, TAMMY COVINGTON
17121 SE 59TH ST
CHOCTAW OK 73020-5434

| POLICY PERIOD | | |
|---|---|---|
| FROM: 07/30/17 | TO: 07/30/18 | TIME: 12 01 A.M. |

Th s po cy w cont nue for success ve po cy terms as ong as the prem ums requ red are pa d subject to the rate ru es and forms then n effect.

**DESCRIPTION OF PROPERTY**          **PREMIUM TO BE PAID BY**     NSURED

| YR BU L | YR ROOF BU L | CONS RUC ON YPE | PRO CLASS | ROOF YPE | OCCUPANCY | USAGE | # OF RES |
|---|---|---|---|---|---|---|---|
| 1996 | 2010 | BR CK STONE OR MASONRY VENEER | 05 | ASPHALT/F BERGLASS | OWNER | PR MARY | 2 |

**COVERAGES AND LIMITS OF LIABILITY**

nsurance s prov ded on y w th respect to the fo ow ng coverages for wh ch a spec f c m t of ab ty s shown. Subject to a cond t ons of th s po cy.

| | SECTION I | | | SECTION II | |
|---|---|---|---|---|---|
| **A** | **B** | **C** | **D** | **E** | **F** |
| DWELL NG | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL L AB L TY EACH OCCURRENCE | MED CAL PAYMENTS TO OTHERS |
| 191 545 * | 19 155 | 134 082 | 57 464 | 300 000 | 1 000 |

* Your Sect on I coverage m ts may have been changed to ref ect changes n const uct on costs & other matters affect ng rep acement costs

| Deductible - Section I | (In case of loss under Section I, we cover only that part of the loss over the deductible(s)) |
|---|---|
| ALL PERILS $ 5000 | Wind/Hail $ 5000 |

**FORMS AND ENDORSEMENTS**

| NUMBER/ ED T ON DATE | FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUANCE | PREM UM |
|---|---|---|
| HO 04 48 10 00 | OTHER STRUCTURES NCR. L M TS VALUE 20000 | 56.00 |
| HO 04 54 10 00 | EARTHQUAKE (W TH VENEER COVERAGE) DEDUCT BLE 5% | 98.00 |
| AAAEXX 07 14 | NAME CHANGE ENDORSEMENT | NCL. |
| HO 00 05 10 00 | HO5 COMPREHENS VE FORM (10/06) | NCL. |
| HO 04 96 10 00 | NO L AB L TY FOR HOME DAYCARE | NCL. |
| HW A5 00 12 09 | HO 5 AMENDATORY ENDORSEMENT | NCL. |
| HW 01 35 04 07 | SPEC AL PROV S ONS OK | NCL. |
| HW 09 00 12 09 | HO ENHANCE 150% EXTD REPL COST | NCL. |
| HW 09 15 03 08 | V C OUS DOG L AB L TY EXCL | NCL. |
| HW 24 82 05 06 | PERSONAL NJURY | NCL. |

**ADDITIONAL EXPOSURES**

| SW MM NG POOL | SPA/HOT TUB | TRAMPOL NE | WOOD STOVE | # OF L VESTOCK | # DOGS |
|---|---|---|---|---|---|
| N | N | N | N | 0 | 2+ |

| BAS C POL CY PREM UM | $ 1 569.00 |
|---|---|
| ENDORSEMENT PREM UM | $ 154.00 |
| TOTAL POL CY PREM UM | $ 1 723.00 |

**DISCOUNTS**
AAA MEMBERSHIP, COMPANION POLICY.

Counters gnature

_____

Author zed Representat ve

Th s Dec arat on s part of your po cy. It supersedes and contro s anyth ng to the contrary.
It s otherw se subject to a other terms of the po cy.

| HW 02 OK 04 07 | Policy Number: HO5 - 004008561 | Named Insured: JEFFREY COVINGTON | Page 1 of 1 |
|---|---|---|---|

CSAA_COVINGTON 0312

INSURED COPY

f. Water not otherwise excluded;

g. Theft or attempted theft; or

h. Sudden and accidental tearing apart, cracking, burning or bulging of:

(1) A steam or hot water heating system;

(2) An air conditioning or automatic fire protective sprinkler system; or

(3) An appliance for heating water;

2. Dampness, of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

3. Refinishing, renovating or repairing property other than watches, jewelry and furs;

4. Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings equipment and out board engines or motors;

5. Destruction, confiscation or seizure by order of any government or public authority; or

6. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss to property described in Coverage **C** not precluded by any other provision in this policy is covered.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting

debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

29

the extent set forth in **M.** Nuclear Hazard Clause under Section **I** – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

   **a.** Planning, zoning, development, surveying, siting;

   **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **c.** Materials used in repair, construction, renovation or remodeling; or

