# EXHIBIT 3

```
 1              IN THE DISTRICT COURT OF OKLAHOMA COUNTY
                          STATE OF OKLAHOMA
 2

 3   TAMMY COVINGTON and              )
     JEFFREY COVINGTON,               )
 4                                    )
          Plaintiffs                  )
 5                                    )
     v.                               )  Case No. 19-cv-00718-PRW
 6                                    )
                                      )
 7   CSAA FIRE AND CASUALTY           )
     INSURANCE d/b/a AAA FIRE         )
 8   AND CASUALTY INSURANCE           )
     COMPANY, INC.                    )
 9                                    )
          Defendants                  )
10

11

12

13              DEPOSITION OF TAMMY COVINGTON

14           TAKEN ON BEHALF OF THE DEFENDANT

15              IN OKLAHOMA CITY, OKLAHOMA

16                 ON FEBRUARY 21, 2020

17                       3:03 p.m.

18

19

20   REPORTED BY:   WENDY SMITH, CSR

21

22

23

24

25
```



1    Q.   That's fair.
2    A.   We have this rule in our house.  Since I deal
3  with insurance companies all day, he deals with it at
4  home.  Okay?  I take care of the finances.  He takes
5  care of the yard.  So, like, we have these things.
6    Q.   That's a fair deal.  Because I'm in an
7  adversarial job myself, I let my wife take care of a lot
8  of the home adversarial issues, so I understand what
9  that's like.
10         So did you actually go in and see the agent
11  that your husband testified about?
12    A.   No, I did not.
13    Q.   So you may have already answered this, but have
14  you ever spoken to anybody from AAA for any reason?
15    A.   No.
16    Q.   So it's either been your husband or your
17  brother, Ian Rupert?
18    A.   Yes.
19    Q.   Is Rupert your maiden name?
20    A.   So me and Ian are half-brother and sister.
21    Q.   What is your maiden name?
22    A.   Fitzpatrick.
23    Q.   And I asked your husband about relatives that
24  live in the Oklahoma County area -- well, within
25  Oklahoma County.



1  here.  And to say something like that, I want to
2  understand why.
3       A.  I would have to look at the timeline of when
4  everything was done, so at the point that the first call
5  was logged.  But I'm going to come down to, at the end
6  of it, if you received additional information, nine days
7  kind of tells me you really didn't look at it.
8       Q.  Okay.
9       A.  To me, that feels like that that denial letter
10 came very quickly.
11      Q.  And we're talking about a seven-page
12 engineering report, correct?
13      A.  Correct.
14      Q.  Only two pages of which is writing, and the
15 others are photos.
16          And you're saying it should have taken
17 longer than nine days to review a seven-page report?
18      A.  I mean, I feel like it should have.
19      Q.  Have you suffered any financial loss because of
20 your allegation that the actions of AAA were in bad
21 faith?
22      A.  I have not suffered any financial loss.
23      Q.  Have you suffered any loss of reputation in the
24 community, at your church or otherwise?
25      A.  So we didn't tell people what happened or who



```
 1  the insurance company was.  We didn't -- never any of
 2  that.
 3       Q.  So you haven't been kicked out of a restaurant
 4  because they said, "Hey, AAA denied your claim and they
 5  did so in bad faith, so get out"?
 6       A.  Oh, no, because I haven't told anybody.
 7       Q.  Have you suffered any mental pain or suffering
 8  as a result of the actions you think from AAA that were
 9  in bad faith?
10       A.  I would not say mental pain.  I mean, it upsets
11  me that we can't invite our families over, or I feel
12  like I can't invite my family over.
13       Q.  And that --
14       A.  That bothers me.
15       Q.  That's because of the damage to the floor,
16  right?
17       A.  Yeah.
18       Q.  I think that would upset anybody.
19           What I'm trying to have you do is separate
20  the damage to your floor from the allegation that AAA
21  actually acted in bad faith, treated you intentionally
22  in a poor or unprofessional manner.
23           Has that caused you mental pain or
24  suffering or embarrassment or anything along those
25  lines?
```



1    A.  I'm sure it is very fair for AAA to do, and
2  that both parties probably have the right to do that.
3  But if both parties don't agree, then that's what needs
4  to be decided.
5    Q.  (BY MR. HEFNER)  Okay.  Anything else about
6  your allegations that AAA's conduct was in bad faith or
7  not in good faith that you can tell me about?
8    A.  No.
9    Q.  To recap, you've told me about the phone call
10  between your husband and Heather Davis, correct?
11    A.  Uh-huh.
12    Q.  What other examples have you told me about, if
13  anything, that you think were in bad faith by AAA?
14    A.  If they weren't intending on covering part of
15  the house because of what they consider faulty or
16  improper construction, then I believe that they have the
17  right to notify their homeowners of that information.
18    Q.  Okay.  Do you understand as we sit here today
19  that faulty construction is not covered by the policy
20  that was in place?
21         MS. MACKEY:  Object to the form.
22    A.  I did not know that before this happened, no.
23    Q.  (BY MR. HEFNER)  Do you dispute, though, that
24  this is, in fact, in the contract?
25         MS. MACKEY:  Object to the form.



800.211.DEPO (3376)
EsquireSolutions.com