## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) TAMMY COVINGTON, and | ( | Case No. CIV-19-718-PRS) |
| | ( | (formerly Oklahoma County |
| | ( | Case No. CJ-2019-3967) |
| (2) JEFFREY COVINGTON | ( | |
|     PLAINTIFFS, | ( | |
| | ( | |
| vs. | ( | |
| | ( | |
| (1) CSAA FIRE AND CASUALTY | ( | |
| INSURANCE, d/b/a AAA FIRE AND | ( | |
| CASUALTY INSURANCE COMPANY, | ( | |
| INC. | | |
|     DEFENDANT. | | |

---

## PLAINTIFFS RESPONSE AND OBJECTION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

_____

Respectfully Submitted,

Douglas J. Shelton, OBA #8159
Erica R. Mackey, OBA #32057
SHELTON WALKLEY MACKEY
7701 S. Western Ave., Suite 201
Oklahoma City, OK  73139
dshelton@sheltonlawok.com
emackey@sheltonlawok.com
(405) 605-8800 (office)
(405) 601-0677 (facsimile)
*Attorneys for Plaintiffs,*
*Tammy and Jeffrey Covington*

Dated March, 23, 2020

## **TABLE OF CONTENTS**

Table of Contents ..........................................................................2

Table of Authorities ......................................................................3

Brief in Support.............................................................................5

Response to Alleged Undisputed Material Facts .........................................5

Additional Material Facts Which
Precludes Summary Judgment ................................................................ 10

Argument and Authorities.......................................................... 13

     I. MOTION FOR SUMMARY JUDGMENT STANDARD ................. 13

     II.CSAA BREACHED ITS CONTRACT WITH
     PLAINTIFFS AS THEIR CLAIM
     IS CLEARLY COVERED UNDER THE POLICY ............................ 15

     III. BREACH OF CONTRACT AND BAD FAITH
     ARE COMPLETELY DIFFERENT CAUSES OF
     ACTION AND DEFENDANTS ASSERTIONS
     OTHERWISE ARE COMPLETELY ERRONEOUS......................... 18

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc*,
     477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). .................. 13

*Barber Med. Co. v. Bradley*,
     1915 OK 438, 150 P. 127, 48 Okla. 82 (Okla. 1915) .................... 14

*Barnes v. Oklahoma Farm Bureau Mut. Ins.*,
     2000 OK 55, 11 P.3d 162 (Okla., 2000). ........................................ 19

*Celotex Corporation v. Catrell*,
     477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  ............... 13

*City of Enid v. Smith*,
     29 P.2d 765, 167 Okla. 381, 1934 OK 90 (Okla. 1934) ................. 13

*Conner v. American Commerce Insurance*,
     2009 OK CIV APP 61, (Okla. Civ. App., 2009)  ............................. 15

*Hanson Prod. Co. v. Ams. Ins. Co.*,
     10 F3d 627, 631 (5th Cir. 1997).   .................................................. 14

*Leavell Coal Co. v. Stamper*,
     21 P.2d 1046, 163 Okla. 289, 1933 OK 302 (Okla. 1933) ............. 14

*Maslo v. Ameriprise Auto & Home Ins.*,
     227 Cal.App. 4th 626, 173 Cal.Rptr.3d 854 (Cal. App., 2014). ....... 18

*McCorkle v. Great Atlantic Ins. Co.*,
     637 P.2d 583, 1981 OK 128 (Okla., 1981). .................................... 18

*McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*,
      841 P.2d 568, 569, 1992 OK 43 (Okla., 1992).  ............................ 19

*Newport v. USAA*,
     2000 OK 59, 11 P.3d 190 (Okla., 2000) .......................................... 19

*Porter v. Okla. Farm Bureau Mut. Ins. Co.*,
     330 P.3d 511 (Okla., 2014) ............................................................ 15

*S&J Diving Inc. v. ProCentury Ins. Co.*
    (S.D. Tex. 2012) .............................................................. 15

*Thompson v. Shelter Mut. Ins.,*
    875 F.2d 1460 (C.A.10 (Okl.), 1989).  ............................................. 19

*Trumble Steel Erectors v. K & S Group, Inc.,*
    *304 Fed. Appx. 336 (2008), 2008 WL 5210368*
    *(5th Cir. Dec. 15, 2008).* ................................................................ 14

