# Exhibit 1



**AAA Fire & Casualty Insurance Company**
P.O. Box 24524 Oakland, CA 94623-1524
For c a ms or customer serv ce ca :
**(800) 207-3618**

# Homeowners Policy Declarations

**POLICY NUMBER: HO5 - 004008561**
**TIER: R2**
**RENEWAL DECLARATION**

### LOCATION OF INSURED PROPERTY
17121 SE 59TH ST
CHOCTAW OK 73020

### AGENCY NAME AND ADDRESS
AAA OKLAHOMA/100780/BURDINE
044-100780
101 N DOUGLAS BLVD STE Y
MIDWEST CITY OK 73130            (405) 717-8265

### NAMED INSURED AND MAILING ADDRESS

ʰ|ᵖ|ᵖ|ᵖ|ᵖ|ᵖ|ᵖ||||||ᵖ|ᵖ|ᵖ|ᵖ||||||ᵖ|ᵖ|ᵖ|ᵖ|ᵖ

JEFFREY COVINGTON, TAMMY COVINGTON
17121 SE 59TH ST
CHOCTAW OK 73020-5434

| POLICY PERIOD | | |
|---|---|---|
| **FROM:** | **TO:** | **TIME:** |
| 07/30/17 | 07/30/18 | 12 01 A.M. |

Th s po cy w  cont nue for success ve po cy terms as ong as the prem ums requ red are pa d  subject to the rate  ru es and forms then  n effect.

### DESCRIPTION OF PROPERTY

**PREMIUM TO BE PAID BY**    NSURED

| YR BU L | YR ROOF BU L | CONS RUC ON YPE | PRO CLASS | ROOF YPE | OCCUPANCY | USAGE | # OF RES |
|---|---|---|---|---|---|---|---|
| 1996 | 2010 | BR CK STONE OR MASONRY VENEER | 05 | ASPHALT/F BERGLASS | OWNER | PR MARY | 2 |

### COVERAGES AND LIMITS OF LIABILITY

nsurance s prov ded on y w th respect to the fo ow ng coverages for wh ch a spec f c m t of ab ty s shown. Subject to a cond t ons of th s po cy.

| SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|
| **A** | **B** | **C** | **D** | **E** | **F** |
| DWELL NG | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL L AB L TY EACH OCCURRENCE | MED CAL PAYMENTS TO OTHERS |
| 191 545 * | 19 155 | 134 082 | 57 464 | 300 000 | 1 000 |

* Your Sect on I coverage  m ts may have been changed to ref ect changes  n const uct on costs & other matters affect ng rep acement costs

| **Deductible - Section I** | (In case of loss under Section I, we cover only that part of the loss over the deductible(s)) |
|---|---|
| **ALL PERILS $ 5000** | **Wind/Hail $    5000** |

### FORMS AND ENDORSEMENTS

| NUMBER/ ED T ON DATE | FORMS AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUANCE | PREM UM |
|---|---|---|
| HO 04 48 10 00 | OTHER STRUCTURES  NCR. L M TS  VALUE 20000 | 56.00 |
| HO 04 54 10 00 | EARTHQUAKE (W TH VENEER COVERAGE)  DEDUCT BLE 5% | 98.00 |
| AAAEXX 07 14 | NAME CHANGE ENDORSEMENT | NCL. |
| HO 00 05 10 00 | HO5 COMPREHENS VE FORM (10/06) | NCL. |
| HO 04 96 10 00 | NO L AB L TY FOR HOME DAYCARE | NCL. |
| HW A5 00 12 09 | HO 5 AMENDATORY ENDORSEMENT | NCL. |
| HW 01 35 04 07 | SPEC AL PROV S ONS  OK | NCL. |
| HW 09 00 12 09 | HO ENHANCE 150% EXTD REPL COST | NCL. |
| HW 09 15 03 08 | V C OUS DOG L AB L TY EXCL | NCL. |
| HW 24 82 05 06 | PERSONAL NJURY | NCL. |

### ADDITIONAL EXPOSURES

| SW MM NG POOL | SPA/HOT TUB | TRAMPOL NE | WOOD STOVE | # OF L VESTOCK | # DOGS |
|---|---|---|---|---|---|
| N | N | N | N | 0 | 2+ |

| | |
|---|---|
| BAS C POL CY PREM UM | $ 1 569.00 |
| ENDORSEMENT PREM UM | $ 154.00 |
| TOTAL POL CY PREM UM | $ 1 723.00 |

### DISCOUNTS
AAA MEMBERSHIP, COMPANION POLICY.

Counters gnature

Th s Dec arat on  s part of your po cy.  It supersedes and contro s anyth ng to the contrary.
It  s otherw se subject to a  other terms of the po cy.

Author zed Representat ve

| HW 02 OK 04 07 | Policy Number: HO5 - 004008561 | Named Insured: JEFFREY COVINGTON | Page 1 of 1 |
|---|---|---|---|

CSAA_COVINGTON 0312

INSURED COPY

CSAA_COVINGTON 0313



**_AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618_**

| | | |
|---|---|---|
| **POLICY NUMBER:** | HO5 -  004008561 | **HOMEOWNERS** |
| **INSURED NAME:** | JEFFREY COVINGTON | **HO 04 48 10 00** |
| **AGENT NUMBER:** | 044 - 100780 | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OTHER STRUCTURES ON THE RESIDENCE PREMISES
### INCREASED LIMITS

**SCHEDULE***

| Description Of Structure And Additional Limit Of Liability |
|---|
| WORKSHOP |
|              $20,000.00 |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**SECTION I – PROPERTY COVERAGES**

**COVERAGE B –  OTHER STRUCTURES**

We cover each structure that is:

**1.** On the "residence premises"; and

**2.** Described in the Schedule above;

for the additional limit of liability shown in the Schedule for that structure.

The limit shown is in addition to the Coverage **B** limit of liability.

Each additional limit of liability shown applies only to that described structure.

All other provisions of this policy apply.

