## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

TAMMY COVINGTON and ⠀⠀⠀⠀⠀⠀⠀⠀⠀)
JEFFREY COVINGTON, ⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Plaintiffs, ⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs. ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 19-cv-00718-PRW
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
CSAA FIRE AND CASUALTY ⠀⠀⠀⠀⠀)
INSURANCE, d/b/a AAA FIRE AND ⠀⠀)
CASUALTY INSURANCE COMPANY, INC.,)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Defendant. ⠀⠀⠀⠀⠀⠀⠀)

## DEFENDANT'S TRIAL BRIEF

Defendant CSAA Fire and Casualty Insurance Company ("CSAA") respectfully submits this Trial Brief regarding issues pertinent to the upcoming trial proceedings. In sum, Plaintiffs cannot prove: (1) any breach of the policy, as the damages were the result of causes excluded under the policy, even if they were not the exclusive cause of the leak, and Plaintiffs' own failure to mitigate or inform Defendant so Defendant could ascertain if mitigation was necessary; (2) any bad faith as CSAA's determination that the damages were the result of causes excluded under the policy was reasonable and Plaintiffs did not suffer any damages attributable to CSAA's purported bad faith conduct; (3) any bad faith as a result of a failure to investigate, as the basis for the bad faith claim is predicated on reports from the investigation and no additional investigation would affect CSAA's determination; and (4) any grounds for punitive damages.

In addition, unless rendered unnecessary as the result of the Court's ruling on CSAA pending Motion for Summary Judgment, CSAA anticipates making a Rule 50 motion at

the close of Plaintiffs' case.[1]   CSAA believes the matters addressed herein are directly

pertinent to such a motion, providing relevant argument and authority supportive of its

position.

## I.      NO BREACH OF CONTRACT

Plaintiffs seek payment under the policy at issue for damages related to water

damage to the floor of their home.  CSAA determined, however, that the damage was not

a covered loss because it was the result of causes excluded from coverage.

The Policy specifically excludes:

> Constant or repeated seepage or leakage of water or the presence or
> condensation of humidity, moisture or vapor, over a period of weeks, months
> or years unless such seepage or leakage of water or the presence or
> condensation of humidity, moisture or vapor is unknown to all "insureds"
> and is hidden within the walls or ceilings or beneath the floors or above the
> ceilings of a structure.

CSAA_COVINGTON 0389.

> We do not insure for loss caused directly or indirectly by any of the
> following. Such loss is excluded regardless of any other cause or event
> contributing concurrently or in any sequence to the loss. These exclusions
> apply whether or not the loss event results in widespread damage or affects
> a substantial area…"Fungi", Wet Or Dry Rot, Or Bacteria.

---

[1] Fed.R.CivP. 50(a) provides in pertinent part:
   (1) *In General.* If a party has been fully heard on an issue during a jury trial and the
       court finds that a reasonable jury would not have a legally sufficient evidentiary
       basis to find for the party on that issue, the court may:
       (A) resolve the issue against the party; and
       (B) grant a motion for judgment as a matter of law against the party on a claim or
           defense that, under the controlling law, can be maintained or defeated only with
           a favorable finding on that issue.
   (2) *Motion.* A motion for judgment as a matter of law may be made at any time before
       the case is submitted to the jury. The motion must specify the judgment sought and
       the law and facts that entitle the movant to the judgment.

CSAA_COVINGTON 0390.

> B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.
> ...
> 3. Faulty, inadequate or defective:
> ...
>> b.  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>> c.  Materials used in repair, construction, renovation or remodeling; or
>> d.  Maintenance;

CSAA_COVINGTON 0352.

> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:
>
> 1. Give prompt notice to us or our agent;
> …
> 4. Protect the property from further damage. If repairs to the property are required, you must:
>> a.  Make reasonable and necessary repairs to protect the property; and
>> b.  Keep an accurate record of repair expenses…

CSAA_COVINGTON 0353.[2]

---

[2] CSAA can anticipate a scenario where Plaintiffs argue that their failure to mitigate or timely notify CSAA are moot issues not to be shown to or discussed in front of a jury because the specific policy provision was not listed in the July 10, 2018 denial letter, although said denial letter did expressly reserve the right to add facts and/or legal support and noted the mitigation requirement going forward.  However, "Oklahoma courts have long recognized and continue to recognize the duty of one who is injured by the acts of another, whether by tort or contract violation or other wrong, to do that which an ordinarily prudent person would do under similar circumstances to mitigate or reduce his loss or damages." *F.D.I.C. v. Barker*, No. CIV 88-1359-R, 1990 WL 517034, at \*33 (W.D. Okla. Jan. 3, 1990).  Regardless, "[c]ourts in this Circuit have declined to prohibit an insurer from enforcing a policy exclusion that it did not cite as the basis for initial claim denial." *McCrary v. Country Mut. Ins. Co.*, 180 F. Supp. 3d 915, 921 (N.D. Okla. 2016); *see also,*

All three of CSAA's inspectors indicated that at least some of the cause of loss was constant or repeated seepage or moisture/humidity. CSAA_COVINGTON 0606-607 (noting multiple water rings on walls indicating repeated flooding, inadequate crawl space ventilation causing excessive humidity); CSAA_COVINGTON 0450 (humidity level so high that condensation drain was sweating and dripping and presence of mildew); CSAA_COVINGTON 0449 (lengthy leakage from AC unit). CSAA expressly denied coverage on this basis: "constant or repeated seepage of [*sic*] leakage of water over a period of weeks, months, or years resulting in visible water damage throughout the home and mold in the furnace room." CSAA_COVINGTON 0445. Additionally, Plaintiffs' own expert provided that the leak was ongoing and that mold had developed in the crawlspace under the home, which was "extremely humid" nearly ten (10) months after the alleged date of loss. CSAA_COVINGTON 0464-0466.

Plaintiffs also knew about the water leakage on August 8, 2017, when they chose to superficially dry the floor rather than notifying CSAA or contacting a professional. COVINGTON 0663, 0669. Additionally, Plaintiff Jeffrey Covington saw water dripping from the condensation pipe onto the ground in the crawl space. Deposition of Jeffrey Covington at 194:14-25. Given the advanced growth of the mold, there is no doubt that Plaintiff must have observed it as well while under the crawlspace. Despite this, in the

---

*Cust–O–Fab Serv. Co., LLC v. Admiral Ins. Co.*, 158 Fed.Appx. 123, 129–30 (10th Cir.2005); *Gallegos v. Safeco Ins. Co. of Am.*, 646 F. App'x 689, 695 (10th Cir. 2016).

days, weeks, and first nine (9) months after the alleged loss was first discovered, Plaintiffs did not contact CSAA or any mitigation service, leak detection company, or other professional to evaluate the damage or assist in cleaning up the water. CSAA_COVINGTON 0663.

"Under Oklahoma law, '[i]nsurance policies are contracts and they should be construed as every other contract − according to its terms where it is not ambiguous.'" *Inks v. USAA Gen. Indem. Co.*, No. 17-CV-00210-GKF-FHM, 2018 WL 3589116, at *4 (N.D. Okla. June 27, 2018), *quoting Equity Ins. Co. v. City of Jenks*, 2008 OK 27, 184 P.3d 541, 544. "To recover for breach of contract, a plaintiff must establish: '(1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach.'" *Id., quoting Cates v. Integris Health, Inc.*, 2018 OK 9, 412 P.3d 98.

There was a policy in effect. The policy covered certain losses but not others. Plaintiffs paid premiums for coverage for certain losses and not others. The policy plainly and unambiguously excluded the damage from the repeated seepage, the humidity, the faulty construction and the fungus. As a result, CSAA properly denied Plaintiffs' claim. There is plainly no breach of contract here.

## II.    NO BAD FAITH CONDUCT

The Oklahoma Supreme Court first recognized the tort of bad faith in *Christian v. American Home Assur. Co*., 1977 OK 141, 577 P.2d 899. "[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort." *Id*. at 904. The duty of good faith does not require an insurer to pay every claim made by an insured, and there may be valid disagreements between the