   **d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

33

CSAA_COVINGTON 0352

**SECTION I – CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

**B. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

34

CSAA_COVINGTON 0353

Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

    **a.** The identity of the policy and the "named insured" shown in the Declarations;

    **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

    **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

    **a.** To make settlement;

    **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

    **c.** With the conduct of suits and attend hearings and trials; and

60

CSAA_COVINGTON 0379



**"Fungi", Wet Or Dry Rot, Or Bacteria**

**a.** $5,000 is the most we will pay regardless of the number of "occurrences" for:

  **(1)** The total of all loss payable under Section I - Property Coverages caused by or consisting of "fungi", wet or dry rot, or bacteria;

  **(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I - Property Coverages;

  **(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

  **(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

**b.** The coverage described in paragraph **a.** above only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

**c.** The amount of $5,000 for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

  **(1)** Number of locations insured under this endorsement; or

  **(2)** Number of occurrences.

**d.** If there is a covered loss or damage to covered property that is not caused by, or does not consist of, in whole or in part, by "fungi", wet or dry rot, or bacteria, the limitations of this Additional Coverage do not apply. If "fungi", wet or dry rot, or bacteria causes an increase in the loss covered by a Peril Insured Against, coverage for such increase in loss is limited to $5,000.

This coverage does not increase the limit of liability applying to the damaged covered property.

**Flood Emergency Assistance**

We will pay up to $3,000 of reasonable and necessary additional living expenses actually incurred by you within four weeks of a loss that is excluded by Section I Exclusions, **A.3** "Water" Damage if the "residence premises" is uninhabitable during that period and the additional living expense is a result of such excluded loss.

No deductible applies to this coverage.

OTHER THAN AS PROVIDED BY ADDITIONAL COVERAGE 16, THIS POLICY DOES NOT PROVIDE FLOOD INSURANCE.

**SECTION I - PERILS INSURED AGAINST**

**A.** Under Coverages **A, B** and **C**

The first paragraph of **2.b.** is deleted and replaced by:

  **b.** Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

Paragraph **2.d** is deleted and replaced by:

  **d.** Constant or repeated seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is deleted and replaced by the following:

  **(3)** Smog, rust or other corrosion;

Paragraph **2.e.(5)** is deleted and replaced by:

  **(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants or "contaminants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**C.** Under Coverage **C** caused by:

Paragraph **1.d.** is deleted and replaced by:

  **d.** Aircraft, vehicles, meaning impact from a vehicle, vandalism and malicious mischief;

CSAA_COVINGTON 0389

## SECTION I - EXCLUSIONS

Paragraph **c.** of **A.1. Ordinance Or Law** is deleted and replaced by the following:

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants or "contaminants".

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**A.2. Earth Movement** is replaced with the following:

Earth Movement, meaning loss of any kind due in whole or in part to any movement of the earth or soil, whether on or off the residence premises and whether combined with water or not, including but not limited to:

(1) earthquake, including land shock waves or tremors of the earth;

(2) landslide, mudslide or mudflow;

(3) subsidence or sinkhole;

(4) volcanic activity, including lava flow and land shock waves or tremors before, during or after a volcanic eruption; or

(5) any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This exclusion A.2 does not apply to loss by theft.

**A.3 "Water" Damage** is replaced with the following:

"Water" Damage means:

a. flood, surface "water", waves, tidal "water", overflow, release or escape of a body of "water" or from a "water" or flood control device, or spray from any of these, whether or not driven by wind;

b. "water" or "water"-borne material, liquid or semi liquid, which backs up through sewers or drains, or which overflows, or is discharged from a sump, sump pump or related equipment; or

c. "water" or "water"-borne material, liquid or semi liquid below the surface of the ground whether occurring naturally or artificially, including "water" which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, spa, hot tub or other structure;

caused by or resulting from intentional or unintentional human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from "water" damage is covered.

The following exclusion is added:

**"Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

**a.** When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

**b.** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I - CONDITIONS

The following is added to paragraph **4.** of **B. Duties After Loss:**

In the event of a "water" loss, you or your representative must immediately, or as soon as practicable, take all reasonable and necessary steps to dry the property and protect the property from contamination of mold or "fungi."

The following condition is added:

**Adjustments to Coverage Limits**

The limits of liability for Coverages **A, B, C** and **D** of this policy, as stated in the Declarations, represent our maximum limit of liability, except that adjustments may be made upon each renewal date of this policy. The maximum limit of liability for Coverage **A** may be adjusted upon renewal of this policy to an amount we estimate to be 100% of the replacement cost of the dwelling. However, we will not lower the Coverage A limit without your consent. The maximum limit of liability for Coverages **B, C** and **D** will be adjusted upon each renewal date in the same proportion as the adjustment to Coverage **A**.