*United States Fidelity & Guaranty Co. v. Briscoe,*
    1951 OK 386, 239 P.2d 754 (1951). ............................................. 17

*Vining on Behalf of Vining v. Enterprise Financial Group, Inc.,*
    148 F.3d1206, 1214 (C.A.10 (Okla.), 1998) .................................. 18

COMES NOW, Tammy and Jeffrey Covington, and presents their response and objection to Defendant's Motion for Summary Judgment.  In support thereof, Plaintiffs show the court the following:

**RESPONSE TO DEFENDANT'S**
**"UNDISPUTED MATERIAL FACTS"**

1. Admitted.

2. Admitted that the insurance policy contains the language noted.  However, not all of the policy language offered is "pertinent" or relevant.

3. Admitted.

4. Objection. Argumentative; not factual.  Objection.  Irrelevant.  Partially admitted to the extent noted herein. Delay was not claimed as a reason for denying coverage in CSAA's denial letter therefore cannot be claimed as a defense now.  Ex. 1, Denial Letter,  CSAA_COVINGTON 0445-0448. There is no requirement in the policy for professional remediation services or leak detection services.  Plaintiff Jeffrey Covington investigated the cause of the leak, used towels to clean and dry the floor, then used several box fans, air movers and blowers to continue the dry-out process and to mitigate damages. He believed he had resolved the issue.  Ex. 2, Notice of Loss and Representation Letter; Ex. 3, Dep. J. Covington; [97:8-15; 108:15-22; 110:5-22].

5. Denied.  Plaintiff used towels to clean and dry the floor, then used several box fans, air movers and blowers to continue the dry-out process and to

5

mitigate damages.  Ex. 2, Notice of Loss and Representation Letter; Ex. 3, Dep. J. Covington; [97:8-15; 108:15-22; 110:5-22].

6. Admitted but not relevant.

7. Admitted.

8. Admitted, though not relevant.

9. Admitted. All further communications were made on their behalf by Ian Rupert, the Public Adjuster they retained to represent them.  Ex. 2, Notice of Loss and Representation Letter; Ex. 3, Dep. J Covington [151:2-25; 172:25-173:9; 200:10-18].

10. Objection. Argumentative; not factual. Objection.  Irrelevant.  Partially admitted to the extent noted herein. Admitted that CSAA did not deny the claim during the initial phone call.  Plaintiff testified that the tone and tenor led him to believe that CSAA would not cover the claim.  Ex. 3, Dep. J. Covington [172:25-173:9; 151:2-25; 178:1-12].

11. Admitted.

12. Admitted.

13. Admitted.

14. Denied. This is opinion and conjecture of the adjuster. The opinion of the adjuster is not an expert opinion. His opinion appears to be anecdotal.

15. Admitted that the humidity under the home in the crawlspace was high in the Oklahoma summer. Admitted that the condensation drain under the home had condensation. Denied that the S-trap was improperly installed.

Denied that the condensation drain was improperly installed.  Ex. 4, Letter from Smith Brothers, CSAA_COVINGTON 208; Ex. 5, Response Letter from Ian Rupert.

16. Objection. Argumentative; not factual. Partially admitted to the extent noted herein.  Danny Griffin's "suspicion" that the AC was leaking for quite some time, is not a fact.  This alleged undisputed fact shows the existence of several material disputes of fact.  The report indicates that a vapor barrier may have been present which contradicts the bad faith conclusions of the adjuster.  Ex. 6, Danny Griffin's Report, CSAA_COVINGTON 449; Ex. 7, Don Sharp Report, CSAA_COVINGTON 465-466.

17. Admitted that CSAA denied the claim on July 10, 2019. Admitted that the denial contained the noted language. The conclusion of the adjuster is Disputed.  Plaintiff disputes there was any improper construction. There is no evidence of maintenance problems with the AC unit. There is no evidence of water seepage over a period of weeks, months or years. The leak was a major fill up or backup which occurred on one day, August 8, 2017, as reported to CSAA.  Ex. 2, Notice of Loss and Representation Letter; Ex. 3, Dep. J Covington [151:2-25; 200; 10-18]. Ex. 4 Letter Smith Brothers, CSAA_COVINGTON 208s; Ex. 5 Response Letter Ian Rupert; Ex. 7, Don Sharp's Report CSAA_COVINGTON 465-466.