INSURED COPY

CSAA_COVINGTON 0314

CSAA_COVINGTON 0315



**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**

| | | |
|---|---|---|
| **POLICY NUMBER:** | HO5 - 004008561 | **HOMEOWNERS** |
| **INSURED NAME:** | JEFFREY COVINGTON | **HO 04 54 10 00** |
| **AGENT NUMBER:** | 044 - 100780 | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EARTHQUAKE

### SCHEDULE*

Earthquake Deductible Percentage Amount:

Exterior Masonry Veneer Exclusion **1.**

[X] Check here only if this exclusion does not apply.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

**A. Coverage**

1. We insure for direct physical loss to property covered under Section **I** caused by earthquake, including land shock waves or tremors before, during or after a volcanic eruption.

   One or more earthquake shocks that occur within a seventy-two hour period constitute a single earthquake.

2. This coverage does not increase the limits of liability stated in this policy.

**B. Special Deductible**

The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement:

We will pay only that part of the total of all loss payable under Section **I**, except:

1. Coverage **D**; and

2. The Additional Coverages;

that exceeds the earthquake deductible.

The dollar amount of the earthquake deductible is determined by multiplying either the:

Coverage **A**; or

Coverage **C**;

limit of liability shown in the Declarations, whichever is greater, by the deductible percentage amount shown in the Schedule above.

The total deductible amount will not be less than $250.

**C. Special Exclusions**

1. **Exterior Masonry Veneer**

   We do not cover loss to exterior masonry veneer caused by earthquake. The value of exterior masonry veneer will be deducted before applying the earthquake deductible described above. For the purpose of this exclusion, stucco is not considered masonry veneer.

2. **Flood**

   We do not cover loss resulting directly or indirectly from flood of any nature or tidal wave, whether:

   **a.** Caused by;

   **b.** Resulting from;

   **c.** Contributed to by; or

   **d.** Aggravated by;

   earthquake.

3. **Filling Land**

   This coverage does not include the cost of filling land.

**D. Exception To The Earth Movement Exclusion**

The Section **I** – Earth Movement Exclusion does not apply to loss caused by earthquake, including land shock waves or tremors before, during or after a volcanic eruption.

All other provisions of this policy apply.

CSAA_COVINGTON 0316          INSURED COPY

CSAA_COVINGTON 0317



AAA Insurance
underwritten by CSAA Fire & Casualty Insurance Company
P.O. Box 24524 Oakland, CA 94623-1524 (800) 207-3618

We're now CSAA Fire & Casualty Insurance Company, a AAA Insurer. You'll see our name on information you receive from us. This is a name change only and does not affect your coverage or service in any way.

# NAME CHANGE ENDORSEMENT

Your policy is amended to change the name of the insuring company from:

**AAA Fire & Casualty Insurance Company to CSAA Fire & Casualty Insurance Company**

This change applies wherever the name of the insurance company appears, whether in the policy or any other document related to or affecting the policy. No terms, benefits or conditions of your policy are changed by this endorsement. This change is effective July 1, 2014 and applies to any renewal, reinstatement or replacement of your policy.

AAAEXX 07 14

INSURED COPY

CSAA_COVINGTON 0318

CSAA_COVINGTON 0319

## CONTENTS

**AGREEMENT** 2

**DEFINITIONS** 2

**DEDUCTIBLE** 7

**SECTION I – PROPERTY COVERAGES** 7
      **COVERAGE A – DWELLING** 7
      **COVERAGE B – OTHER STRUCTURES** 7
      **COVERAGE C – PERSONAL PROPERTY** 8
      **COVERAGE D – LOSS OF USE** 11
      **ADDITIONAL COVERAGES** 12

**SECTION I – PERILS INSURED AGAINST** 25

**SECTION I – EXCLUSIONS** 29

**SECTION I – CONDITIONS** 34

**SECTION II – LIABILITY COVERAGES** 44

**SECTION II – EXCLUSIONS** 46

**SECTION II – ADDITIONAL COVERAGES** 55

**SECTION II – CONDITIONS** 58

**SECTIONS I AND II – CONDITIONS** 63

Copyright, Insurance Services Office, Inc., 1999

CSAA_COVINGTON 0320

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

  **1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

    **a.** Liability for "bodily injury" or "property damage" arising out of the:

      **(1)** Ownership of such vehicle or craft by an "insured";

      **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

      **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

    **b.** For the purpose of this definition:

      **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

2

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

    **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

    **b.** Any other activity engaged in for money or other compensation, except the following:

        **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

        **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

        **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

        **(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

    **a.** You and residents of your household who are:

        **(1)** Your relatives; or

        **(2)** Other persons under the age of 21 and in the care of any person named above;

    **b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

        **(1)** 24 and your relative; or

        **(2)** 21 and in your care or the care of a person described in **a.(1)** above; or

    **c.** Under Section **II:**

3

CSAA_COVINGTON 0322

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

4

CSAA_COVINGTON 0323

   **a.** A self-propelled land or amphibious vehicle; or

   **b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   **a.** "Bodily injury"; or

   **b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

   **a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   **b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

   **a.** The one family dwelling where you reside;

   **b.** The two, three or four family dwelling where you reside in at least one of the family units; or

   **c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

5

6

CSAA_COVINGTON 0325

**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section **I** that exceeds the deductible amount shown in the Declarations.

**SECTION I – PROPERTY COVERAGES**

**A.  Coverage A – Dwelling**

 1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

 2. We do not cover land, including land on which the dwelling is located.

**B.  Coverage B – Other Structures**

 1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

 2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

7

   **3.**  The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

**C.  Coverage C – Personal Property**

   **1.  Covered Property**

    We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

    **a.**  Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    **b.**  A guest or a "residence employee", while the property is in any residence occupied by an "insured".