parties.  *Id.* at 905. *See also Badillo v. Mid Century Ins. Co.,* 2005 OK 48 ¶ 28, 121 P.3d 1080, 1093 ("[t]he essence of an action for breach of the duty of good faith and fair dealing 'is the insurer's unreasonable, bad-faith conduct'"); *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 17, 998 P.2d 1219, 1223 (recognizing that insurer "acted reasonably as a matter of law and, thus, summary judgment was proper"); *Navarez v. State Farm Mut. Auto. Ins. Co.,* 1999 OK CIV APP 92 ¶13, 989 P.2d 1051, 1053 (citing *McCorkle v. Great Atlantic Insurance Co.*, 1981 OK 128, 637 P.2d 583) ("The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions").  "[T]he fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is 'legitimate.'"  *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993), *citing Manis v. Hartford Fire Ins. Co.,* 1984 OK 25, 681 P.2d 760, 762 ("Defendant's evidence, if believed by the jury, could have supported an arson defense.")

> The elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. ***The absence of any one of these elements defeats a bad faith claim.***

*Ball v. Wilshire Ins. Co.*, 2009 OK 38, ¶ 21, 221 P.3d 717, 724 (emphasis added); *see also, 4100 Perimeter Ltd. P'ship v. Hartford Cas. Ins. Co.*, No. CIV-14-0641-HE, 2015 WL 5008410, at *3 (W.D. Okla. Aug. 20, 2015), *citing Badillo v. Mid Century Ins. Co.,* 121 P.3d 1080, 1093 (Okla.2005).

6

*Badillo,* 121 P.3d at 1094, also clarified that "bad faith" requires a showing of "more than simple negligence." This point was recently reiterated by the Oklahoma Supreme Court when it held that "a party prosecuting a claim of bad faith carries the burden of proof and must plead all of the elements of an intentional tort." *Garnett v. Government Employees Ins. Co.*, 2008 OK 43, 186 P.3d 935, 944. Thus, to prove a *prima facie* case of bad faith against CSAA, Plaintiffs must establish more than just a mistake or negligence.

As stated in *City National Bank and Trust Co.* v. *Jackson National Life Insurance,* 1990 OK CIV APP 89, ¶ 18, 804 P .2d 463, 468: "We therefore hold that before the issue of insurer's alleged bad faith may be submitted to the jury, the Trial Court must first determine, *under the facts of the particular case* and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." (Emphasis added). "[T]o establish such a claim, the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for [its determination]." *Houchin v. Hartford Life Ins. Co.*, No. CIV-14-522-D, 2016 WL 502075, at *6 (W.D. Okla. Feb. 8, 2016), citing *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) and *McCoy v. Okla. Farm Bureau Mut. Ins. Co.*, 1992 OK 43, 841 P.2d 568, 572.

**A.  No Breach of Contract Means No Bad Faith in the Instant Litigation.**

Determining whether an insurer committed bad faith concerns an examination of the conduct of the insurer with respect to the particular insurance claim at issue over the time period when the insurer was requested to perform its contractual obligation to the insured. That is because the decisive question is whether the insurer "had a good faith

belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *Buzzard* v. *McDaniel,* 1987 OK 28, ¶ 10, 736 P.2d 157, 159.

> "A central issue in any analysis to determine whether breach has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing." *Id.* at 1093-94. "Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law." *Beers v. Hillory*, 241 P.3d 285, 293 (Okla. Civ. App. 2010); *see also Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170-71 (Okla. 2000) ("[B]ad faith cannot exist if an insurer's conduct was reasonable under the circumstances.").

*Inks v. USAA Gen. Indem. Co.*, No. 17-CV-00210-GKF-FHM, 2018 WL 3589116, at *6 (N.D. Okla. June 27, 2018).

As discussed above, the policy explicitly provides that, if an excluded cause is one of any number of causes of the damage, the loss is not covered.  Even if CSAA was ultimately wrong (which CSAA contests), Plaintiffs, at a minimum, concede that there was damage as the result of a backed-up drain.  It simply is not unreasonable for CSAA to conclude that the damage was an excluded loss.  Thus, Plaintiff's bad faith claim cannot stand.

## B.  CSAA Had  Justifiable Reason to Deny Coverage.

The inspections and the corresponding reports generated by, or on behalf of, CSAA demonstrate that, as a matter of law, CSAA had a justifiable reason to deny the Plaintiffs' claim.