The adjusted limits of liability for Coverages **A, B, C** and **D** will be shown in the Declarations and rounded to the next highest $100.

INSURED COPY

CSAA_COVINGTON 0390



CSAA Fire & Casualty Insurance Company
P.O. Box 24523
Oakland, CA 94623-1523



**OUR CLAIM INFORMATION**

| | |
|---|---|
| Our Claim number | 1002–67–8208 |
| Our Policyholder | JEFFREY COVINGTON |
| Date of incident | May 12, 2018 |

IAN'S ENTERPRISE, LLC
9450 SW GEMINI DR #39525
BEAVERTON, OR 97008



Danielle Perez
**405–493–7018**

Regular Claims Center hours are
Monday – Friday 8:00 AM – 7:00 PM,
Central Time

July 10, 2018

Dear Ian's Enterprise, Llc:

Thank you for choosing AAA and trusting us with your insurance needs.  We have completed our review of your claim, and, based on the facts of the review, concluded that your policy does not provide coverage for your claim.

## What you need to know

**Results of our claim review**

In investigating the cause of damage, we contacted Alan Heise, AAA Field Adjuster, Matthew Amick with Hi  Tech Plumbing, and Danny Griffin with Boardwalk Flooring, to assess the damage to your property. After conducting an inspection, a report was prepared which includes detailed findings of the inspection and a determination that the damage was caused by improper construction as there is not enough ventilation in the crawlspace along with a lack of maintenance to the AC condenser drain line allowing for constant or repeated seepage of leakage of water over a period of weeks, months, or years resulting in visible water damage throughout the home and mold in the furnace room.

Your policy includes coverage for the cost of repairing physical damage to your home and its other structures, if applicable, unless the damage or its cause is excluded or excepted from coverage by one or more provisions in the policy. Unfortunately, the damage detailed in the report is specifically mentioned in your policy as being excluded and/or excepted from coverage. Because of this, we are unable to provide coverage for this loss.

For your reference, below is the specific section(s) of your policy that pertains to this claim.

SECTION I   PERILS INSURED AGAINST

We insure against risk of direct physical loss to property described in Coverages  A, B and C.

We do not insure, however, for loss:

A.  Under Coverages A, B and C:

1. Excluded under Section I   Exclusions;

2. Caused by:

...

    d. Constant or repeated seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

...

SECTION I   EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**Please turn over**



**405-749-Wood (9663)   www.boardwalkfloorco.com**

Like Us On



yelp

houzz

**INSPECTION REPORT**
**VIA EMAIL:  alan.heise@csaa.com**

July 6, 2018

Alan Heise
Homeowner Field Claims
CSAA Insurance Group, a AAA Insurer

RE:    1721 SE 59th St

Dear Mr. Heise:

We have inspected the above referenced property and found high moisture readings throughout from 17% - 34%.  The Polyurethane Top Coat on the prefinished engineered Bamboo flooring is bubbling, due to the moisture in the flooring.  There is water damage area at the hall due to an AC leak, with loose spots and movement, due to lack of nails.

Without removing some of the flooring it is difficult to know if there is a proper moisture barrier.  We suspect, however, that the AC was leaking for quite some time causing water to get trapped under the flooring and between the barrier, if any.  With this high a moisture content, when the wood is removed, you will more than likely see the moisture.

My recommendation is total replacement.

Feel free to contact me with any questions you may have.

Kind Regards,

Danny Griffin, Owner

**10117 S Morgan, Mustang, OK  73064 · OFC PH/FX (405) 749-wood**
**Danny Griffin (405) 425-9976 · Sheri Calabrisi (405) 240-4043 · scal@boardwalkfloorco.com**

CSAA_COVINGTON 0449

# Hi-Tech Plumbing & Leak Detect, Inc.

3712 E 2nd Street                                      Phone (405) 340-2000
Edmond, OK 73034                                       FTID# 73-1606439

Date: June 1, 2018                                     Inv # 42015
AAA Insurance – Alana Hare                             Jeffrey Covington
(888) 335-2722 ext. 10222                              17121 SE 59th
Claim # 1002-67-8208                                   Choctaw, OK 73720

We were hired by AAA Insurance to perform leak detection. The Insured reports that the condensation drain overflowed and damaged the wood floor.

I performed a video inspection of the drain system through the vents on the roof and through the main drain clean out in the yard on the south and east end of the home. I found no bellies or clogs in the drain system at this time. I found the vent on the west end of the home to be installed directly into an old p-trap that I believe was the old clothes washer drain.