18. Admitted that this alleged fact contains some of the report's conclusions. However, this report actually supports Plaintiffs contentions and presents

multiple questions of material fact. The report indicates that it is possible that this leak occurred in one day.  Further, the report emphasizes that any repeated seepage would be unknown to Plaintiffs.  This is an exception to the exclusion relied upon by CSAA in the policy.  Although the policy excludes coverage for specified types of continuous seepage, it does provide an important exception to that exclusion.  "We do not insure . . .for loss . . .caused by . . . constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months, or years, **unless such** seepage or leakage of water or the presence or condensation of humidity, moisture or vapor **was unknown to all insureds and is hidden . . . beneath the floors.** (Emphasis added).  Ex. 8, Insurance Policy CSAA_COVINGTON 389.; Ex. 7, Don Sharp's Report, CSAA_COVINGTON 465-466.

19. Disputed.  There is a question of fact as to whether or not this report was genuinely reviewed as it indicates that any constant seepage would be unknown to the Plaintiffs.  This is a known exception to the policy exclusion. It is also disputed that the report "confirmed the basis of CSAA's denial."  Ex. 7, Don Sharp's Report, CSAA_COVINGTON 465-466; Ex. 8, Insurance Policy CSAA_COVINGTON 389; Ex. 3, Dep. J Covington [151:2-25; 200; 10-18].

20. Admitted but irrelevant and if anything points to evidence of embarrassment experienced by Plaintiffs as a result of the bad faith

actions by CSAA. The claimed duty to promptly report is irrelevant to the issues in this case.

21. Admitted but totally irrelevant as that was never claimed in this lawsuit.

22. Admitted though inadmissible as evidence as Plaintiff is not an engineer and cannot speculate on what an engineer would find.

23. Denied.  Mr. Covington stated he felt scolded like a child, which is evidence of embarrassment and emotional distress.  Further Mrs. Covington was able to articulate general issues of embarrassment.  Ex. 3, Dep. J. Covington, [151:2-25; 200; 10-18]; Ex. 9, Dep. T. Covington [57:7-59:24].

24. Denied.  Both Mr. and Mrs. Covington provided evidence and testimony that they were embarrassed and/or humiliated.  Ex. 3, Dep. J. Covington [151:2-25; 200; 10-18]. Ex. 9, Dep. T. Covington, [57:7-59:24].

25. Denied.  Mrs. Covington testified that she could not have people over to her house as a result of being embarrassed.  Ex. 9, Dep. T. Covington [57:7-59:24].

26. Admitted but irrelevant and inadmissible.  Calls for a legal conclusion as to bad faith and Mrs. Covington is not an expert.

## ADDITIONAL MATERIAL FACTS WHICH
## PRECLUDES SUMMARY JUDGMENT

1. There is no dispute that the occurrence involves a water leak from the AC condensate pipe.  Ex. 8, Insurance Policy, CSAA_COVINGTON 0346.

2. There is no dispute that a water leak from an AC condensate pipe is covered under the policy.  It states that we cover loss or injury to property due to "accidental discharge or overflow of water . . . from within . . . plumbing or air conditioning."  Ex. 8, Insurance Policy, CSAA_COVINGTON 0346

3. The Covingtons informed CSAA as soon as they were aware that the policy potentially covered this issue.  Ex. 2, Notice of Loss and Representation Letter.

4. The insurance policy provides a broad range of coverages, exclusions, and exceptions to the exclusions.  Ex.8, Insurance Policy  CSAA_COVINGTON

5. The policy provides coverage for the "direct physical loss to property."  Ex. 8, Insurance Policy, CSAA_COVINGTON 344.

6. The policy excludes coverage for mold, or fungus "**unless hidden** within walls or ceilings or **beneath the floors**".  Ex. 8, Insurance Policy, CSAA_Covington 340-341 (emphasis added).

7. The policy goes on to specifically state: "we **do insure for loss caused by** mold, [or] fungus that is **hidden within** walls, ceilings**, [or] beneath floors if caused by discharge."**  Ex. 8, Insurance Policy CSAA_Covington 345.

8. Although the policy excludes coverage for specified types of continuous seepage, it does provide an important exception to that exclusion. "We do not insure . . .for loss . . .caused by . . . constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months, or years, **unless such** seepage or leakage of water or the presence or condensation of humidity, moisture or vapor **was unknown to all insureds and is hidden . . . beneath the floors.** Ex. 8, Insurance Policy CSAA_Covington 389.