   **2.  Limit For Property At Other Residences**

    Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    **a.**  Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

    **b.**  In a newly acquired principal residence for 30 days from the time you begin to move the property there.

   **3.  Special Limits Of Liability**

    The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

    **a.**  $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

    **b.**  $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal

8

records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft, misplacing or losing of firearms and related equipment.

g. $2,500 for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

k. $1,500 on electronic apparatus and accessories used primarily for "business" while

9

away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

4. **Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

   **(1)** This includes:

   **(a)** Their accessories, equipment and parts; or

   **(b)** Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

   The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

   **(2)** We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

   **(a)** Used solely to service an "insured's" residence; or

   **(b)** Designed to assist the handicapped;

**d.** Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

10

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided under **E.10.** Landlord's Furnishings under Section **I** – Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

   **(1)** Books of account, drawings or other paper records; or

   **(2)** Computers and related equipment.

   We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

**k.** Water or steam.

**D. Coverage D – Loss Of Use**

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

11

**2. Fair Rental Value**

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

**3. Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

**4. Loss Or Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

**E. Additional Coverages**

**1. Debris Removal**

**a.** We will pay your reasonable expense for the removal of:

**(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

**(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

12

CSAA_COVINGTON 0331

**(1)** Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's tree(s) felled by a Peril Insured Against;

provided the tree(s):

**(3)** Damage(s) a covered structure; or

**(4)** Does not damage a covered structure, but:

    **(a)** Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

    **(b)** Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

  **a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

  **b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

    **(1)** Increase the limit of liability that applies to the covered property; or

    **(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section **I** – Conditions.

13

CSAA_COVINGTON 0332

14

CSAA_COVINGTON 0333

**3.  Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4.  Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5.  Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6.  Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.**  We will pay up to $500 for:

15

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will

16

CSAA_COVINGTON 0335

provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against, other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **P.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** This Additional Coverage applies to property covered under Coverages **A** and **B.** With respect to this Additional Coverage:

**(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

**(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

17

CSAA_COVINGTON 0336

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** The Perils Insured Against under Coverages **A** and **B;**

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**d.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9.Glass Or Safety Glazing Material**

**a.** We cover:

18

19

CSAA_COVINGTON 0338

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused only by the following Perils Insured Against:

**a. Fire Or Lightning**

**b. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an

20

CSAA_COVINGTON 0339

opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**c. Explosion**

**d. Riot Or Civil Commotion**

**e. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**f. Vehicles**

**g. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**h. Vandalism Or Malicious Mischief**

**i. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**j. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**k. Accidental Discharge Or Overflow Of Water Or Steam**

**(1)** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

**(2)** This peril does not include loss:

    **(a)** To the system or appliance from which the water or steam escaped;

    **(b)** Caused by or resulting from freezing except as provided in **m.** Freezing below;

21

CSAA_COVINGTON 0340

**(c)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

**(d)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**(3)** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**l. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**m. Freezing**

**(1)** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

**(2)** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

22

CSAA_COVINGTON 0341

23

CSAA_COVINGTON 0342

**n. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**o. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

24

CSAA_COVINGTON 0343

**c.** We do not cover:

    **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    **(2)** The costs to comply with any ordinance or law which requires any "insured" or others, to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against.

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

We insure against risk of direct physical loss to property described in Coverages **A, B** and **C**.

We do not insure, however, for loss:

**A.** Under Coverages **A, B** and **C**:

    **1.** Excluded under Section **I** – Exclusions;

    **2.** Caused by:

        **a.** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

        **(1)** Maintain heat in the building; or

25

CSAA_COVINGTON 0344

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**b.** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(1)** Fence, pavement, patio or swimming pool;

**(2)** Footing, foundation, bulkhead, wall, or any other structure or device, that supports all or part of a building or other structure;

**(3)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(4)** Pier, wharf or dock;

**c.** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**d.** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(1)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(2)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**e.** Any of the following:

26

**(1)** Wear and tear, marring, deterioration;

**(2)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**(3)** Smog, rust or other corrosion, or dry rot;

**(4)** Smoke from agricultural smudging or industrial operations;

**(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against in **a.** through **o.** as listed in **E.10.** Landlord's Furnishings under Section **I** – Property Coverages.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(6)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(7)** Birds, vermin, rodents, or insects; or

**(8)** Animals owned or kept by an "insured".

**Exception To 2.e.**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A, B** or **C** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

27

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section **I** – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **d.** and **e.** above.

Under **2.a.** through **e.** above, any ensuing loss to property described in Coverages **A, B** and **C** not precluded by any other provision in this policy is covered.

**B.** Under Coverages **A** and **B:**

   **1.** Caused by vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   **2.** Involving collapse, other than as provided in **E.8.** Collapse under Section **I** – Property Coverages. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**C.** Under Coverage **C** caused by:

   **1.** Breakage of eyeglasses, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles other than jewelry, watches bronzes, cameras and photographic lenses.

   However, there is coverage for breakage of the property by or resulting from:

   **a.** Fire, lightning, windstorm, hail;

   **b.** Smoke, other than smoke from agricultural smudging or industrial operations;

   **c.** Explosion, riot, civil commotion;

   **d.** Aircraft, vehicles, vandalism and malicious mischief;

   **e.** Collapse of a building or any part of a building;

28

CSAA_COVINGTON 0347

   **f.** Water not otherwise excluded;

   **g.** Theft or attempted theft; or

   **h.** Sudden and accidental tearing apart, cracking, burning or bulging of:

     **(1)** A steam or hot water heating system**;**

     **(2)** An air conditioning or automatic fire protective sprinkler system; or

     **(3)** An appliance for heating water;

**2.** Dampness, of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

**3.** Refinishing, renovating or repairing property other than watches, jewelry and furs;

**4.** Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings equipment and out board engines or motors;

**5.** Destruction, confiscation or seizure by order of any government or public authority; or

**6.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss to property described in Coverage **C** not precluded by any other provision in this policy is covered.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

  **1. Ordinance Or Law**

    Ordinance Or Law means any ordinance or law:

    **a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting

debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** – Property Coverages;

29

CSAA_COVINGTON 0348

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

**2. Earth Movement**

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

30

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

Water damage to property described in Coverage **C** away from a premises or location owned, rented, occupied or controlled by an "insured" is covered.