> Tort liability may be imposed only where there is a clear showing that the insurer, unreasonably and in bad faith, withholds payment of the claim of its insured. *Christian v. American Home Assurance Co.,* 1977  OK 141, 577

P.2d 899. Under Oklahoma law, bad faith cannot exist if an insurer's conduct was reasonable under the circumstances. *Manis v. Hartford Fire Ins. Co.,* 1984 OK 25, 681 P.2d 760.

> *Manis* instructs that the tort of bad faith does not foreclose the insurer's right to deny a claim. An insurer clearly has the right to resist payment and litigate any claim to which the insurer has a reasonable defense. Resort to a judicial forum is not *per se* bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. In such circumstances the insurer does not risk a tortious breach of contract.

*Duensing v. State Farm Fire & Cas. Co.*, 2006 OK CIV APP 15, ¶¶ 36-37, 131 P.3d 127, 137 (reversing trial bad faith verdict); *see also, Beers v. Hillory*, 2010 OK CIV APP 99, ¶26, 241 P.3d 285, 293 ("[w]here an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law"). Even if the Court agrees with Plaintiffs that there should have been coverage under the policy (which CSAA expressly denies), the Court should, at the very least, acknowledge that the Plaintiffs have presented no evidence or facts to support their purely speculative assertions that the actions of CSAA could be viewed reasonably by a jury as bad faith. *Oulds v. Principal Mut. Life Ins. Co.,* 6 F.3d 1431, 1436 (10th Cir. 1993) ("to establish such a claim, the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim.").

## C.  No Bad Faith Damages Means No Bad Faith Claim.

Among the various elements required to establish bad faith, Plaintiff must prove the existence of damages.  *See e.g.,* Defendant's Proposed Jury Instruction No. 17, submitted contemporaneously herewith ("That the violation by Defendant of its duty of good faith and fair dealing was the direct cause of the ***injuries*** sustained by the Plaintiffs, if any.");

*see also* OUJI-Civ. No. 22.2 (including as an element of bad faith "the injury sustained by [Plaintiff]."); OUJI-Civ. No. 22.3 (same); *Inks v. USAA Gen. Indem. Co.,* No. 17-CV-00210-GKF-FHM, 2018 WL 3589116, at *6 (N.D. Okla. June 27, 2018), *quoting Ball v. Wilshire Ins. Co.,* 2009 OK 38, 221 P.3d 717, 724. In fact, the comments to OUJI-Civ. No. 22.4, which enumerates bad faith damages, provide: "Any elements of damages that are not supported by the evidence should be omitted from the instruction."

Plaintiffs were unable to articulate damages they have suffered as a direct result of the alleged bad faith actions of CSAA. Plaintiff Jeffrey Covington was unable to identify damage he suffered as a result of the alleged bad faith actions of CSAA. *Id.* at 205:9-207:6. He denied: (1) suffering any financial loss (*Id.* at 202:17-19); (2) having any mental pain and suffering (*Id.* at 204:4-7); (3) seeing a counselor (*Id.* at 204:13-16); and (4) suffering a loss of reputation in the community (*Id.* at 213:21-24). Similarly, Plaintiff Tammy Covington denied that, as a result of CSAA's handling of the claim she: (1) suffered any financial loss (Deposition of Mrs. Covington, 67:19-22); (2) had mental pain and suffering (*Id.* at 68:7-10); and (3) suffered a loss of reputation in the community (*Id.* at 67:23-68:6).

Indeed, Plaintiff Jeffrey Covington made one call to CSAA to initiate his claim. Thereafter, Ian Rupert, Plaintiff's brother-in-law, who identified the potential claim on the May 2018 Mothers' Day visit to the home, solely communicated with CSAA. Plaintiffs contend that the "tone and tenor" of the Plaintiffs' only conversation with CSAA "led" Mr. Covington "to believe that CSAA would not cover the claim." Response, Doc. 24 at 6. Plaintiffs do not tie this complaint to any allegation of bad faith conduct. *Id.* A speculative belief based on tone and tenor (and not actual statements or actions) is simply not evidence

of bad faith. In fact, on the very same phone call, Plaintiffs admit CSAA did not deny the claim and, instead, told Mr. Covington that a field adjuster would be sent out to the subject property. *Id.*

In sum, Plaintiffs cannot prove the elements necessary for a bad faith claim because they have suffered no damages as a result of Defendant's alleged misconduct.