I crawled under the home and inspected the plumbing under the home. I found no leaks on the water system at this time. I found the master bathroom toilet flange seal to be leaking above the subfloor causing a small piece of the sub floor to get wet. I also found the humidity level to be so high that the PVC building condensation drain is sweating and dripping water under the home. I found that the building condensation drain is not sweating above the subfloor. While inspecting the condensation drain I found the condensation drain to be improperly installed by using an S-trap. I found a running trap in the condensation drain under the home. I recommend removing these two traps and installing the correct trap in the line under the home, and moving the drain from the fresh air plenum back into the wall. While performing the inspection I found lots of mold and mildew to be growing on the trusses, on the brick bracing, and on the stem walls under the original portion of the home. I also found the mold and mildew to extend two feet into the east room add on portion of the home. I found the dirt under the home to be damp in the majority of the crawl space except under the east add on and close to the crawl space access. The remaining trusses and subfloor in the east add on are showing less mold and mildew. After inspecting the crawl space and plumbing I walked the perimeter of the home and found only two vents for the crawl space of the home. I also found more than one section of them stem wall that has been filled with brick where a crawl space vent could have been located. I believe that the improper installation of the condensation drain contributed to the clogging and overflowing over the HVAC drain into the home. I also believe that the lack of proper crawl space ventilation has caused high humidity and condensation on the wood under the home.

**Option 1:** Cut out the p-trap under the home and in the fresh air plenum, screw a piece of foam board down to the subfloor in the fresh air plenum, cut a hole in the subfloor and base plate in the wall between the fresh air plenum and the dining room, relocate the drain, and install a new p-trap under the home and a new stand pipe. **$1250**

**Thank You,**                          Leak Detection                    **$275.00**
**Matthew Amick**                       Two Way Trip Charge               **$40.00**
**Leak Detection Specialist**           (Choctaw)
**Journeyman Plumber, OK Lic # 091334** Total                            **$315.00**
                                        Please pay $315.00 from the invoice
                                        as an investigative claim expense.

CSAA_COVINGTON 0450

# ENGINEERING DAMAGE ASSESSMENT
# REPORT AND REPAIR OPINIONS

*prepared for*

**Ian's Enterprise, LLC**

*regarding*

**Covington Residence**
**17121 SE 59th Street**
**Choctaw, OK 73020**



Authored by: Don Ray Sharp, PE
Report date: July 6th, 2018
Revised: July 9th, 2018

This report was prepared for the use and dissemination by Ian's Enterprise LLC. The scope of this report is limited to the areas of the subject premises that reportedly sustained damage. The author has no responsibility for the control, correction, continuation or modification of conditions or practices except as required or expected by professional licensure. Not all areas or structures on subject premises were accessed and therefore the author does not purport to report all hazards on the property. Further, the author takes no responsibility for any injury, damage or hazard which occurred on the subject premises and which was sustained prior to his visitation and subsequent assessment.

CSAA_COVINGTON 0464

17121 SE 59th Street, Choctaw, OK 73020                                        July 9th, 2018

As per our June 4th, 2018 authorization, an inspection was completed on June 6th, 2018 at 17121 Southeast 59th Street in Choctaw, Oklahoma at a single family dwelling (as seen in Photo 1 and Photo 2).

**REPORTED INCIDENT**
The property owner has stated that circa August 2017 a water discharge was discovered which had apparently leaked from the central HVAC unit condensate line. The water discharge damaged flooring throughout the residence. The month of August 2017 was especially humid and wet (as illustrated in Photo 3); Smith Brothers Heat & Air has provided a written Cause of Loss letter stating that in such conditions, an air conditioner can produce gallons of condensate per hour.

**PROPERTY DESCRIPTION**
The subject property is a single family dwelling located at Southeast 59th Street in Choctaw, Oklahoma County, Oklahoma. The dwelling is a wood framed, single story building with vinyl siding and brick veneer exterior with CMU (concrete masonry unit) footings. The residence is situated on a 4.65 acre parcel. Per tax records, the primary structure (as seen in Photo 4) encloses approximately 1988 sq-feet and was constructed in 2001. County records estimate a 2018 market value of $204,500 for the residence. The property is jointly owned by Jeffery and Tammy Covington.

Per USGS soil maps (as shown in Photo 5), the soils in the area are classified as Stephenville-Darsil complex (a Class C Soil group profiled by loamy sand with a water table depth greater than 80-inches and a bedrock depth at an expected 17 to 27-inches).

**OBSERVATIONS**
The subject appliance that caused the water discharge is an American Standard HVAC unit (as shown in Photo 6). The area beneath the HVAC unit shows evidence of water seepage along the framing (as shown in Photo 7) and water damage to the utility closet flooring (as shown in Photo 8). Additionally, there is minor drywall damage evident.