9. There is no evidence that the delay in reporting caused Defendant to suffer any prejudice as Defendant was able to investigate the claim and was not used as a basis for denying the claim. In fact, Plaintiffs' representative Ian Rupert called and requested permission to begin repair and that request was denied by Alan Heise so that he may investigate the claim. Ex. 1, Denial Letter, CSAA_COVINGTON 445-448; Ex. 11 CSAA Claim file, CSAA_COVINGTON 604.

10. There is no evidence that any "faulty construction" caused the leak. CSAA's own expert merely said that the installation of the S-trap possibly "contributed" to the clog. However, Plaintiffs HVAC witness stated that there was not anything wrong with the installation and that everything was within code. Regardless, the proximate cause of the leak is a disputed material fact which precludes summary judgment. Ex. 4, Letter from Smith Brothers,

CSAA_COVINGTON   208;   Ex.   10,   Hi-Tech   Plumbing   Report CSAA_COVINGTON 450.

11.      There is no evidence of improper maintenance.  There is evidence that Plaintiffs regularly maintained the unit by changing out air filters and snaking the condensate lines.  Ex. 3, Dep. J. Covington [116:5-12].

12.      Plaintiffs came home to a sudden appearance of water in the home. They dried the visible moisture on the floor with towels, box fans and air movers.  Mr. Covington investigated the cause of the leak and snaked the drain.   Ex.  2,  Notice  of  Loss  and  Representation  Letter;  Ex.4,  Dep.  J. Covington,[97; 8-15; 105:22-25; 108:15-22; 110:5-22] .

13.      Plaintiffs' engineer indicates that any leak or any repeated seepage occurred without Plaintiffs knowledge.  The engineer was also unable to identify how long this may have occurred but said that it could have occurred in one day or possibly over several days but that Plaintiffs would have been oblivious to this fact until the water began showing on the surface of the wood floor.  Ex. 7, Don Sharp Report, CSAA_COVINGTON 465-466.

14.      Defendant's adjuster claimed to have reviewed the Sharp Report but in the denial letter to Plaintiffs it was stated that this report supported his denial of coverage.  However, the language of the Sharp report cited in the letter of denial stopped short of including the following from the Sharp report: "the property owners was *sic* oblivious to [the leak]."  Ex. 7, Don Sharp Report,  CSAA_Covington 465-466.

15.     Plaintiffs, and their Public Adjuster Ian Rupert, provided Defendants with a report from Smith Brothers Heating and Air which states that there is "no faulty construction" and the "microbial growth" in the pipes was the cause of the leak.     Ex. 3, CSAA Claim File, Smith Brother's Letter, CSAA_COVINGTON 208.

## I.     SUMMARY JUDGMENT STANDARD

A party seeking summary judgment always bears the responsibility of informing the Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corporation v. Catrell*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Furthermore, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Where there is evidence . . . on which reasonable [minds] . . . might differ . . .  the question is one for the jury. *City of Enid v. Smith*, 29 P.2d 765, 167 Okla. 381, 1934 OK 90 (Okla. 1934)

Here, there are several disputes of material fact which preclude summary judgment.  First, there is a dispute of fact as to the cause of the leak.  CSAA claims, without evidence, that the only cause of the leak was "faulty construction".  However, Plaintiffs, who are the only people to see the issue firsthand, state that

the cause of the leak was due to a clog in the condensate line.  Further, Smith Brothers Heat and Air state that there was no faulty construction.  A reasonable jury could conclude that either no faulty construction was in place or that the proximate cause of the leak was due to microbial growth in the condensate line, which allowed it to clog suddenly and overflow, causing the water damage.

Another dispute is whether any delay in reporting has in some way harmed Defendant or was unreasonable.  Reasonableness, and particularly a reasonable timeframe, is a fact issue to be determined by a jury.  See *Leavell Coal Co. v. Stamper*, 21 P.2d 1046, 163 Okla. 289, 1933 OK 302 (Okla. 1933),( reasonableness . . . is a question of fact to be determined by the [trier of fact].)"; see also *Barber Med. Co. v. Bradley*, 1915 OK 438, 150 P. 127, 48 Okla. 82 (Okla. 1915) (what is a reasonable time within which the defendant must give notice . . . is a question of fact to be submitted to the jury for their determination.).