Water damage to property described in Coverage **C** on a premises or location owned, rented, occupied or controlled by an "insured" is excluded even if weather conditions contribute in any way to produce the loss.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to

31

CSAA_COVINGTON 0350

32

CSAA_COVINGTON 0351

the extent set forth in **M.** Nuclear Hazard Clause under Section **I** – Conditions.

8. **Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

    **a.** Planning, zoning, development, surveying, siting;

    **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **c.** Materials used in repair, construction, renovation or remodeling; or

    **d.** Maintenance;

    of part or all of any property whether on or off the "residence premises".

33

CSAA_COVINGTON 0352

**SECTION I – CONDITIONS**

**A.  Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.**  To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.**  For more than the applicable limit of liability.

**B.  Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:

**1.**  Give prompt notice to us or our agent;

**2.**  Notify the police in case of loss by theft;

**3.**  Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.**  Protect the property from further damage. If repairs to the property are required, you must:

**a.**  Make reasonable and necessary repairs to protect the property; and

**b.**  Keep an accurate record of repair expenses;

**5.**  Cooperate with us in the investigation of a claim;

**6.**  Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.**  As often as we reasonably require:

**a.**  Show the damaged property;

**b.**  Provide us with records and documents we request and permit us to make copies; and

**c.**  Submit to examination under oath, while not in the presence of another "insured", and sign the same;

34

CSAA_COVINGTON 0353

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in **6.** above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

**C. Loss Settlement**

In this Condition **C.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs are provided in **E.11.** Ordinance Or Law under Section **I** – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

35

CSAA_COVINGTON 0354

**a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(1)** The limit of liability under this policy that applies to the building;

**(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

**(3)** The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

36

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this

37

CSAA_COVINGTON 0356

38

CSAA_COVINGTON 0357

event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is

39

40

CSAA_COVINGTON 0359

legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**J.   Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K.   Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

41

CSAA_COVINGTON 0360

    5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L.  No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M.  Nuclear Hazard Clause**

    1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

    2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

    3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N.  Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O.  Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P.  Policy Period**

This policy applies only to loss which occurs during the policy period.

42

43

CSAA_COVINGTON 0362

**Q.  Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**R.  Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.


**SECTION II – LIABILITY COVERAGES**

**A.  Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B.  Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.  This coverage does not apply to you or

44

CSAA_COVINGTON 0363

45

CSAA_COVINGTON 0364

regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

    a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

    b. Is caused by the activities of an "insured";

    c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

    d. Is caused by an animal owned by or in the care of an "insured".

**SECTION II – EXCLUSIONS**

**A. "Motor Vehicle Liability"**

1. Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

    a. Is registered for use on public roads or property;

    b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

    c. Is being:

        (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

        (2) Rented to others;

        (3) Used to carry persons or cargo for a charge; or

        (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

    a. In dead storage on an "insured location";

    b. Used solely to service an "insured's" residence;

46

CSAA_COVINGTON 0365

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or

**(2)** Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B. 6.a., b., d., e.** or **h.;** or

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B.** **"Watercraft Liability"**

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

47

CSAA_COVINGTON 0366

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

   **(1)** Less than 26 feet in overall length; or

   **(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

   **(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

      **(a)** 50 horsepower or less and not owned by an "insured"; or

      **(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

   **(2)** One or more outboard engines or motors with:

      **(a)** 25 total horsepower or less;

      **(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

      **(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

      **(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

         **(i)** You declare them at policy inception; or

         **(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

48

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

49

CSAA_COVINGTON 0368

**(b)** In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

50

CSAA_COVINGTON 0369

51

CSAA_COVINGTON 0370

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

   **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

   **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

     **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

     **(2)** Where the liability of others is assumed by you prior to an "occurrence";

52

unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

        **(1)** Nuclear Energy Liability Insurance Association;

        **(2)** Mutual Atomic Energy Liability Underwriters;

        **(3)** Nuclear Insurance Association of Canada;

        or any of their successors; or

    **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured":

    **a.** To repay; or

    **b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

53

54

CSAA_COVINGTON 0373

**G. Coverage F – Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

55

CSAA_COVINGTON 0374

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section **I**;

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

56

CSAA_COVINGTON 0375

57

CSAA_COVINGTON 0376

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section **II** – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph **I.** Policy Period under Section **II** – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the

58

CSAA_COVINGTON 0377

59

CSAA_COVINGTON 0378

Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

60

CSAA_COVINGTON 0379

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverage, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required, as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written

61

CSAA_COVINGTON 0380

62

CSAA_COVINGTON 0381

specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

63

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

64

65

CSAA_COVINGTON 0384

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.


Paula F. Downey                    Jaime Chung

President                          Secretary


66





*AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618*

POLICY NUMBER:  HO5 - 004008561
INSURED NAME:  JEFFREY COVINGTON
AGENT NUMBER:  044 - 100780

**HOMEOWNERS**
**HO 04 96 10 00**

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

    **a.** One or more activities:

      **(1)** Not described in **b.** through **d.** below; and

      **(2)** For which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

  the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in **A.2.** above, and

  **2.** Engaged in for money by a single "insured";

  may be considered a "business" if the $2,000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

    **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section II – Exclusions;

    **b.** Coverage, under Section **I,** for other structures from which any "business" is conducted; and

  **2.** Limits Section **I** coverage, under Coverage **C** – Special Limits of Liability, for "business" property:

    **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

    **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

CSAA_COVINGTON 0386





**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**

| | |
|---|---|
| **POLICY NUMBER:** HO5 - 004008561 | **HOMEOWNERS** |
| **INSURED NAME:** JEFFREY COVINGTON | **HW A5 00 12 09** |
| **AGENT NUMBER:** 044 - 100780 | |

# HOMEOWNERS HO 00 05 -COMPREHENSIVE FORM

## AMENDATORY ENDORSEMENT

**DEFINITIONS**

Paragraph **B.1.b.(3)** is deleted and replaced by the following:

(3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; it does not include any craft designed for use on snow or ice; and

The following is added to paragraph **a.** of the definition of "Insured":

A domestic partner of the named insured. (For purposes of this definition "domestic partner" means an adult who is not related to the named insured by blood, who has continually lived with the named insured for at least six months and plans to do so permanently, and is mutually responsible along with the named insured for their common welfare, and who maintains no other domestic partnership or legally recognized marriage.)