### D. No Evidence that a More Thorough Investigation would Make a Difference.

Included among Plaintiffs' generic allegations of bad faith is a claim that CSAA acted improperly in investigating Plaintiffs' claims. Specifically, Plaintiffs contend that Defendant "fail[ed] to properly investigate the loss and claim." Petition at ¶ 14(a). Plaintiffs have no evidence that a more thorough investigation would result in a different outcome.

> "Under Oklahoma law, ... an insurer's investigation need only be reasonable, not perfect." *Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 F. App'x 587, 592 (10th Cir. 2003) (unpublished) (citing *Buzzard*, 824 P.2d at 1109).[11] Accordingly, " 'when a bad faith claim is premised on inadequate investigation, the [claimant] must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information' that would have delegitimized the insurer's dispute of the claim." *Bannister*, 692 F.3d at 1128 (quoting *Timberlake*, 71 F.3d at 345). "[E]vidence of inadequate investigation must 'suggest a sham defense or an intentional disregard of uncontrovertible facts' in order to be put to a jury." *Id.*; *see also Oulds*, 6 F.3d at 1442.

*Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1317 (10th Cir. 2019). As a result, Plaintiffs' bad faith claim predicated on CSAA's investigation, even if it survived the lack of any element of damages, should not be presented to the jury.

**III.     There is No Basis for Submitting the Issue of Punitive Damages to the Jury.**

For punitive damages to be awarded, there must be evidence of wanton or reckless disregard of the rights of others, and/or of oppression, fraud, or malice. *See Cooper v. National Union Fire Ins.,* 1996 OK CIV APP 52, 921 P.2d 1297, *and* 23 O.S. § 9(A). Plaintiffs present no facts or evidence to support a finding that any of the actions by CSAA could warrant an award of punitive damages. Additionally, it is settled law in Oklahoma that an award of punitive damages cannot stem solely from a breach of contract theory of recovery. *See Duensing,* 131 P.3d at 138 ("There can be no punitive damage award where there is no bad faith award."); *Wilspec Technologies, Inc. v. DunAn Holding Group, Co., Ltd.* 2009 OK 12, ¶17, 204 P.3d 69, 74 ("[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable") (internal citations omitted).  Because the Plaintiffs fail to provide any facts or evidence to support a claim of bad faith, the only remaining possibility (one that CSAA expressly denies) is recovery under a breach of contract theory. In that case, no punitive damages can be awarded. Thus, under no reasonable scenario can a claim for punitive damages be presented to the jury in this case.

## CONCLUSION

In summary, Plaintiffs simply cannot support their breach of contract or bad faith claims.  There are no facts and no inferences that could reasonably lead to a jury verdict in favor of Plaintiffs. As Judge DeGiusti recently stated:

> The mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a plaintiff to a jury trial. *Id.* (citing *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins*., 1990 OK CIV APP 89, 804

P.2d 463, 468). A jury question arises only where relevant, material facts are in dispute or the undisputed facts permit different conclusions as to the reasonableness and good faith of the insurer's conduct. *Id.* "On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." *Id.* at 1436-37. "Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id.* "To hold otherwise would subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims." *Oulds*, 6 F.3d at 1437 (quoting *Manis*, 681 P.2d at 762).

*Houchin v. Hartford Life Ins. Co.*, No. CIV-14-522-D, 2016 WL 502075, at *6 (W.D. Okla.

Feb. 8, 2016).  Thus, Plaintiffs' claims should be not be submitted to the jury.

Respectfully submitted,


s/ Matthew C. Kane
Gerard F. Pignato, OBA No. 11473
Matthew C. Kane, OBA No. 19502
Joshua K. Hefner, OBA No. 30870
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
Telephone:   405-239-6040
Facsimile:    405-239-6766
Email:           jerry@ryanwhaley.com
                     mkane@ryanwhaley.com
                     jhefner@ryanwhaley.com


**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2020, I transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Douglas J. Shelton, Esquire
SHELTON & WALKLEY LAW GROUP
7701 South Western Avenue, Suite 201
Oklahoma City, Oklahoma 73139
Telephone:     405-605-8800
Facsimile:     405-601-0677
Email: dshelton@sheltonlawok.com

s/ Matthew C. Kane
For the Firm