Surface damage to the flooring is seen through approximately 30-40% of the dwelling. This damage includes delamination and spalling of the wood finish (as shown in Photo 9) as well as warping and gaps within the flooring. The flooring was not glued into place over the subfloor and gaps existed been perimeter elements at the baseboard and the sheetrock of the walls.

During inspection, the crawlspace was extremely humid and evidence of mildew and mold was witnessed in the subfloor, and to a lesser extent in the floor joists (as seen in Photo 10, 11 and 12).

**CONCLUSIONS AND OPINIONS**
HVAC condensate lines can easily be clogged with microbial growth (which forms a biofilm within the pipe), especially if the line is laid at too flat of a slope. While the clog was evidently corrected some time ago, there is definite evidence of water flow along the wall and framing of the utility closet. This water discharge would pool on the utility closet floor (explaining the extensive water damage in that area). Because the surface flooring was not glued, this water flow would spread out in the voids between the finish floor and the subfloor and would continue until being absorbed into the wood or seeping into the crawlspace below.

As the wood layers absorbed the water, the finish floor would swell. Because the hardwood surface was constrained laterally, the wood elements expanded vertically. Once the underlying cause of the water damage was corrected, these wooden elements began to dry, contracting both vertically and horizontally (explaining the cracks and gaps in the flooring, in the opinion of this author). As the surface layers dried, the escaping moisture created a loss of finish adhesion, causing the delamination damage witnessed.

The month of August was especially wet and humid in 2017. The condensate draining from a HVAC unit is directly related to the relative humidity. However, the humidity levels recorded by the National

17121 SE 59th Street, Choctaw, OK 73020                                          July 9th, 2018

Weather Surface would not be expected to produce the levels of condensate required for the widespread damage witnessed in the residence. The engineer estimates that 110-120 gallons of water would be required, at minimum, to account for the deterioration witnessed. While this is not impossible over the course of 1 day, it is not likely. This author believes that, given the weather conditions and the size of the unit, this particular air conditioner would produce 0.50-0.75 gallons per hour (roughly 15 gallons per day).

It is the opinion of this author that the damage occurred over multiple days (and possibly several weeks). The engineer believes that once the clog manifested in the drain line of the HVAC, the property owners was oblivious to the water flow for some time. It was only after the subfloor had become fully saturated that the water discharge backed up enough to become evident on the surface. It is likely that during this time, there was continuous standing water in the utility closet, seeping into the spaces between the surface and subfloor; unless the owners had reason to open the utility closet, they would have remained oblivious to the ongoing damage.

**ENGINEER'S OPINION OF REPAIR AND MITIGATION**
In the opinion of the engineer, the surface flooring will continue to deteriorate as the elements lose moisture content. The subfloor is contaminated with white mold and the engineer encourages replacement to prevent any health issues which may arise for the residents, as well as forestall the development of black mold (which is a much greater health concern). Additionally, structural elements supporting the subfloor should be surface cleaned and sealed with a polymer coating to prevent future wood rot.

To prevent reoccurrence, the property owner is encouraged to have the drain pipe relaid at positive slope. Additionally (or alternately), a small amount of bleach (or other microbial disinfectant) can be poured into the drain line every couple of months while the HVAC is in seasonal use. Also, before the new flooring is installed, all structural elements and the crawlspace need to be thoroughly dried. Further, it is advised that as part of the suggested repairs, the surface floor is glued to subfloor.


Thank you for the opportunity to provide these professional engineering services on this matter and the issuance of this report concludes the requested services to date. Should additional information become available, I reserve the right to revise my report based on the discovery of such additional information.

If there are any questions, comments or concerns regarding this report, or in regards to the conclusions contained within it, please do not hesitate to contact this office.


Respectfully submitted,



Don Ray Sharp, PE
Professional Engineer

17121 SE 59th Street, Choctaw, OK 73020                                    July 9th, 2018



Photo 1: Subject Property – Single family dwelling



Photo 2: Subject Property – Location Map

CSAA_COVINGTON 0467

**17121 SE 59th Street, Choctaw, OK 73020**                                     **July 9th, 2018**



Photo 3: Recorded August humidity levels for OKC Metro area



Photo 4: Tax records of residence areas for subject property



**Photo 5: USGS Soil Map of subject property**



**Photo 6: Central HVAC of Subject Property**



**Photo 7: Water stains under HVAC unit along framing**



**Photo 8: Water damage under central HVAC**



**Photo 9: Delamination of wood finish and warping**

**17121 SE 59th Street, Choctaw, OK 73020**                    **July 9th, 2018**



Photo 10: Water damage and mold within the crawlspace



Photo 11: Water damage, mold ad rusty pipe within the crawlspace



Photo 12: Floor beam support footing within the crawlspace

CSAA_COVINGTON 0471



P.O. Box 24523
Oakland, CA 94623-1523

Phone   888.335.2722
Fax      877.548.1610

July 19, 2018


IAN'S ENTERPRISE, LLC
9450 SW GEMINI DR #39525
BEAVERTON, OR 97008


Re:  Insured:        JEFFREY COVINGTON
     Claim No.:      1002-67-8208
     Date of Loss:   August 08, 2017

Dear Ian's Enterprise, LLC:

Please accept this letter as a response to your letter dated July 10, 2018.