When an insurer claims that it has been prejudiced by an insured delay, a question of fact is presented. *Trumble Steel Erectors v. K & S Group, Inc., 304 Fed. Appx. 336 (2008), 2008 WL 5210368 (5th Cir. Dec. 15, 2008).* A failure to give prompt notice does not mean that the insurer is relieved of its obligation under the policy. Instead, the Court is to determine whether the delay caused prejudice and the extent, if any, of the harm engendered by the delay. *Hanson Prod. Co. v. Ams. Ins. Co.*, 10 F3d 627, 631 (5th Cir. 1997).   The burden rests on the **insurer** to show that prejudice resulted and the nature and extent of any prejudice*. S&J Diving Inc. v. ProCentury Ins. Co.* (S.D. Tex. 2012)(emphasis added).

## II.   CSAA BREACHED ITS CONTRACT WITH PLAINTIFFS AS THEIR CLAIM IS CLEARLY COVERED UNDER THE POLICY

In order to maintain a cause of action for breach of insurance contract, a Plaintiff must prove: the existence of a contract, that coverage existed under the contract for the loss, and that the insurance company failed to fairly compensate him for his loss.  *Conner v. American Commerce Insurance*, 2009 OK CIV APP 61, (Okla. Civ. App., 2009)  ¶3.  There is no dispute that a valid contract between CSAA and the Covingtons was in place.  Further, there was some coverage under the policy.  There is no dispute that the dwelling is covered under the policy.  The only remaining dispute is a question of fact of whether the dwelling was damaged by a covered event, something that only a fact finder can determine.   "Insurance contracts are contracts of adhesion," which are interpreted most strongly against the party that prepared the contract.  *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 330 P.3d 511 (Okla., 2014), ¶ 13

In the case at bar, this Court must construe the insurance policy issued by CSAA. The insuring agreement begins with the broad grant of coverage provided by the policy.   It states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies." The policy further states: 'This insurance applies to "bodily injury" and "property damage" only if: (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; (2) The "bodily injury" or "property damage" occurs during the policy period.

The first element to satisfy is the existence of property damage. There can be no credible argument that Covington did not suffer property damage. The evidence clearly shows that their home suffered major property damage. The policy defines "property damage" as:

> "Physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured." Here, the property that was damaged was the concrete, the title, the slab, the fireplace, the stonework, the concrete flatwork, the mailbox, and the foundation. Clearly, this is physical injury to tangible property.

The second element to satisfy is that an "occurrence" took place. There is no Oklahoma law that defines "occurrence". The policy defines "occurrence" simply as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Accident is not defined within the policy so it must be given its common meaning.

The words "accident" and "accidental" have never acquired any technical meaning in law, and when used in an insurance contract they are to be construed and considered according to common speech and common usage of people generally.

> Certain it is that no attempt to define these words in other terms is in any respect an improvement upon the definition found in our standard lexicons, and from these, by way of illustration, we quote from Webster's International Dictionary:
> 'Accident.   An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, chance, contingency.'
> 'Accidental. Happening by chance or unexpectedly.
>
> Synonyms: Undesigned; unintentional; unforeseen, unpremeditated.'

16

*United States Fidelity & Guaranty Co. v. Briscoe*, 1951 OK 386, 239 P.2d 754 (1951).

Additionally, the policy provides coverage for the "accidental discharge of water." Here, it is undisputed that the discharge was accidental. Although the policy excludes coverage for mold, or fungus there is an exception for that which is "hidden within walls or ceilings or beneath the floors". The policy goes on to specifically state: "we **do** insure for loss caused by mold, [or] fungus that is **hidden** within walls, ceilings, [or] **beneath floors** if caused by discharge." (Emphasis added). All mold identified by Defendant and its inspectors was undisputedly under the floor.

Although the policy excludes coverage for constant or repeated seepage, it requires that the seepage be "...caused by. . . constant or repeated seepage or leakage of water ……**over a period of weeks, months, or years**, **unless such** seepage or leakage of water or the presence or condensation of humidity, moisture or vapor **was unknown to all insureds and is hidden . . . beneath the floors.** Ex. 8, Insurance Policy CSAA_Covington 389. Here, to be excluded, the seepage must be over "weeks, months, or years." This did not happen and there is no evidence of such. The evidence is that it all occurred on one day or at most a few days prior to being discovered by Plaintiffs.