When used in this policy, the following words, either with or without quotation marks, will have the following meanings:

"Contamination" and "Contaminants" collectively means impairment or impurity due to either an accidental or intentional mixture or contact with a foreign substance, including, but not limited to, biological, chemical, or toxic agents.

"Fungus" or "Fungi" means:

a. any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

b. Under Section II, this does not include any "fungi" that are, or are contained in, a product intended for human consumption.

"Water" means water ($H_2O$) alone, including moisture, steam or humidity, whether frozen or not or natural or artificial including any liquid or sludge which contains "water", whether or not combined with any other chemicals or impurities.

**DEDUCTIBLE**

This section is modified to read as follows:

**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

This deductible applies separately to each loss.

**SECTION I - PROPERTY COVERAGES**

**C. Coverage C - Personal Property**

Paragraphs **a.** and **b.** of **3. Special Limits Of Liability** are deleted and replaced by the following:

a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, scrip, stored value cards, smart cards, negotiable and nonnegotiable coins and medals and collections of all such property.

b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets, stamps and stamp collections. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

The following are added to **3. Special Limits of Liability:**

l. $10,000 in the aggregate for theft of rugs, including, but not limited to, any handwoven silk or wool rug, carpet, tapestry, wallhanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age; the special limit of liability is subject to a maximum of $5,000 per item.

m. $2,500 on trading cards and comic books including any of these that are part of a collection.

| | |
|---|---|
| **HW A5 00 12 09** | **Page 1 of 6** |
| | INSURED COPY |

CSAA_COVINGTON 0387

**E.   Additional Coverages**

The following provision is added to paragraph **a.** of **1. Debris Removal:**

> However, we will not pay any expenses incurred by you or anyone acting on your behalf to:
>
> **(1)** extract pollutants from land or "water"; or
>
> **(2)** remove, restore or replace land or "water" due to the actual or alleged presence of Contamination, Contaminants or Pollutants.
>
> **(3)** comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants or "contaminants" in or on any covered building or other structure, and on land or water.
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Paragraph **e.** of **3. Trees, Shrubs And Other Plants** is deleted and replaced by the following:

> **e.** Impact from a vehicle, not owned or operated by a resident of the "residence premises";

In Paragraphs **a.** and **b.** of **7. Loss Assessment,** the amount we will pay up to is changed to "$2,500".

Paragraph **b.(5)** of **8. Collapse** is deleted and replaced by the following:

> **(5)** Weight of rain, ice or snow which collects on a roof; or

The following is added to paragraph **f. Vehicles** of **10. Landlord's Furnishings:**

> This peril means impact from a vehicle, but not including damage to the vehicle itself.

Paragraph **k.(2)(d)** of **10. Landlord's Furnishings** is deleted and replaced by the following:

> **(d)** Caused by or consisting of mold, "fungi" or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **c.(2)** of **11. Ordinance Or Law** is deleted and replaced by the following:

> **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants or "contaminants" in or on any covered building or other structure, and or on land or water.

> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The following are added to **E. Additional Coverages:**

**Refrigerated Property**

> We insure for up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:
>
> **a.** "loss of power" to the refrigeration unit. Loss of power must be caused by damage to:
>
> > **(1)** Generating equipment; or
> >
> > **(2)** Transmitting equipment; or
>
> **b.** Mechanical failure of the unit which stores the property.
>
> "Loss of power" means the complete or partial interruption of electric power due to conditions beyond an "insured's" control.
>
> Coverage will apply only if you have maintained
>
> the refrigeration unit in proper working condition immediately prior to the loss.
>
> This coverage does not increase the limit of liability for Coverage C.
>
> The Power Failure exclusion does not apply to this coverage.

**Special Deductible**

> The following will replace any other deductible provision in this policy with respect to loss covered under this Additional Coverage.
>
> We will pay only that part of the total of all loss payable that exceeds $100. No other deductible applies to this coverage.

**Lock Replacement**

> We will pay your reasonable and necessary expenses to replace exterior door locks at the "residence premises", if an "insured's" keys are stolen.
>
> No deductible applies to his coverage.

**Arson Reward**

> We will pay $5,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $5,000 limit shall not be increased regardless of the number of persons providing the information.

CSAA_COVINGTON 0388

INSURED COPY



**"Fungi", Wet Or Dry Rot, Or Bacteria**

**a.** $5,000 is the most we will pay regardless of the number of "occurrences" for:

**(1)** The total of all loss payable under Section **I** - Property Coverages caused by or consisting of "fungi", wet or dry rot, or bacteria;

**(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section **I** - Property Coverages;

**(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

**(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

**b.** The coverage described in paragraph **a.** above only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

**c.** The amount of $5,000 for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

**(1)** Number of locations insured under this endorsement; or

**(2)** Number of occurrences.

**d.** If there is a covered loss or damage to covered property that is not caused by, or does not consist of, in whole or in part, by "fungi", wet or dry rot, or bacteria, the limitations of this Additional Coverage do not apply. If "fungi", wet or dry rot, or bacteria causes an increase in the loss covered by a Peril Insured Against, coverage for such increase in loss is limited to $5,000.

This coverage does not increase the limit of liability applying to the damaged covered property.

**Flood Emergency Assistance**

We will pay up to $3,000 of reasonable and necessary additional living expenses actually incurred by you within four weeks of a loss that is excluded by Section I Exclusions, **A.3** "Water"

Damage if the "residence premises" is uninhabitable during that period and the additional living expense is a result of such excluded loss.

No deductible applies to this coverage.

OTHER THAN AS PROVIDED BY ADDITIONAL COVERAGE 16, THIS POLICY DOES NOT PROVIDE FLOOD INSURANCE.