We have reviewed the additional information you supplied along with the engineer report. After careful review of this information, there was no new information that was presented to indicate our findings were incorrect. The engineer report that was provided did not provide any further information and only further stated that the damages were present for an extended period of time which was already noted by our experts.

A copy of the leak detection report and the flooring report were provided to you.

After review of the newly presented information, our decision for no coverage under the policy will stand and we are unable to extend coverage for this loss.

If you have any additional information, please send that in for review.

Sincerely,

*Danielle Perez*

Danielle Perez
Claims Representative
Phone: 405-493-7018


**Policy issued by CSAA Fire & Casualty Insurance Company**

CSAA_COVINGTON 0606

User: RPA Bot Twenty four

Claim: 1002-67-8208

IB call from FS Alan

Alan called me he is trying to contact the customer he called in, and I tried to conference the customer in so he can get inspection done, went to vm, lvm that FS is trying to contact him please call him back. FS . left VM also for contact, sent mitigation letter FS sent contact letter via email.

-Heather Davis (05/18/2018 08:05 AM)

Water Report

Reviewed water report. Appears no subro for clogged drain line. If OA invest determines there is a responsible third party, OA is responsible for referral to subro.

-Charleen Wols (05/17/2018 07:58 AM)

ASSIGNMENT ACKNOWLEDGEMENT

Assignment was received on 05-16-2018. I phoned INSUED JEFFREY COVINGTON on 05-17-2018 at 8:30 AM CST. I lvmtcb on 405 923 6033. Email contact request was sent through CAS to jtcovington@live.com. Policy Inception: 07/30/2016 Prior Claims-- AAA/ISO: COVINGTON,TAMMY 17121 SE 59TH CHOCTAW OK 73020 Insured 05/10/2010 METROPOLITAN PROPERTY AND CASUALTY INS CO JDA3147500 Homeowners 4279571:TORNADO CAUSED DAMAGE TO POARCH, ROOF IS M

-Alan Heise (05/17/2018 06:47 AM)

initial contact

***FNOL*** INITIAL CONTACT Opened and Acknowledged Claim with: Jeffrey Covington INSURED INFORMATION VERIFIED: Named Insured's: Jeffrey Covington Policy #:HO54008561 DOL: 05/12/2018 Time of Loss:02:00 pm Address: 17121 SE 59TH ST, CHOCTAW, OK 73020 Phone: 405-923-6033 - Cell Email: jtcovington@live.com FACTS OF LOSS: sts that the hot water heater drain and the AC drain are on the same drain and grease from the kitchen in September approx. clogged the line and water from the AC has drained under the floor this entire time. He wouldn't have known except for his brother is a public adjuster and took moisture readings sts that the water is under the entire floor. This is continuous and long term leakage from customer's explanation. DOL is incorrect, it would be sometime in September, he did not know the date. Sts no plumber was called he cleared the line sts the garage hot water drain still backs up and runs out the garage about once a year. I can neither confirm nor deny coverages until we have inspected the damages completed estimates and photos. Advised he needed to contact water mitigation company to start remediation asap before damages are worse, also advised that he needed to have drain fixed to prevent this from happening. *** Is Mitigation required? yes, he will contact Water Mit company Yes or No PP Damage: No TIME FRAME/ DURATION: happened in September and water has been there since that time. Suspected Cause of Loss: Drain Backup Date of Occurrence: September, he has does

Page 14

07/26/2019 09:16 PM

CSAA_COVINGTON 0607

Claim: 1002-67-8208

User: RPA Bot Twenty four

## Claim Status
## General Status

| Loss Type | Property |
|---|---|

not have exact date. Date Damage Noticed: mother's day when his brother noticed the blistering on the floor if late reporting why: Subrogation: Can you retain the part? FS or IA will pick up and keep. Policy Type: HOS Mortgage Company: owns it outright. No mtg. Prior Claims? N/A ---------------------- ITEMS REVIEWED WITH INSURED: Deductible Applies: Advised Insured that Deductible of $5000 applies to the covered loss. Copy and Paste all Additional Endorsements: Was this explained and did you note insureds acceptance? Advised insured of any special limits of liability and note the insured acceptance. INSPECTION / EXPECTATIONS: We have to complete an inspection first to determine the exact cause, scope and resulting damages involved in your loss. Once the inspection is complete then we can confirm what coverage applies under your policy. Give TIMELINE: Field will call in 1 – 2 business days - Advised insured that O/A will follow up within 8 days. I will be sending you a letter acknowledging your claim. The letter will show the total amount of coverages and your deductible. If you have any questions regarding that letter please feel free to call me. Follow up e-mail sent
-Heather Davis (05/16/2018 07:22 AM)