Also, there is another important exception to that exclusion. "We do not insure . . .for loss . . .caused by . . . constant or repeated seepage or leakage of

water or the presence or condensation of humidity, moisture or vapor **unless** the

such seepage or leakage of water or the presence or condensation of humidity,

moisture or vapor **was unknown to all insureds and is hidden . . . beneath the**

**floors**.   Here, it is undisputed that any water left in the wood after Plaintiffs'

mitigation efforts was totally unknown to Plaintiffs. Likewise, it was unknown

because it was hidden beneath the bamboo floor in the subflooring. Thus, it should

be covered under the insurance policy. Defendant should have known it was a

covered loss due to these exceptions to the exclusions, but they ignored them and

wrongfully denied the Plaintiffs' claim.

## III.   BREACH OF CONTRACT AND BAD FAITH ARE COMPLETELY DIFFERENT CAUSES OF ACTION AND DEFENDANTS ASSERTIONS OTHERWISE ARE COMPLETELY ERRONEOUS

An insured does not need to win a breach of contract claim to maintain a

bad faith claim.  "No court has held that an insured must actually prevail on a

separate underlying breach of contract claim in order to maintain a successful bad

faith claim." *Vining on Behalf of Vining v. Enterprise Financial Group, Inc.*, 148 F.3d

1206, 1214 (C.A.10 (Okla.), 1998) ¶24.  Additionally, Oklahoma law recognizes

"the independent and intentional tort of bad faith." *McCorkle v. Great Atlantic Ins.*

*Co.*, 637 P.2d 583, 1981 OK 128 (Okla., 1981).

There is ample evidence from which a jury could conclude bad faith.  A

failure to fairly and reasonably evaluate damages constitutes bad faith.  Bad faith

is committed when "the insurer fail[s] to . . . properly investigate and handle

appellant's claim."  *Maslo v. Ameriprise Auto & Home Ins.*, 227 Cal.App. 4th 626,

173 Cal.Rptr.3d 854 (Cal. App., 2014).  Additionally, when presented with a claim by its insured, an insurer "must conduct an investigation reasonably appropriate under the circumstances" and "the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient., *Newport v. USAA*, 2000 OK 59, 11 P.3d 190 (Okla., 2000)  ¶ 10.

Where an insurer has failed to negotiate with insured or his agent, this can be considered evidence of bad faith.  *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460 (C.A.10 (Okl.), 1989).  Moreover, where an insured fails to evaluate a claim to determine the complete extent of the insured's damages or [by] placing some reasonable value on the claim, but instead seeks to limit its exposure, that constitutes bad faith.  *Barnes v. Oklahoma Farm Bureau Mut. Ins.*, 2000 OK 55, 11 P.3d 162 (Okla., 2000) ¶ 10.  Additionally, where an Insurer's investigation of the claim is biased it constitutes bad faith.  *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 569, 1992 OK 43 (Okla., 1992).

Here, the insurer and its agents did everything they could to find reasons to deny the claim.  The insurer clearly did not consider any additional information or make any further investigation when they received the report by the engineer Don Sharp.  Evidence of such failure is based upon the fact that the engineer clearly stated that any repeated seepage was hidden from Plaintiffs beneath the floor. This should have triggered in any reasonable person the exception to the constant seepage exclusion which allows coverage for unknown or hidden seepage **beneath the floor**, as occurred in the case at bar.

19

WHEREFORE, premises considered, and all facts taken in Plaintiffs favor, Defendants cannot succeed on their motion for summary judgement.  Plaintiffs, Tammy and Jeffrey Covington Pray that the Court deny Defendant's Motion for Summary Judgment in its entirely and grant them any and all such relief as this court deems just and proper.


s/ Erica R. Mackey
Douglas J. Shelton, OBA #8159
Erica R. Mackey, OBA #32057
SHELTON WALKLEY MACKEY
7701 S. Western Ave., Suite 201
Oklahoma City, OK  73139
dshelton@sheltonlawok.com
emackey@sheltonlawok.com
(405) 605-8800 (office)
(405) 601-0677 (facsimile)
*Attorneys for Plaintiffs,*
*Tammy and Jeffrey Covington*