**SECTION I - PERILS INSURED AGAINST**

**A.** Under Coverages **A, B** and **C**

The first paragraph of **2.b.** is deleted and replaced by:

**b.** Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

Paragraph **2.d** is deleted and replaced by:

**d.** Constant or repeated seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is deleted and replaced by the following:

**(3)** Smog, rust or other corrosion;

Paragraph **2.e.(5)** is deleted and replaced by:

**(5)** Discharge, dispersal, seepage, migration, release or escape of pollutants or "contaminants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**C.** Under Coverage **C** caused by:

Paragraph **1.d.** is deleted and replaced by:

**d.** Aircraft, vehicles, meaning impact from a vehicle, vandalism and malicious mischief;

CSAA_COVINGTON 0389

## SECTION I - EXCLUSIONS

Paragraph **c.** of **A.1. Ordinance Or Law** is deleted and replaced by the following:

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants or "contaminants".

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**A.2. Earth Movement** is replaced with the following:

Earth Movement, meaning loss of any kind due in whole or in part to any movement of the earth or soil, whether on or off the residence premises and whether combined with water or not, including but not limited to:

(1) earthquake, including land shock waves or tremors of the earth;

(2) landslide, mudslide or mudflow;

(3) subsidence or sinkhole;

(4) volcanic activity, including lava flow and land shock waves or tremors before, during or after a volcanic eruption; or

(5) any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This exclusion A.2 does not apply to loss by theft.

**A.3 "Water" Damage** is replaced with the following:

"Water" Damage means:

a. flood, surface "water", waves, tidal "water", overflow, release or escape of a body of "water" or from a "water" or flood control device, or spray from any of these, whether or not driven by wind;

b. "water" or "water"-borne material, liquid or semi liquid, which backs up through sewers or drains, or which overflows, or is discharged from a sump, sump pump or related equipment; or

c. "water" or "water"-borne material, liquid or semi liquid below the surface of the ground whether occurring naturally or artificially, including "water" which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, spa, hot tub or other structure;

caused by or resulting from intentional or unintentional human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from "water" damage is covered.

The following exclusion is added:

### "Fungi", Wet Or Dry Rot, Or Bacteria

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

**a.** When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

**b.** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I - CONDITIONS

The following is added to paragraph **4.** of **B. Duties After Loss:**

In the event of a "water" loss, you or your representative must immediately, or as soon as practicable, take all reasonable and necessary steps to dry the property and protect the property from contamination of mold or "fungi."

The following condition is added:

### Adjustments to Coverage Limits

The limits of liability for Coverages **A, B, C** and **D** of this policy, as stated in the Declarations, represent our maximum limit of liability, except that adjustments may be made upon each renewal date of this policy. The maximum limit of liability for Coverage **A** may be adjusted upon renewal of this policy to an amount we estimate to be 100% of the replacement cost of the dwelling. However, we will not lower the Coverage A limit without your consent. The maximum limit of liability for Coverages **B, C** and **D** will be adjusted upon each renewal date in the same proportion as the adjustment to Coverage **A**.

The adjusted limits of liability for Coverages **A, B, C** and **D** will be shown in the Declarations and rounded to the next highest $100.

CSAA_COVINGTON 0390

INSURED COPY



You are responsible to make sure your policy limits are sufficient to replace your property. At your request, we will assist you in estimating the replacement cost of your dwelling. We have the right, with advance notice to you, to inspect your property as often as we deem necessary to confirm structural replacement cost and/or condition.

## SECTION II - EXCLUSIONS

### E. Coverage E - Personal Liability And Coverage

### F - Medical Payments To Others

Paragraph **1. Expected Or Intended Injury** is deleted and replaced by the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" intended by, or expected to result from the intentional or criminal acts or omissions of any "insured" even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

The following three exclusions are added:

**Pollutants and "Contaminants"**

"Bodily injury" or "property damage" caused by or arising out of the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gases, toxic liquids, toxic solids, waste materials or other irritants, "contaminants" or pollutants.

This exclusion does not apply to "bodily injury" arising out of such discharge if sudden and accidental.

Arising out of statutorily imposed liability upon any "insured" in any matter, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gases, toxic liquids, toxic solids, waste materials or other irritants, "contaminants" or pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Sale or Transfer of Real Property**

"Bodily injury" or "Property damage" arising out of the sale or transfer of real property, including, but not limited to:

(a) known or unknown structural defects;

(b) known or hidden defects in the plumbing, heating or electrical systems;

(c) known or unknown soil conditions or drainage problems;

(d) alleged concealment or misrepresentation of any known or unknown conditions in the real property.

**"Fungi", Wet or Dry Rot or Bacteria**

"Bodily injury" or "property damage" arising directly or indirectly, in whole or in part, out of actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

"Bodily injury" or "property damage" arising out of liability imposed upon any 'insured" person or organization by any governmental authority which in whole or in part, arises out of, or is aggravated by or results from mold, "fungi", wet or dry rot, or bacteria.

## SECTION II - ADDITIONAL COVERAGES

In Paragraphs **1.** and **3.** of **D. Loss Assessment,** the amount we will pay up to is changed to $2,500.

## SECTION II - CONDITIONS

### B. Severability of Insurance

The entire paragraph of **B. Severability of Insurance** is deleted. B is intentionally left blank. The next letter is **C. Duties after "Occurrence"**.

The following is added to paragraph **6.** of **C. Duties After 'Occurrence":**

In addition we will not pay for attorney fees or other litigation costs incurred before the "insured" has provided notice of a claim to us.

## SECTIONS I AND II - CONDITIONS

Paragraph **3.** of **C. Cancellation** is deleted and replaced by the following:

**3.** When this policy is canceled, you may be entitled to a premium refund or owe the company for unpaid earned premium and/or fees. The premium refund or balance due, if any, will be calculated as follows:

CSAA_COVINGTON 0391

**(a)** If a cancellation is initiated by the company for underwriting reasons or by you due to company or agent error, earned premium shall be computed pro rata;

**(b)** If a cancellation is for any other reasons, including cancellation for non-payment of premium, the earned premium shall be computed pro rata and the company shall retain a cancellation fee.