FNOL
Spoke with: Jeff covington-insured Person filing the claim and relationship if not the insured
Best contact number: 405-923-6033 cell Email Address: Jfcovington@live.com Loss location:
home 17121 SE 59TH ST, CHOCTAW, OK 73020 Policy type: HOS Deductible: $5000
******************************************** Summary of loss: insured advised
central air conditioner drain backed up and leaked from hall closet, insured advised it was a significant
amount of water, he cleaned up the excess water and can see the clear coat has blistered but there
is still water underneath floor, insureds brother is a public adjuster and he took a moisture reading
around the home and discovered there is water under the floors throughout the home, purchased
home in 1993, wood floors put in 2010 1 story home When did the loss happen? 05/12/2018 02:00 PM
*********************************************** ***REVIEWED WITH THE INSURED***
*********************************************** REVIEWED WITH THE INSURED***
Service Agent: Your policy provides $191,545 Coverage with a $5000 Deductible.
-Jordan Washington (05/15/2018 07:56 AM)

At this time, I cannot confirm or deny coverage until we have had a chance to inspect the damages.
Your adjuster will contact you by the end of the next business day to discuss your claim and potential
coverages in further details. Provided the claims number, adjusters name and contact number.
-Jordan Washington (05/15/2018 07:46 AM)

07/26/2019 09:16 PM

Claim: 1002-67-8208

User: RPA Bot Twenty four

O/B call to PA

O/B call to PA Ian @ 405-622-8721 advised that we have recd all of the inspection results back and there is no coverage for this loss. Ian advised that he wants a copy of the reports. Advised I will see if I can release those reports and send those over. IA states that there is an engineer that has indicated a different loss. Advised him to send that report in for review. IA has confirmed that DOL is August 8, 2017. Mailed denial letter to PA.
-Danielle Perez (07/09/2018 02:27 PM)

Interim- Supervisor

agree with OA's assessment approved denial letter
-Mary Jensen (07/09/2018 10:31 AM)

CLOSING MEMO/AUTHORITY REQUEST
CLOSING MEMO/AUTHORITY REQUEST Summary of Claim: Insd reported a water backup from the air conditioner causing damage to the wood floor. Insd hired a PA to assist with the claim. FA inspected the property and determined some addl research was needed. We had a leak detection company and a wood flooring expert inspect the home. FA, leak detection, and flooring expert have all found that the damage has been caused by a leak that has occurred multiple times over a period of months and is due to improper ventilation of the crawlspace. There is also a potential that there is no moisture barrier under the wood floor.  Cause of Loss: improper construction Cause Determined By: FA, Hi-Tech, & Boardwalk flooring Estimate Written By: N/A Policy Form/Applicable Endorsement(s):   Coverage Analysis: There is no coverage for this loss as the cause of loss is due to improper construction and constant or repeated seepage or leakage. Drafting a full denial letter. Pending: Denial letter approval.
-Danielle Perez (07/09/2018 08:13 AM)

INSPECTION AND CAUSE OF LOSS

Upon arriving at my inspection, I set expectations and informed the parties involved that I would be their primary point of contact for all repair-related activities. I inspected the loss on 05-25-2018 with Public Adjuster Ian Rupert and contractors Duane Smith with Smith Brothers Heat and Air and Sean Agha with Premier Restoration at 9021 SUN COUNTRY DR, OKLAHOMA CITY, OK 73130. The cause of loss was pending further investigation after the AAA Inspection. I inspected every room in the home and took moisture readings in multiple areas. Both contractors explained they believed the loss origin to be an overflow from the furnace room condensation drain due to a soft clog in the kitchen drain line. The PA confirmed this based on limited information he stated he received from the policy holder Jeffrey Covington. PA and contractor statements were previously received and are in the claim documents. I asked some specific questions about the loss discovery and the insured's pursuit of mitigation services.