The following condition is added:

**State Law Provision**

If there is a discrepancy or conflict between the terms and conditions of this policy and state law, then the policy will be deemed to comply with state law.

All other provisions of this policy apply.

**HW A5 00 12 09**

INSURED COPY

CSAA_COVINGTON 0392





***AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618***

| | |
|---|---|
| **POLICY NUMBER:** HO5 - 004008561 | **HOMEOWNERS** |
| **INSURED NAME:** JEFFREY COVINGTON | **HW 01 35 04 07** |
| **AGENT NUMBER:** 044 - 100780 | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS - OKLAHOMA

**SECTION I - EXCLUSIONS**

**FORMS HO 00 03 AND HO 00 05**

The following Exclusion is added:

When a loss occurs to a roof covered by this policy, there is no coverage for the tear-off, removal or disposal of debris, or replacement of any layer of roofing material other than the outermost layer of roof material.

If the roof contains more than one layer of roof covering, this endorsement limits coverage to only the outermost roof surface.

Your policy will not provide coverage for the removal or replacement of any roof decking or underlying roof coverings, materials or decking that have been overlaid or covered by other roof coverings or materials.

There is no coverage under your policy for the tear-off and/or removal of any additional layers when the removal of additional layers becomes necessary to ensure that there is a nailable surface (or a surface to which a new roof may be adequately affixed) for the material installed to replace the tom-off outermost layer of roofing material.

**SECTION I - CONDITIONS**

**FORMS HO 00 03 AND HO 00 05**

**E.  Appraisal** is deleted and replaced by the following:

**E.  Appraisal**

If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal of the loss. In this event, only the party which demanded the appraisal will be bound by the results of that appraisal. Each party will choose a competent and impartial appraiser within 20 days after the written demand has been made. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, then, at the request of either you or us, after notice of hearing to the nonrequesting party by certified mail, the umpire shall be selected by a judge of a district court in the county where the loss occurred.

The appraisers will separately set the amount of loss. If the appraisers submit a written report of agreement to us, the amount agreed upon will be the amount of loss and will be binding on that party which demanded the appraisal. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss and will be binding on that party which demanded the appraisal.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the expenses of the appraisal and umpire equally.

**I.  Loss Payment** is deleted and replaced by the following:

**I.  Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

Loss will be payable:

**1.** Within 60 days after we reach an agreement with you or there is a filing of an appraisal award with us; or

**2.** Within 30 days after there is an entry of a final judgment.

The following Condition is added:

**S. Our Duties After Loss**

It shall be our duty, after receiving a proof of loss, to submit a written offer of settlement or rejection of the claim, or notice of the need for more time to investigate the claim, to you within forty-five (45) days of receipt of the proof of loss.

(This is Paragraph **R.** In Form **HO 00 04**.)

All other provisions of this policy apply.

CSAA_COVINGTON 0393

INSURED COPY





**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**

| | | | |
|---|---|---|---|
| **POLICY NUMBER:** | HO5 - 004008561 | | **HOMEOWNERS** |
| **INSURED NAME:** | JEFFREY COVINGTON | | **HW 09 00 12 09** |
| **AGENT NUMBER:** | 044 - 100780 | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
# HOMEOWNERS ENHANCEMENT (FORM HO-5)

**1. EXTENDED REPLACEMENT COST COVERAGE**

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

**A.** If you have:

  **1.** Allowed us to adjust the Coverage **A** limit of liability and the premium in accordance with:

    **a.** The property evaluations we make; and

    **b.** Any increases in inflation; and

  **2.** Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage **A** which increase the replacement cost of the building by 5% or more;

The provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

**B.** If there is a loss to the building insured under Coverage **A** that exceeds the Coverage **A** limit of liability shown in the Declarations:

  **1.** We will provide an additional amount of insurance, up to 150% of the limit of liability applying to the dwelling as indicated on the Declarations page; and

  **2.** We will increase, by the same percentage applied to Coverage **A**, the limits of liability for Coverages **B, C,** and **D**.  However, we will do this only if the Coverage **A** limit of liability is increased under Paragraph **B.1.** as a result of a Coverage **A** loss.

  **3.** We will adjust the policy premium from the time of loss for the remainder of the policy term based on the increased limits of Coverage **B, C** and **D** liability; and

  **4.** For the purposes of settling that loss only, Section **I** - Condition **C.** Loss Settlement Paragraph **2.** is deleted and replaced by Paragraphs **2., 3.,** and **4.** as follows:

    **2.** The building insured under Coverage **A** or **B** at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

      **a.** The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

      **b** The necessary amount actually spent to repair or replace the damaged building; or

      **c.** The limit of liability under this policy that applies to the building, increased in accordance with Paragraphs **B.1.** and **B.2.** of this endorsement.

    If the building is rebuilt at a new premises, the cost described in **a.** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

    **3.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

    **4.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to the building on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

**2. PERSONAL PROPERTY REPLACEMENT COST COVERAGE**

**A. Eligible Property**

  **1.** Covered losses to the following property are settled at replacement cost at the time of the loss:

    **a.** Coverage **C;** and

    **b.** If covered in this policy:

      **(1)** Awnings, outdoor antennas and outdoor equipment; and

      **(2)** Carpeting and household appliances;

      whether or not attached to buildings.

  **2.** This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

    **a.** Jewelry;

    **b.** Furs and garments:

      **(1)** Trimmed with fur; or

      **(2)** Consisting principally of fur;

   **c.** Cameras, projection machines, films and related articles of equipment;

   **d.** Musical equipment and related articles of equipment;

   **e.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      **(1)** Pens or pencils;

      **(2)** Flasks;

      **(2)** Smoking implements; or

      **(3)** Jewelry; and

   **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

   **1.** Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

   **2.** Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

   **3.** Articles not maintained in good or workable condition.

   **4.** Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

The following loss settlement condition applies to all property described in **A.** above:

**1.** We will pay no more than the least of the following amounts:

   **a.** Replacement cost at the time of loss without deduction for depreciation;

   **b.** The full cost of repair at the time of loss;

   **c.** The limit of liability that applies to Coverage **C,** if applicable;

   **d.** Any applicable special limits of liability stated in this policy; or

   **e.** For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

**2.** We will pay no more than the actual cash value for the loss to property described in 2A, unless and until the repair or replacement of the property is complete.