CSAA_COVINGTON 0663

Claim: 1002-67-8208

The PA stated the insured, Jeffrey, discovered water on the floor in August 2017 when he arrived home from work. The insured went to work AM on the date of discovery and returned home at approximately 6:30 PM on the same day. The PA stated the insured cleaned up visible water in multiple rooms and put some fans in some areas. The insured did not contact professional mitigation services on the date of discovery. I asked for the date of home construction. The PA was not sure. I asked for date of the floor installation. PA did not have this information, but stated the insured has been in the home for 15 years and has conducted some remodeling. The PA stated the insured attempted to clear a clog from the kitchen line. The PA was not sure what the insured specifically did or when there was an attempt to clear the line. A clog was assumed to be the cause. No leak detection had been contacted by either the insured, PA or contractors. The PA stated the kitchen sink and dishwasher are on the same drain line as the furnace room. He stated a clog in the kitchen line may have resulted in the overflow from the furnace condensation drain. Both contractors stated they believed all flooring damage throughout the home to be related to a single overflow occurrence from the furnace drain in August 2017. Mold was discovered inside the furnace room return under the furnace stand. Multiple water rings were evident on framing, subfloor and drywall. It appears possible multiple overflows of varying volume may have occurred. The subfloor was in generally poor condition under the furnace stand. Damage was evident throughout the home to prefinished solid bamboo floor. The insured had previously detached baseboards in bedroom 1 on the common wall with the furnace room and in hallway two which provided partial cross section views of floor layers. It appears the bamboo floor was installed directly over the structural subfloor and no vapor barrier was present. Crawlspace photos were received from the Public Adjuster and do not show any vapor barrier to be present on the underside of the subfloor or on the ground. Although flooring damage was found throughout the home, limited baseboard or other damage was found to indicate a large volume of water escaped the generally centrally located furnace room and ran through multiple rooms and doorways. Damage typically found in homes after large water leaks to other items such as cabinets, drywall, doors, door jambs, casing, baseboards and personal property were not found in proportion to the floor damage or claimed by the insured's public adjuster. I contacted plumbing company Hi-Tech Plumbing and Leak Detection in Edmond, OK to perform a leak detection by inspecting the crawlspace and fixtures and running cameras through drain lines. Their report has been received and is located in the claim documents. Additionally, I contacted flooring company Boardwalk Flooring for information on the bamboo floor installation and damage. Their report has been received and was sent to the senior adjuster. After inspection of the home and review of Hi-Tech Plumbing and Leak Detection and Boardwalk Flooring reports, it appears the cause of the majority of the floor damage throughout the home is due to a lack of moisture barriers and inadequate crawlspace ventilation. It appears humidity in the crawlspace caused general swelling or expansion of the wood floor throughout the home. During drier seasons it appears the floor has contracted, but the polyurethane finish was damaged creating a bubbled and cracked appearance in many areas. Moisture readings were found to be elevated in most areas of the home, however, some drier areas specifically in the master bedroom were very near exterior crawlspace vents. This appears to corroborate the conclusion the crawlspace has inadequate ventilation. The report by Hi-Tech Plumbing appears to indicate this may have been affected by floor plan changes or additions

CSAA_COVINGTON 0669

Xactware Notes
Desk Adjuster Assigned Assigned to Desk Adjuster: Giusti, Danielle (ggggiusi) Created by :Danielle Giusti
- Thu May 24 06:35:20 MST 2018
-Xactware User (05/24/2018 06:35 AM)

Claim Reassignment- PA
Reassigned claim to SCS Danielle Perez due to PA.
-Clorice Wesley (05/24/2018 06:15 AM)

PA
I/B call from PA stating 8:00 AM on 05-25-2018 is the confirmed inspection time.
-Alan Heise (05/23/2018 01:27 PM)

Senior Referal
$ccDocLink{81847929} Insured has retained a PA, approved transfer to senior adjuster
-Mary Jensen (05/23/2018 01:19 PM)

Public Adjuster
O/B call to PA on 405-622-8721 to confirm inspection time. He stated he has attempted to work around
the contractor's schedule and his own, but there are conflicts. He will call back with availability.
-Alan Heise (05/23/2018 01:18 PM)

IB call from PA (brother in law of NI)
rec'd inbound call from PA representing the NI, it is Ian the NI brother in-law. Asked him if representing
his brother in law and sister is a conflict of interest for him, he stated no. Ian is trying to push us to have
inspector asap today at 530 pm, there is no way for us to accommodate that inspection date. FS Alan
Heise has been trying to contact this customer daily, we have sent contact letters etc. Asked why the
damage wasn't mitigated, stated that the customer said he didn't do anything on our initial call as he
felt the water would drain through the subfloor into the crawl space area, sts that Jeff had used a fan
requested what type PA did not know was not a commercial air mover and no dehumidifiers were used,
original loss was august 17, 2017 and the moisture was just found by the PA brother in law on mothers
day when he saw floor has moisture damages. PA was aggressive in discussing standard mitigation
readings and dry out. Gave PA the FS # and he will call to schedule inspection.
-Heather Davis (05/23/2018 08:43 AM)