**3.** You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

**3. SECTION I - PROPERTY COVERAGES**

  **C. Coverage C - Personal Property**

    **3. Special Limits Of Liability e.** is deleted and replaced by the following:

    **e.** $5,000 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

All other provisions of this policy apply.

HW 09 00 12 09
INSURED COPY

CSAA_COVINGTON 0395



**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**

| | |
|---|---|
| **POLICY NUMBER:** HO5 - 004008561 | **HOMEOWNERS** |
| **INSURED NAME:** JEFFREY COVINGTON | **HW 09 15 03 08** |
| **AGENT NUMBER:** 044 - 100780 | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VICIOUS DOGS AND DOGS WITH PRIOR BITE HISTORY LIABILITY EXCLUSION

For use with all policy forms and Personal Umbrella Liability Endorsement

**Exclusion**

We do not cover;

Any "bodily injury" or "property damage" caused by a "vicious dog" or "dog with prior bite history," occurring at an "insured location" or any other location. This exclusion applies regardless of the cause of the loss, whether other causes of the loss acted concurrently or in any sequence with the excluded event to produce the loss, and regardless whether the claim against an "insured person" arises out of;

    a.  the ownership, custody or care of the dog by the "insured person", or by any other person whether or not that person is a resident, or tenant at the "insured location";

    b.  negligent supervision by an "insured person" of any person or animal;

    c.  premises liability for allowing a dog on any premises; or

    d.  any liability statutorily imposed on any "insured person".

This exclusion shall apply to this policy or any continuation, renewal, or replacement of this policy by the "insured", or the reinstatement within 30 days of any lapse thereof.

**Definitions**

With respects to this exclusion, the following words and phrases are defined as follows:

1.  "Vicious dogs" means a dog with ancestry properly classified as any of the following breeds of dogs:
    a.  Chow
    b.  Doberman
    c.  Pit Bull or Pit Bull mix
    d.  Presa Canario
    e.  Rottweiler
    f.  Wolf Hybrid or Wolf Dog
    g.  Akita

2.  "Dogs with prior bite history" means any dog that has caused "bodily injury", whether or not covered by insurance, on one or more occasions prior to the date of the loss for which coverage is sought.

CSAA_COVINGTON 0396

INSURED COPY

CSAA_COVINGTON 0397



**AAA Fire & Casualty Insurance Company, P.O. Box 24524 Oakland, CA 94623-1524, (800) 207-3618**



| | | |
|---|---|---|
| **POLICY NUMBER:** | HO5 - 004008561 | **HOMEOWNERS** |
| **INSURED NAME:** | JEFFREY COVINGTON | **HW 24 82 05 06** |
| **AGENT NUMBER:** | 044 - 100780 | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PERSONAL INJURY

### DEFINITIONS

The following definitions are added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

### SECTION II - LIABILITY COVERAGES

**A. Coverage E - Personal Liability**

The following is added to Coverage **E** - Personal Liability:

**Personal Injury Coverage**

If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

### SECTION II - EXCLUSIONS

With respect to the coverage provided by this endorsement, **Section II - Exclusions** is deleted and replaced by the following:

This insurance does not apply to:

1. "Personal Injury":

   a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

   b. Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

   c. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   d. Arising out of a criminal act committed by or at the direction of an "insured";

   e. Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership maintenance or use of the premises;

   f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured";

   g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   This exclusion does not apply to:

   (1) The rental or holding for rental of an "insured location";

      (a) On an occasional basis if used only as a residence;

      (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

CSAA_COVINGTON 0398          With Its Permission, © ISO Properties, Inc., 2001                 INSURED COPY

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**h.** Arising out of civic or public activities performed for pay by an "insured";

**i.** To you or an "insured" as defined under Definition **7.a.** or **b.;**

This exclusion also applies to any claim made or suit brought against you or an "insured":

**(1)** To repay; or

**(2)** Share damages with; or

Another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

**j.** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants or "contaminants" at any time.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**k.** Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria.

**2.** Any loss, cost or expense arising out of any:

**a.** Request, demand or order that an "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, "fungi", wet or dry rot, or bacteria; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants, "fungi", wet or dry rot, or bacteria.

## SECTION II - ADDITIONAL COVERAGES

With respect to the coverage provided by this endorsement, Paragraph **D. Loss Assessment** is deleted and replaced by the following:

### D. Loss Assessment

We will pay up to $1000 ($2,500 in Form **HO 00 05**) for your share of loss assessment charged against you, as an owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of "personal injury" not excluded under this endorsement.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 ($2,500 in Form **HO 00 05**) is the most we will pay for loss arising out of "personal injury".

## SECTION II – CONDITIONS

With respect to the coverage provided by this endorsement, Section **II** - Condition **I.** Policy Period does not apply and Conditions **A. Limit Of Liability, B. Severability Of Insurance** and **C. Duties After "Occurrence"** are deleted and replaced by the following:

### A. Limit Of Liability

Our total liability under "Personal Injury" Coverage for all damages resulting from any one offense will not be more than the limit of liability shown in the Declarations for Coverage **E**. This limit is the same regardless of the number of "insureds", claims made or suits brought.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one offense.

### C. Duties After Offense

In the event of a covered offense, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

**a.** The identity of the policy and "named insured";

**b.** Reasonably available information on the time, place and circumstances of the offense; and

**c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the offense;

Includes copyrighted material of Insurance Services Office, Inc., With Its Permission, © ISO Properties, Inc., 2001

HW 24 82 05 06

CSAA_COVINGTON 0399

INSURED COPY



**4.** At our request, help us:

    **a.** To make settlement;

    **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

    **c.** With the conduct of suits and attend hearings and trials; and

    **d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "personal injury".

All other provisions of this policy apply.

CSAA_COVINGTON 0400    INSURED COPY