## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAMMY COVINGTON and | ) | |
| JEFFREY COVINGTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-00718-PRW |
| | ) | |
| CSAA FIRE AND CASUALTY | ) | |
| INSURANCE, d/b/a AAA FIRE AND | ) | |
| CASUALTY INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTIONS *IN LIMINE*

Respectfully submitted,

Gerard F. Pignato, OBA No. 11473
Matthew C. Kane, OBA No. 19502
**RYAN WHALEY**
400 N. Walnut Ave.
Oklahoma City, Oklahoma 73104
Telephone:  405-239-6040
Facsimile:  405-239-6766
Email:      jerry@ryanwhaley.com
            mkane@ryanwhaley.com

**ATTORNEYS FOR DEFENDANT**

**DATED:   August 24, 2020**

## <u>TABLE OF CONTENTS</u>

DEFENDANT'S MOTIONS *IN LIMINE* ........................................................................ 1

*NO. 1 – INADMISSIBILITY OF EVIDENCE AND TESTIMONY REGARDING OKLAHOMA'S UNFAIR CLAIMS SETTLEMENT PRACTICES ACT* ...................................................................................... 1

*NO. 2 – INADMISSIBILITY OF "GOLDEN RULE" TESTIMONY BY WITNESSES OR COMMENTS BY COUNSEL* ............................................... 4

*NO. 3 – INADMISSIBILITY OF EVIDENCE OF RESERVES SET BY CSAA* .................................................................................................... 4

*NO. 4 – INADMISSIBILITY OF ANY SUGGESTION OR ARGUMENT BY PLAINTIFFS THAT CSAA SHOULD LOOK FOR REASONS TO PAY A CLAIM OR PAY MORE ON A CLAIM* ...................................................... 10

*NO. 5 – INADMISSIBILITY OF ANY SUGGESTION OR ARGUMENT BY PLAINTIFFS THAT CSAA OWES THE "BENEFIT OF THE DOUBT" TO ITS INSURED* ...................................................................................... 11

*NO. 6 – INADMISSIBILITY OF EVIDENCE OF OTHER CLAIMS OR LAWSUITS AGAINST CSAA* ...................................................................... 13

      I.      Evidence of Other Claims is Irrelevant ........................................... 13

      II.     Evidence of Other Complaints or Lawsuits Would Cause Unfair Prejudice to Defendant and Confuse the Jury ................................................................................................ 16

      III.    Evidence of Other Complaints is Inadmissible as Evidence of Unrelated Misconduct ................................................. 20

      IV.    Evidence of Other Complaints Constitutes Inadmissible Hearsay ...................................................................... 20

*NO. 7 – INADMISSIBILITY OF ANY REFERENCE TO PUNISHING DEFENDANT AND/OR PUNITIVE DAMAGES ARGUMENTS IN THE FIRST STAGE OF TRIAL* ............................................................................ 21

*NO. 8 – ANY REFERENCE TO CSAA'S CLAIM HANDLING GUIDELINES IS INADMISSIBLE* .................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyds of London,*
  215 OK CIV APP 34, 348 P.3 216 ............................................................................ 3

*Allstate Ins. Co. v. Herron,*
  634 F.3d 1101 (9th Cir. 2011) ................................................................................ 24

*American Biomedical Group, Inc. v. Norman Regional Hospital Authority,*
  1993 OK CIV APP 83, 855 P.2d 1074 ................................................................... 19

*American Protection Ins. Co. v. Helm Concentrates, Inc.,*
  140 F.R.D. 448 (E.D. Cal. 1991) .............................................................................. 7

*Badillo v. Mid Century Ins. Co.,*
  2005 OK 48, 121 P.3d 1080 ........................................................................16-17, 18

*Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.,*
  2000 OK 55, 11 P.3d 162 ....................................................................................... 12

*Beers v. Hillory,*
  2010 OK CIV APP 99, 241 P.3d 285 ................................................................. 2, 11

*B.H. v. Gold Fields Mining Corp.,*
  2007 WL 439031 (N.D. Okla. Feb. 1, 2007) ......................................................... 23

*Bird v. Penn Central Co.,*
  61 F.R.D. 43 (E.D. Pa. 1973) .................................................................................. 9

*Black v. M & W Gear Co.,*
  269 F.3d 1220 (10th Cir. 2001) .............................................................................. 14

*Blevins v. Cessna Aircraft Co.,*
  728 F.2d 1576 (10th 1984) ....................................................................................... 4

*Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.,*
  2014 WL 2690150 (D. Kan. June 13, 2014) ............................................................ 9

*Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.,*
  2006 WL 355289 (N.D. Ohio Feb. 15, 2006) .......................................................... 6

*Burley v. Homeowners Warranty Corp.,*
    773 F.Supp. 844 (S.D. Miss. 1990) ................................................................ 17, 18

*Central of Georgia Railroad Company v. Swindle,*
    398 S.E.2d 365 (Ga. 1990) ...................................................................................... 23

*Christian v. American Home Assur. Co.,*
    1977 OK 141, 577 P.2d 899 .................................................................................... 12

*Cont'l Ins. Co. v. Beecham, Inc.,*
    836 F.Supp. 1027 (D.N.J. 1993) ............................................................................... 7

*CR Operating Co. v. Great Am. Ins. Co. of N.Y.,*
    2013 WL 12091068 (W.D. Okla. Sept. 27, 2013) ................................................. 7

*Crawford v. Muscletech Res. & Dev., Inc.,*
    2002 WL 31852833 (W.D. Okla. Oct. 10, 2002) ................................................. 18

*Cummins v. Ace Am. Ins. Co.,*
    2011 WL 130158 (S.D. Ind. Jan. 14, 2011) ....................................................... 6, 8

*Estate of Mali v. Federal Ins. Co.,*
    2011 WL 2516246 (D. Conn. 2011) ......................................................................... 9

*Estate of Tobin v. Smithkline Beecham Pharms.,*
    2001 WL 36102165 (D. Wyo. May 18, 2001) ...................................................... 18

*Federal Realty Inv. Trust v. Pacific Ins. Co.,*
    760 F.Supp. 533 (D. Md. 1991) ............................................................................. 10

*Fichtel v. Board of Directors of Rivershore of Naperville Condominium Ass'n,*
    907 N.E.2d 903 (Ill. App. 2009) ............................................................................. 24

*Fid. & Dep. Co. of Md. V. McCulloch,*
    168 F.R.D. 516 (E.D. Pa. 1996) ............................................................................... 7

*Fiechtner v. Am. Family Mut. Ins. Co.,*
    2011 WL 4345684 (D. Colo. Sept. 15, 2011) ...................................................... 17

*First Horizon Nat'l Corp. v. Houston Cas. Co.,*
    2016 WL 5869580 (W.D. Tenn. Oct. 5, 2016) ...................................................... 6

*Garnett v. Government Employees Ins. Co.*,
    2008 OK 43, 186 P.3d 935 ................................................................. 12

*Gaspard v. S. Farm Bureau Cas. Ins. Co.*,
    155 So.3d 24 (La. Ct. App. 2014) ....................................................... 8

*Gianfillipo v. Northland Casualty Company*,
    1993 OK 125, 861 P.2d 308 .............................................................. 1

*Godfrey v. CSAA Fire and Casualty Ins. Co.*,
    19-CV-329-JE (W.D. Okla. March 4, 2020) ...................................... 3

*Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*,
    2016 WL 1319697 (N.D. Ala. Apr. 5, 2016) ...................................... 6

*Greenberg v. Service Business Forms Industries, Inc.*,
    882 F.2d 1538 (10th Cir. 1989) ......................................................... 14

*Harwick v. Dye*,
    1999 OK 8, 975 P.2d 453 .................................................................. 22

*Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*,
    623 A.2d 1099 (Del. Super. Ct. 1991) ............................................... 7, 8

*Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*,
    117 F.R.D. 283 (D.D.C. 1986) .......................................................... 7

*In re Couch*,
    80 B.R. 512 (S.D. Cal. 1987) ............................................................ 5

*James v. State Farm Mutual Automobile Insurance Company*,
    1991 OK 37, 810 P.2d 365 ................................................................ 19

*Johnson v. Ford Motor Co.*,
    988 F.2d 573 (5th Cir. 1993) ............................................................. 21

*Johnson v. Liberty Mutual Ins. Co.*,
    648 F.3d 1162 (10th Cir. 2011) ......................................................... 24, 25

*Jordan v. Cates*,
    1997 OK 9, 935 P.2d 289 .................................................................. 19

*Kerr v. Clary,*
    2001 OK 90, 37 P.3d 841 ........................................................................ 21

*LeBlanc v. Travelers Home and Marine Ins. Co.,*
    2011 WL 2748616 (W.D. Okla. July 13, 2011 ...................................... 6

*Lewis v. AETNA US Healthcare,*
    78 F.Supp.2d 1202 (N.D. Okla. 1999) .................................................. 1

*Liberty Mut. Fire Ins. Co. v. APAC-Southeast, Inc.,*
    2008 WL 1132055 (N.D. Ga. May 16, 2008) ....................................... 8

*Lierly v. Tidewater Petroleum Corp.,*
    2006 OK 47, 139 P.3d 897 .................................................................... 21

*Light v. Allstate Ins. Co.,*
    48 F.Supp.2d 615 (S.D. W. Va. 1998) .................................................. 9

*Lincoln General Ins. Co. v. Access Claims Adm'rs, Inc.,*
    596 F.Supp.2d 1351 (E.D. Cal. 2009) ................................................. 24

*Lipton v. Superior Court,*
    56 Cal.Rptr.2d 341 (1996) ...................................................................... 8

*Madill Bank and Trust Co. v. Hermann,*
    1987 OK CIV APP 4, 738 P.2d 567 ..................................................... 19

*Martensen v. Koch,*
    2015 WL 332694 (D. Colo. Jan. 26, 2015) ......................................... 18

*McCoy v. Oklahoma Farm Bur.,*
    1992 OK 43, 841 P.2d 568 .................................................................... 11

*Miller v. Kenny,*
    325 P.3d 278 (Wash. Ct. App. 2014) ..................................................... 8

*Mine Safety Appliances Co. v. N. River Ins. Co.,*
    2012 WL 12930363 (W.D. Pa. Mar. 14, 2012) ..................................... 6

*Moody v. Ford Motor Co.,*
    2007 WL 869693 (N.D. Okla. March 20, 2007) ............................. 22, 23

*Peden v. State Farm Mut. Auto. Ins. Co.,*
    2018 WL 3496735 (D. Colo. July 20, 2018)..........................................................8

*Porter v. Farmers Insurance Company,*
    2011 WL 1566018 (N.D. Okla., April 25, 2011) ....................................................9

*RCHFU, LLC v. Marriott Vacations Worldwide Corp.,*
    2020 WL 1325156 (D. Colo. Mar. 20, 2020)........................................................18

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,*
    139 F.R.D. 609 (E.D. Pa. 1991) ............................................................................6

*Richey v. Chappell,*
    594 N.E.2d 443 (Ind. Ct. App. 1992) ....................................................................7

*Robinson v. Borg-Warner Protective Services Corp.,*
    2001 OK 59, 31 P.3d 1041 ...................................................................................17

*Schierenberg v. Howell-Baldwin,*
    571 N.E.2d 335 (Ind. Ct. App. 1991) ................................................................7, 8

*Singleton v. State Farm Fire & Cas. Co.,*
    928 So.2d 280 (Ala. 2005) ...................................................................................24

*Spearman Industries, Inc. v. St. Paul Fire and Marine Ins. Co.,*
    128 F.Supp.2d 1148 (N.D. Ill. 2001).....................................................................7

*State ex rel. Southwestern Bell Telephone Company v. Brown,*
    1974 OK 19, 519 P.2d 491 ...................................................................................22

*State Farm v. Balmer,*
    891 F.2d 874 (11th Cir. 1990)..............................................................................24

*State Farm Mutual Auto Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) ................................................................................15, 16, 21

*State of Oklahoma ex rel. Department of Public Safety v. 1988 Chevrolet Pickup VIN No. 1GCDC14K8JZ323, OK Tag No. GFX19,*
    1993 OK CIV APP 6, 852 P.2d 786......................................................................19

*Sunahara v. State Farm Mut. Auto. Ins. Co.,*
    280 P.3d 649 (Colo. 2012) ................................................................................7, 8

*Tansy v. Dacomed Corp.*,
  1994 OK 146, 890 P.2d 881 ............................................................................... 20

*Union Carbide Corp. v. Travelers Indem. Co.*,
  61 F.R.D. 411 (W.D. Pa. 1973) ...................................................................... 5, 10

*United States Football League v. National Football League*,
  634 F.Supp. 1155 (S.D.N.Y. 1986) ..................................................................... 18

*U.S. Fire Ins. Co. v. City of Warren*,
  2012 WL 1454008 (E.D. Mich. Apr. 26, 2012) ...................................................... 6

*Walker v. Chouteau Lime Co., Inc.*,
  1993 OK 35, 849 P.2d 1084 ............................................................................... 1

*Wilson v. Muckala*,
  303 F.3d 1207 (10th Cir. 2002) ......................................................................... 14

*Zappile v. Amex Assur. Co.*,
  928 A.2d 251 (Pa. Super. 2007) ........................................................................ 24

## <u>STATUTES</u>

12 O.S. § 2402 ................................................................................................ 22

12 O.S. § 2403 .......................................................................................... 18, 19

23 O.S. § 9.1 ................................................................................................. 14

23 O.S. § 9.1(A) ............................................................................................ 16

23 O.S. Supp. 2002, § 9.1(B)-(D) ...................................................................... 21

Title 36 O.S. § 1250.1 ..................................................................................... 1

Title 36 O.S. § 1250.10 ................................................................................... 1

Title 36 O.S. § 1250.10(B) .............................................................................. 2

Title 36 O.S. § 1250.11 ................................................................................... 1

Title 36 O.S. § 1250.12 ................................................................................... 2

Title 36 O.S. § 1250.13 .................................................................................... 2

Title 36 O.S. § 1250.14 .................................................................................... 2

## **RULES**

Fed. R. Evid. 402 ................................................................................... 23, 25

Fed. R. Evid. 403 ............................................................................ 17, 23, 25

Fed. R. Evid. 801 ......................................................................................... 21

Fed. R. Evid. 2404 ....................................................................................... 20

## **OTHER AUTHORITIES**

75A Am.Jur.2d Trial § 547 ............................................................................. 4

33 Fed. Proc., L.Ed. § 77:262 ........................................................................ 4

Steven Plitt & John K. Wittwer, *The Discoverability of Reserve
    Information in Bad Faith Cases,* 31 INS. LITIG. REP. 81 (2009) ............................. 8

## DEFENDANT'S MOTIONS *IN LIMINE*

Defendant CSAA Fire and Casualty Company, Inc. ("CSAA") moves this Court for an Order granting the following Motions *in Limine*.   In the event the Court would elect to hold its ruling until trial on a particular Motion, CSAA would request the Court require Plaintiffs' counsel to inform the Court of their intent to introduce such evidence or testimony at issue to allow for appropriate argument and a Court ruling before such evidence or testimony is introduced to the jury.

### No. 1 - Inadmissibility of Evidence and Testimony Regarding Oklahoma's Unfair Claims Settlement Practices Act

CSAA requests the Court prohibit Plaintiffs, and their counsel, and instructing Plaintiffs' counsel to direct Plaintiffs' witnesses, not to mention, refer to, or convey to the jury, in any manner, the subject of Oklahoma's Unfair Claims Settlement Practices Act ("the Act"), Title 36 O.S. § 1250.1, *et seq*.

It is settled law that Oklahoma does not recognize a private right of action for violation of the Act.   *Gianfillipo v. Northland Casualty Company*, 1993 OK 125, 861 P.2d 308, 310; *Walker v. Chouteau Lime Co., Inc.*, 1993 OK 35, 849 P.2d 1084; *Lewis v. AETNA US Healthcare*, 78 F.Supp.2d 1202, 1206 (N.D. Okla. 1999).   In fact, the Act clearly states that the Oklahoma Insurance Commissioner has the sole jurisdiction to review complaints about insurance company practices by citizens and enforce the provisions of the Act.   Title 36 O.S. § 1250.10.   In addition, the Act gives the Commissioner the right to have hearings, set up investigations and charge individuals who violate the Act.   *Id*. at § 1250.11. Moreover, the Commissioner can enforce the Act through cease and desist orders

(§1250.12), or by issuing fines of not less than $100.00 or more than $5,000.00 for violations of the Act (§§ 1250.13-14).   Clearly, this Act is a method for the Oklahoma Insurance Commissioner to regulate the insurance industry in Oklahoma.   The Act was not intended to be a field guide for plaintiffs in bad faith litigation.

As there is no private right of action for damages under the Act, it is irrelevant and unfairly prejudicial to allow Plaintiffs to parade out various alleged "violations" of the Act as "proof" of bad faith.   The Act only gives the Insurance Commissioner the authority to determine if a violation has occurred (see § 1250.10(B)).   To allow Plaintiffs, their counsel or any of their witnesses in this case to make statements to the jury that such violations have occurred would be highly inappropriate and unfairly prejudicial, as it circumvents the process established by statute.   Such statements create the risk that the jury will infer CSAA has breached its duty of good faith and fair dealing to Plaintiffs simply because of CSAA's alleged violations of the Act.

Clearly, only the Insurance Commissioner, not Plaintiffs, has the right to allege that CSAA violated the Act.   Thus, to allow Plaintiffs or her witnesses to address the Act under the guise that the Act consists of *standards* – or even to allow its counsel to address the Act with CSAA's own witnesses – would be improper as it allows irrelevant, highly prejudicial, confusing and legal issues to be presented to the jury.

As the court stated in *Beers v. Hillory*, 2010 OK CIV APP 99, 241 P.3d 285, 294:

> ". . . a violation of the Act does not necessarily establish bad faith.   An insurer may carelessly fail to perform some duty required by the statute with such frequency to warrant administrative sanction, but that does not establish more than negligent conduct in any individual case."

Similarly, the court in *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyds of London*, 215 OK CIV APP 34, 348 P.3 216, 244 provided: "The Unfair Claims Settlement Practices Act may provide guidance to a trial court in determining whether to grant summary judgment, but it does not function as an appropriate guide for the jury to determine bad faith."   As recently opined by Judge Jodi Dishman in *Godfrey v. CSAA Fire and Casualty Ins. Co.,* 19-CV-329-JD (W.D. Okla. Mar. 4, 2020), Dkt. No. 103 at 12-13:

> Applying *Aduddell*, other federal judges in Oklahoma have also rejected the Godfreys' argument about standard of care. *See, e.g.*, *Stewart v. Brotherhood Mut. Ins. Co.*, No. 16-cv-488-JED-FHM, 2018 WL 4092018, at *6 (N.D. Okla. July 10, 2018) (unpublished); *Dennis v. Progressive N. Ins. Co.*, No.17-cv-182-SLP, 2018 WL 4871039, at *3 (W.D. Okla. Apr. 9, 2018) (unpublished); *Stroud v. Liberty Mut. Ins. Co.*, No. 15-cv-363-GKF-PJC, 2016 WL 10038544, at *2 (N.D. Okla. Oct. 11, 2016) (unpublished). The Court is persuaded by these cases and sees no reason to deviate from their reasoning. Considering *Aduddell*, evidence and reference to the Oklahoma Unfair Claims Settlement Practices Act as a proxy to determine bad faith is irrelevant under Federal Rule of Evidence 401 and, regardless, would be unfairly prejudicial and confuse the issues under Federal Rule of Evidence 403.

> Plainly, the standard for violating the Act is not the same as the bad faith standard.

Thus, there is no legitimate reason for mentioning an irrelevant standard or an Act that has no application to this case.   Stated differently, the introduction of these statutory provisions places a "skunk in the jury box" by giving Plaintiffs a false set of standards that the Jury may feel compelled to follow.   This is an untenable situation and should be strictly prohibited at trial.

### NO. 2 - *INADMISSIBILITY OF "GOLDEN RULE"*
### *TESTIMONY BY WITNESSES OR COMMENTS BY COUNSEL*

"It is improper for counsel to argue the Golden Rule – that is, that the jurors should put themselves into the shoes of the Plaintiff and do unto [it] as they would have [it] do unto them under similar circumstances."   33 Fed. Proc., L.Ed. §77:262.   The Tenth Circuit has recognized the impropriety of arguing the Golden Rule in *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1580 (10th 1984), where it stated: "We note that a Golden Rule appeal "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence."

Generally, an improper "Golden Rule" argument occurs when an attorney asks the jury, in a personal injury case, to put themselves in the shoes of the plaintiff and award damages in an amount that they would want for their own pain and suffering.   75A Am.Jur.2d Trial § 547.   Alternatively, an attorney may ask the jury to consider the harm to the public.   Accordingly, CSAA requests that Plaintiffs be barred at trial from making any such arguments which would fall under the Golden Rule, as such arguments would unfairly prejudice CSAA.

### NO. 3 - *INADMISSIBILITY OF EVIDENCE OF RESERVES SET BY CSAA*

CSAA moves this Court for an Order *in Limine* prohibiting Plaintiffs, Plaintiffs' counsel, and/or Plaintiffs' witnesses, including expert witnesses, from mentioning or referring to, in any manner, the reserve set by CSAA on Plaintiffs' claim.

CSAA uses a variety of reserves, *e.g.*, statutory reserves, indemnity reserves, expense reserves, claim reserves, *etc*.  During the pendency of this claim, CSAA set various reserves, but these reserves did not reflect CSAA's evaluation of the claim.  Rather, CSAA was addressing requirements imposed by insurance departments of the various states, as well as CSAA's own internal controls, related to both first and third-party claims.  Typical state statutes require that reserves be set to encompass a multitude of factors including the costs of adjustment and settlement of claims.   Reserves often include expenses for independent medical examinations and other claims handling costs that are required in the handling of third-party liability and workers' compensation claims and, to that extent, can be unrelated to the value of the claim.   Moreover, state insurance department regulations focus upon the preservation of an insurer's financial condition and stability and the requirement that insurers set aside reserves for future losses.   "The legislature and Insurance Commissioner establish reserve policy. For this reason alone, a reserve cannot accurately or fairly be equated with an admission of liability or the value of any particular claim." *In re Couch*, 80 B.R. 512, 517 (S.D. Cal. 1987), *citing Union Carbide Corp. v. Travelers Indem. Co.*, 61 F.R.D. 411, 413 (W.D. Pa. 1973) ("The contingent and uncertain nature of reserves" might make questions regarding them tantamount to hypothetical questions.).

> Internal reserves established by an insurance company are an estimate of potential liability in connection with a claim. They do not represent the insurer's judgment as to what a plaintiff should recover.  *See generally, Signature Dev. Cos. v. Royal Ins. Co. Of Am.*, 230 F.3d 1215, 1224 (10th Cir. 2000) (Reserve calculations are "merely an amount [the insurer] set aside to cover potential future liabilities.").... As such ... the evidence as to the

difference between defendant's reserve for this claim and its payments on the claim does not support an inference of bad faith.

*LeBlanc v. Travelers Home and Marine Ins. Co.*, 10-CV-503-He, Dkt. No. 186, 2011 WL 2748616, at *4 (W.D. Okla. July 13, 2011). "[A] reserve essentially reflects an assessment of the value of the claim taking into consideration the likelihood of an adverse judgment. Such estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis." *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, No. 1:03CV1322, 2006 WL 355289, at *2 (N.D. Ohio Feb. 15, 2006), *quoting Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 613 (E.D. Pa. 1991), on reconsideration in part, No. CIV. A. 88-9752, 1991 WL 237636 (E.D. Pa. Nov. 7, 1991).[1]

---

[1] *See, e.g., First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-cv2235-SHL-dkv, 2016 WL 5869580, at *15 (W.D. Tenn. Oct. 5, 2016) ("The reserves set up by the [d]efendants are a business judgment and do not reflect a legal determination of the validity of the [p]laintiffs' claim against them."); *Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, Case No.: 2:14-cv-02148-JHH, 2016 WL 1319697, at *6 (N.D. Ala. Apr. 5, 2016) (joining "with the majority view in first-party claims 'that reserve information is outside the scope of discovery because the information is not relevant as to what an insurer thought of the merits of a claim'"); *Mine Safety Appliances Co. v. N. River Ins. Co.*, Civ. A. No. 2:09-cv-00348-DSC, 2012 WL 12930363, at *3 (W.D. Pa. Mar. 14, 2012) (concluding that reserve information was neither relevant nor reasonably calculated to lead to the discovery of admissible evidence where it would supposedly evidence the existence of coverage and the Plaintiffs' bad faith claim would be grounded in the insurer's allegedly wrongful denial of coverage); *U.S. Fire Ins. Co. v. City of Warren*, No. 2:10-CV13128, 2012 WL 1454008, at *10 (E.D. Mich. Apr. 26, 2012)(explaining that a reserve "does not reflect a legal determination of the validity of an insured's claim"); *Cummins v. Ace Am. Ins. Co.*, No. 1:09-cv-00738-JMS-DML, 2011 WL 130158, at *12 (S.D. Ind. Jan. 14, 2011) ("Because of the business risk and regulatory compliance considerations involved in the setting of loss reserves, loss reserves...are not synonymous with, and may not be particularly probative of, an [i]nsurer's opinion on the true value of a particular claim or on coverage."); *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, No. 1:03CV1322, 2006 WL 355289, at *3 (N.D. Ohio Feb. 15, 2006) ("[E]vidence of the

Similarly, reserves are not evidence of the settlement or verdict value of a case.   In

*CR Operating Co. v. Great Am. Ins. Co. of N.Y.*, No. CIV-12-00715-HE, 2013 WL

12091068, at *8 (W.D. Okla. Sept. 27, 2013), Judge Heaton provided:

> Plaintiff argues that defendant unreasonably failed to settle--or 'low balled' the Plaintiff by not settling with them for the amounts which Great American 'reserved' in connection with this claim. Plaintiffs' argument tries to turn the insurer's 'reserve' determination into something it is not...Here, the insurers [sic] calculations were not an amount assigned to the claim for purposes of settlement, but rather were a reserve determination....The evidence as to defendants' reserve determinations does not support an inference of bad faith.

---

amount of reserves is not relevant because it is not necessarily based on a full knowledge of the facts and the law of the case ... [but] most often reflects a business decision."); *Spearman Industries, Inc. v. St. Paul Fire and Marine Ins. Co.*, 128 F. Supp. 1148, 1155 (N.D. Ill. 2001) (reserves are irrelevant and not probative); *Fid. & Dep. Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996) (stating that "setting aside reserves does not amount to an admission of liability"); *Cont'l Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1047 n.12 (D.N.J. 1993) ("The mere setting of a reserve by an insurer does not have the probative force of an admission."); *American Protection Ins. Co. v. Helm Concentrates, Inc.*, 140 F.R.D. 448, 449-50 (E.D. Cal. 1991) (reserves are irrelevant and not probative); *Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986) ("a reserve essentially reflects an assessment of the value of a claim taking into consideration the likelihood of an adverse judgment and that such estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis."); *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 656 (Colo. 2012) ("Reserves are not an admission or valuation by the insurer; rather, they fulfill the insurance company's statutory obligations and reflect the insured's estimated potential liability on a particular claim."); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1099, 1109-10 (Del. Super. Ct. 1991) ("Reserves are accounting entries which an insurance company regularly uses to set aside sufficient funds in the event of policyholder liability…Reserves do not represent an admission or evaluation of liability and are irrelevant to the issues between insurer and insured…"); *Schierenberg v. Howell-Baldwin*, 571 N.E.2d 335, 337 (Ind. Ct. App. 1991) (refusing to permit the discovery of reserves because that evidence would not be admissible at trial), *overruled on other grounds by Richey v. Chappell*, 594 N.E.2d 443 (Ind. Ct. App. 1992).

*See, e.g., Cummins*, 2011 WL 130158, at *12; *Liberty Mut. Fire Ins. Co. v. APAC-Southeast, Inc.*, Civ. A. No. 1:07-CV-1516-JEC, at *11, 2008 WL 1132055 (N.D. Ga. May 16, 2008) (explaining that reserves are not relevant to the settlement value of a case); *Lipton v. Superior Court*, 56 Cal. Rptr. 2d 341, 349 (1996) (quoting treatise); *Sunahara*, 280 P.3d at 656; *Hoechst Celanese*, 623 A.2d at 1109-10; *Schierenberg*, 571 N.E.2d at 337; *Gaspard v. S. Farm Bureau Cas. Ins. Co.*, 155 So. 3d 24, 31 (La. Ct. App. 2014) (concluding that a reserve amount does not establish a reasonable payment value for purposes of determining whether an insurer should face penalties); *Miller v. Kenny*, 325 P.3d 278, 298 (Wash. Ct. App. 2014) (stating that a reserve "cannot be equated with settlement authority"); *see also* Steven Plitt & John K. Wittwer, *The Discoverability of Reserve Information in Bad Faith Cases*, 31 INS. LITIG. REP. 81, 81 (2009) ("Claim reserves are not a reflection of the value of a claim…The weight of authority holds that reserves are not discoverable." (footnote omitted)).

In *Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-CV-00982-LTB-KLM, 2018 WL 3496735, at *8 (D. Colo. July 20, 2018), the court determined:

> Admitting evidence of an insurer's loss reserves could lead the jury to assume that amount was an internal valuation of the claim and/or an assessment of it[s] liability for settlement purposes. *Silva v. Basin W., supra*, 47 P.3d at 1189 (noting the "common misconception" that an insurer's loss reserves are the same as settlement authority when, in actuality, "[t]he main purpose of a loss reserve is to comply with statutory requirements and to reflect, as accurately as possible, the insured's potential liability")(emphasis in original), (quoting *Lipton v. Superior Court*, 56 Cal.Rptr.2d 341, 348-49 (1996)). Because a loss reserve does not reflect an admission by the insurance company that a claim is worth a particular amount of money, they have limited usefulness as valuations of a claim at trial, and instead contain a high possibility of unfair prejudice against an insurer. See *Silva v. Basin W., supra*, 47 P.3d at 1189; *Seabron v. Am. Family, supra*, 862 F. Supp.2d at 1158

> (finding that an insurer's loss reserve was discoverable based on the broad federal discovery rules). As a result, I conclude that the amount of State Farm's loss reserve in this case is not admissible as the danger of unfair prejudice outweighs any potential probative value under Rule 403.

*See also Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, No. 11-2714-JAR, 2014 WL 2690150, at *3 (D. Kan. June 13, 2014), *rev'd and vacated on other grounds*, 816 F.3d 1284 (10th Cir. 2016) (excluding evidence regarding reserves based on prejudicial effect). Thus, in *Porter v. Farmers Insurance Company*, 2011 WL 1566018, *2-3 (N.D. Okla., April 25, 2011), the court allowed limited discovery of the personnel files of Farmers' claims examiners, but specifically held: "Nothing in this ruling should be interpreted as indicating such personnel file *or loss reserve information* is admissible at trial."

Similarly, in *Estate of Mali v. Federal Ins. Co.*, No. 3:06-cv-01475, 2011 WL 2516246 (D. Conn. 2011), evidence of loss reserves was precluded from admission into evidence based on Rule 403 balancing. First, the court held that the admission of such evidence would result in "the trial [being] diverted from the central issues in the case to a complicated inquiry into the nature, statutory and regulatory requirements for, and proprietary methods of establishing loss reserves." Additionally, the court found the evidence to be of low probative value because the allocation of a loss reserve was a highly variable and inexact science which was designed to protect only against potential losses, not a thorough factual and legal claim analysis designed to precisely value the claim.[2]

---

[2] *See also, Bird v. Penn Central Co.*, 61 F.R.D. 43, 47 (E.D. Pa. 1973) ("the probative value of the reserves, as applied to this case, is substantially outweighed by its prejudicial aspects"); *Light v. Allstate Ins. Co.*, 48 F. Supp. 2d 615, 619 (S.D. W. Va. 1998);

As such, evidence of CSAA's "reserve" for this claim does not support an inference of bad faith or is otherwise relevant to this matter.   Admission of reserve information, particularly in light of Plaintiffs' stated purpose, is highly prejudicial and confusing to a jury, given the fact that reserves have nothing to do with the analysis of CSAA's claims handler regarding the amount due under the policy for the injuries that have occurred.

### NO. 4 - INADMISSIBILITY OF ANY SUGGESTION OR ARGUMENT BY PLAINTIFFS THAT CSAA SHOULD LOOK FOR REASONS TO PAY A CLAIM OR PAY MORE ON A CLAIM

Defendant, CSAA, moves this Court for an Order *in Limine* instructing Plaintiffs, Plaintiffs' counsel, and Plaintiffs' witnesses not to argue or suggest to the jury, in any manner, that CSAA should look "harder" for ways to *pay* a claim than to *deny* a claim. This type of argument is tantamount to instructing the jury on the law and/or constitutes a legal conclusion.   More importantly, it is an inaccurate statement of the law, and hence the danger in allowing this type of questioning or argument at the time of trial.   It is the function of the Court – not the parties or their counsel – to educate the jury on the law.   If Plaintiffs are allowed to argue or insinuate in the presence of the jury that CSAA should look "harder" for reasons to pay a claim or to pay more money on a valid claim, the damage will be irreversible, and CSAA unfairly prejudiced and the jury will be misled as a result.

Defendant anticipates Plaintiffs will ask CSAA's employees to confirm, by way of leading questions, that they have an obligation to look for reasons to pay a claim or to pay

---

*Federal Realty Inv. Trust v. Pacific Ins. Co.*, 760 F. Supp. 533, 540 (D. Md. 1991) (probative value of reserves, if any, was substantially outweighed by prejudicial aspects); *Union Carbide*, 61 F.R.D. at 413 ("The contingent and uncertain nature of reserves" might make questions regarding them tantamount to hypothetical questions.).

more on a valid claim – *i.e.*, that they must devote more time and attention to finding a reason to pay a claim than to deny a claim.   The reality is Oklahoma law does not require first-party insurers, such as CSAA, to look "harder" for reasons to pay a claim than to deny a claim (or look "harder" for ways to pay more on a claim than to pay less on a claim).   In fact, Oklahoma law is clear that a first-party insurer must conduct an <u>unbiased</u> investigation.   *Hillory,* 241 P.3d at n. 9; *McCoy v. Oklahoma Farm Bur.*, 1992 OK 43, 841 P.2d 568, 569.   An unbiased investigation necessarily requires the first-party insurer to give <u>equal</u> consideration to the interests of its insured and itself.   Thus, looking for reasons to pay a claim (or to pay more on a claim) is just as wrong as looking for reasons to deny a claim (or pay less on a claim).   The jurors in this case will not know what legal duties apply to CSAA in this case until they read the Court's instructions at the end of the case. The jury should not be misled by Plaintiffs and/or Plaintiffs' counsel during the course of the trial into believing that CSAA had a legal obligation to actively search for reasons to pay Plaintiffs' claim or to pay more on her claim.

### *No. 5 - INADMISSIBILITY OF ANY SUGGESTION OR ARGUMENT BY PLAINTIFFS THAT CSAA OWES THE "BENEFIT OF THE DOUBT" TO ITS INSURED*

Defendant, CSAA, moves this Court for an Order *in Limine* prohibiting Plaintiffs, Plaintiffs' counsel, and Plaintiffs' witnesses from mentioning, referring to, arguing or suggesting to the jury, in any manner, that CSAA is required to give the "benefit of the doubt" to its insured when handling claims.   Whether or not CSAA owes a duty to its insured to give it the "benefit of the doubt" is a question of law for the Court, and the Court can instruct the jury accordingly if it desires.   Further, as demonstrated below, the

argument that a first-party insurer, such as CSAA, owes its insured the "benefit of the doubt" is an erroneous understanding of Oklahoma law.   Such argument, if allowed, will result in unfair prejudice to CSAA and will mislead the jury.

The Oklahoma Supreme Court first recognized the tort of bad faith in *Christian v. American Home Assur. Co.*, 1977 OK 141, 577 P.2d 899.   "[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and...the violation of this duty gives rise to an action in tort." *Id.* at 904.   The duty of good faith does not require an insurer to pay every claim made by an insured or to give the insured the "benefit of the doubt."

> We recognize that <u>there can be disagreements between insurer and insured on a variety of matters</u> such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions.   <u>Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit.</u> Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*Id.* at 905.   *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.,* 2000 OK 55 ¶21, 11 P.3d 162, 171 ("a decision to withhold or delay payment, if based on a legitimate dispute or reasonable justification (legal or factual) cannot form the basis of bad faith tort liability"); *Garnett v. Government Employees Ins. Co.*, 2008 OK 43, 186 P.3d 935, 944 ("It is not breach of the duty of good faith for an insurer to resort to the judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim.").

Insurance companies may make business decisions to give their insured the "benefit of the doubt" in certain situations or make payments as a courtesy to their insureds. However, as explained above, first-party insurers are <u>not required</u> under Oklahoma law to do so.   To allow Plaintiffs to interrogate witnesses regarding this so-called duty is to allow

12

Plaintiffs to instruct the jury on the law and, thus, invade the province of the Court.   Of course, if Plaintiffs are going to attempt to educate the jury on the law, Plaintiffs should be accurate in that regard.   To suggest to the jury that a first-party insurer, such as CSAA, must or should give its insured the benefit of the doubt, is an erroneous characterization of the law.   Moreover, whether an insurance company should make the business decision to give its insured the benefit of the doubt is completely irrelevant because, again, it is not required to do so under the law.

CSAA has no legal obligation to give Plaintiffs the "benefit of the doubt."   If this type of question is allowed to be asked of any of Defendant's claims examiners at trial, they will be forced to recite Oklahoma law, referenced above, and educate the jury on CSAA's defense that a "legitimate dispute" is a legal bar to a bad faith claim.   For these reasons, this Court should enter an order prohibiting Plaintiffs from making these types of suggestions or arguments at the time of trial.   If Plaintiffs do so, the damage will be irreversible, even if this Court should immediately sustain CSAA's objection.

## No. 6 - I̲N̲A̲D̲M̲I̲S̲S̲I̲B̲I̲L̲I̲T̲Y̲ ̲O̲F̲ ̲E̲V̲I̲D̲E̲N̲C̲E̲ ̲O̲F̲ ̲O̲T̲H̲E̲R̲ ̲C̲L̲A̲I̲M̲S̲ ̲O̲R̲ ̲L̲A̲W̲S̲U̲I̲T̲S̲ ̲A̲G̲A̲I̲N̲S̲T̲ ̲C̲S̲A̲A̲

Although Plaintiffs have not listed any witnesses or exhibits on point, it is anticipated that Plaintiffs may seek to elicit testimony or offer evidence concerning other complaints and lawsuits against CSAA.   Such evidence is inadmissible for four reasons: (1) it is irrelevant; (2) it is unfairly prejudicial and unduly confusing to the jury; (3) it constitutes inadmissible hearsay; and (4) it involves inadmissible "character evidence."

**I.      Evidence of Other Claims is Irrelevant.**

In bad faith cases, the facts and circumstances underlying each lawsuit are wholly independent and unrelated to one another – every bad faith case is unique.   "The threshold inquiry in any dispute over the admissibility of evidence is whether the evidence is relevant."   *Black v. M & W Gear Co.*, 269 F.3d 1220, 1227 (10th Cir. 2001).   The determination of whether the subject evidence is relevant rests in this Court's sound discretion. *See, e.g., Greenberg v. Service Business Forms Industries, Inc.*, 882 F.2d 1538, 1543 (10th Cir. 1989).   Evidence of other acts must be relevant to be admissible. *Wilson v. Muckala*, 303 F.3d 1207, 1217 (10th Cir. 2002).

In the present case, Plaintiffs will attempt to introduce evidence of other bad faith cases CSAA has been involved in to either prove that CSAA acted in bad faith toward Plaintiffs or to prove the extent of CSAA's bad faith conduct in support of Plaintiffs' punitive damages claim. Plaintiffs cannot meet the threshold burden of showing that evidence of other, unrelated lawsuits or claims makes a fact of consequence in this case more probable. Evidence of other claims or lawsuits does not have any tendency to demonstrate that CSAA acted in bad faith toward Plaintiffs in the present action.   Because the allegations of bad faith in the present case are very fact-specific, CSAA's handling of other claims has no tendency to demonstrate that CSAA acted in bad faith toward Plaintiffs. Thus, the evidence would not make any fact of consequence in this case more or less probable than it would be without the evidence.

As set forth in Motion in Limine No. 9, Oklahoma's punitive damages scheme requires a bifurcated proceeding (23 O.S. § 9.1), which may allow under appropriate

circumstances the introduction of evidence in the second stage of a trial which is not permitted in the first stage.   Thus, Plaintiffs may attempt to justify the introduction of their proposed "evidence" about other claims, complaints and lawsuits against CSAA by reference to their quest for punitive damages.   However, in *State Farm Mutual Auto Ins. Co. v. Campbell,* 538 U.S. 408 (2003), the United States Supreme Court made clear that other insurance claims involving different facts and circumstances are not relevant to a claim for punitive damages for alleged bad faith:

> Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis. . . Punishment on these bases creates the possibility of multiple punitive damages awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff attains.

*Id.* at 1523 (emphasis added).   *Campbell* dictates that any punitive damages judgment based upon the information Plaintiffs seeks to introduce here would violate the Due Process Clause.   The Court held that "[a] Defendant's dissimilar acts, independent from the acts upon which liability is premised, may not serve as the basis for punitive damages.   A defendant should be punished for the conduct that harmed the Plaintiff, not for being an unsavory individual or business."   *Id.* at 422-23. Without presenting evidence of and litigating the similarities and relatedness of each claim or lawsuit to the instant case, and independently litigating the circumstances of CSAA's actions on each of those underlying insurance claims, such a punitive damages judgment would be wholly speculative.

Moreover, although Oklahoma's punitive damage statute allows a jury to consider certain additional aspects of Defendant's conduct (i.e., the duration/concealment of

misconduct, the defendant's awareness of the hazard and of its excessiveness, and the attitude and conduct of the defendant upon discovery of the misconduct), it does not allow the jury to consider evidence of other conduct completely unrelated and wholly dissimilar to the facts of the case at issue.   23 O.S. §9.1(A).   Evidence of other conduct must bear some relation to the harm of which the plaintiff complains.   *Campbell*, 538 U.S. at 422.

Evidence of other claims or lawsuits against CSAA should also be excluded to the extent that they are dissimilar from the present case.  If the behavior at issue in those claims or lawsuits is not substantially similar to the behavior alleged in the present lawsuit, then evidence of those lawsuits is not relevant in determining the amount of punitive damages that should be awarded in the present lawsuit.   In other words, for each claim or lawsuit which Plaintiffs intend to introduce as evidence in the present case, this Court should make a separate determination of whether the claim or lawsuit is substantially similar to the present action as to warrant its consideration in assessing punitive damages in this action, if there is a punitive damages phase of trial.

## II.   **Evidence of Other Complaints or Lawsuits Would Cause Unfair Prejudice to Defendant and Confuse the Jury.**

Even if Plaintiffs can show that the subject evidence satisfies the requirements of Rule 401, the evidence is inadmissible under Rule 403, because it would (1) cause unfair prejudice, (2) mislead the jury, and (3) cause confusion of the issues at trial.   "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise."   *Badillo v. Mid*

16

*Century Ins. Co.*, 2005 OK 48, 121 P.3d 1080 (finding no abuse of discretion in exclusion of evidence relating to a claims adjuster's handling of other claims).

Rule 403 provides a balancing test to determine whether exclusion of certain evidence is appropriate:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.

Trial courts have broad discretion in determining if the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, and the reviewing court will not overturn the trial court's ruling unless there is a clear abuse of discretion.   *Robinson v. Borg-Warner Protective Services Corp.*, 2001 OK 59, ¶ 14, 31 P.3d 1041, 1044.

> Under Federal Rule of Evidence 403, the Court must weigh the relevance of this testimony against the possible prejudice to Defendant. As Defendant is an insurance company, the possible prejudice of how it treats other insureds is significant. *See Jones v. Automobile Ins. Co. of Hartford,* 698 F.Supp. 226, 228 (N.D.Ga.1988) (stating that an insurance company "by its nature of business, necessarily is involved in a number of disputes. The court would be opening up a Pandora's box if plaintiff were allowed to introduce evidence of any transactions between defendant and its many policy-holders."). It is easy to see how a jury could use this evidence improperly to find [the insurer] liable for bad faith conduct that does not relate to Plaintiff's claim at all.
>
> Moreover, this is a single plaintiff case and the Court must ensure that the jury awards exemplary damages only for the Defendant's conduct towards Plaintiff. *Campbell,* 538 U.S. at 423.

*Fiechtner v. Am. Family Mut. Ins. Co.*, No. 09-CV-02681-WJM-MEH, 2011 WL 4345684, at *2 (D. Colo. Sept. 15, 2011).   Similarly, the Southern District of Mississippi has excluded evidence of other claims in a cause of action for insurance bad faith under Fed. R. Evid. 403.   In *Burley v. Homeowners Warranty Corp.*, 773 F.Supp. 844 (S.D. Miss.

1990), the court determined: "**[T]he admission of such evidence would be unduly time-consuming, unfairly prejudicial and unnecessarily confusing and will not be permitted**." *Id.* at 858 (emphasis added); *see also United States Football League v. National Football League*, 634 F. Supp. 1155, 1172-73 (S.D.N.Y.1986) (excluding evidence of prior lawsuits against the defendant partly because this evidence "would permit Plaintiff to create an 'aura of guilt' or to 'imply new wrongdoing from past wrongdoing'").[3]

The Oklahoma Supreme Court has also held that this type of evidence is properly excluded under 12 O.S. § 2403. *Badillo*, at n. 20, 121 P.3d at 1106. In *Badillo*, the insured party asserted that the trial court erroneously excluded evidence of the subject insurance adjuster's handling of other claims. The trial court excluded the evidence, and the Oklahoma Supreme Court affirmed. "Even assuming the evidence was relevant to the

---

[3] *See also Estate of Tobin v. Smithkline Beecham Pharms.*, 2001 WL 36102165, at *1 (D. Wyo. May 18, 2001) (excluding evidence of other lawsuits because "such references are irrelevant to this litigation and such references would have a tendency to unnecessarily confuse the jury."); *Crawford v. Muscletech Res. & Dev., Inc.*, 2002 WL 31852833, at *1 (W.D. Okla. Oct. 10, 2002) (in products liability action, rejecting plaintiffs' argument that evidence of other lawsuits is admissible to counter defendants' arguments regarding safety of product because the evidence was "more prejudicial than probative," but recognizing that, if defendants opened the door by testifying that its products are safe, plaintiffs could seek permission from the court to counter the testimony); *Martensen v. Koch*, No. 13-cv-02411-REB-CBS, 2015 WL 332694, at *2 (D. Colo. Jan. 26, 2015) (excluding evidence of other lawsuits where it was "clear that the dangers of unnecessarily misleading the jury, confusing the issues, and unduly delaying the trial will substantially outweigh whatever marginal probative value this evidence might have"); *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-CV-01301-PAB-GPG, 2020 WL 1325156, at *4 (D. Colo. Mar. 20, 2020) ("Defendants' motion *in limine* will be granted to the extent that it seeks to preclude all references to the settlements reached in *Reiser* and *Petrick*, seeks to preclude plaintiffs from referencing other lawsuits in its opening statement, and seeks to preclude plaintiffs' witnesses from referencing the other lawsuits. In all other instances, plaintiffs must seek permission from the Court before referring to or offering evidence of the other lawsuits.").

punitive damage issue, we find no abuse of discretion or reversible error in the trial court's ruling…that any probative value was substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 66, n. 20 (citing *Jordan v. Cates*, 1997 OK 9, 935 P.2d 289, 293-94).[4]

This firmly established rule of law is directly applicable in this case.  Evidence of other claims or lawsuits by third parties would create an "aura of guilt."   At the same time, the anticipated evidence would require a series of mini-trials regarding each alleged complaint or lawsuit.   For each lawsuit, separate hearings would be required to determine whether each is sufficiently similar to the present case to warrant admission.   Presumably, each complainant's or litigant's file would suddenly become relevant for cross-examination.   The jury would then have to evaluate whether CSAA acted reasonably toward insureds who are not even before the Court.   The trial would be lengthy and tax the ability of any jury to remain focused on Plaintiffs' claim.   This very real danger of unfair prejudice requires exclusion of evidence of other complaints.

---

[4] *See also, Madill Bank and Trust Co. v. Herrmann*, 1987 OK CIV APP 4, 738 P.2d 567 (excluding evidence under 12 O.S. § 2403 that could mislead and confuse the jury by an inference of wrongdoing, since, at best, the evidence offered would raise only a suspicion of ill intent which would be insufficient to establish a claim of fraud); *see also, American Biomedical Group, Inc. v. Norman Regional Hospital Authority*, 1993 OK CIV APP 83, 855 P.2d 1074 (citing *Herrmann* to support exclusion under § 2403), and *State of Oklahoma ex rel. Department of Public Safety v. 1988 Chevrolet Pickup VIN No. 1GCDC14K8JZ323, OK Tag No. GFX19*, 1993 OK CIV APP 6, 852 P.2d 786 (same); *James v. State Farm Mutual Automobile Insurance Company*, 1991 OK 37, 810 P.2d 365 (holding in an action for fraud, based in part on an allegation of sex discrimination, that the probative value of an unrelated legal action against the defendant for sex discrimination was substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury).

III.    **Evidence of Other Complaints is Inadmissible as Evidence of Unrelated Misconduct.**

It is well established that evidence of "other wrongs" or "other acts" is generally inadmissible to prove that a party behaved in a particular way on a particular occasion. Rule 2404.   The rule provides, in pertinent part: "Evidence of other. . . wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."   *Id.*   Thus, evidence of other complaints against CSAA is not admissible. While evidence of prior bad acts may be introduced for certain purposes, besides showing propensity, Oklahoma courts apply "a balancing test very similar to that under Section 2403" to determine whether the probative value of the evidence outweighs its prejudicial effect. *Tansy v. Dacomed Corp.*, 1994 OK 146, ¶ 31, 890 P.2d 881. Admission of evidence of other complains or lawsuits would create a substantial risk that the jury might punish CSAA for behavior that has no relationship to the issues in this case.

In the present action, evidence of claims made against CSAA by non-parties is absolutely extrinsic to Plaintiffs' claim. Plaintiffs cannot possibly assert that CSAA's conduct in handling another party's claim is "part of the same tortious event" that gave rise to her claim.   Thus, the evidence of such claims is clearly extrinsic and must be excluded.

IV.    **Evidence of Other Complaints Constitutes Inadmissible Hearsay.**

Evidence of any other complaints or lawsuits against CSAA constitutes inadmissible hearsay if the parties bringing those complaints or lawsuits are not available to testify.   Such evidence would be a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted."   Rule 801.   Thus, evidence of other complaints and/or lawsuits against CSAA must be excluded.   *See, e.g., Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (holding that a summary of claims and lawsuits against the defendant constitutes inadmissible hearsay); *See also Kerr v. Clary*, 2001 OK 90, 37 P.3d 841 (discussing hearsay in general and at length).

For these reasons, the Court should prohibit Plaintiffs, or anyone on their behalf, from offering evidence of, or otherwise mentioning, lawsuits or claims against CSAA in which a claim for bad faith has been asserted, other than the claim at issue in this case.

### No. 7 - *Inadmissibility of any Reference to Punishing Defendant and/or Punitive Damages Arguments in the First Stage of Trial*

CSAA requests that during the first stage of trial proceedings, Plaintiffs be prohibited from making legal arguments or related statements concerning: (1) punitive damages, (2) punishing Defendant, (3) making an example of Defendant, and/or (4) sending a message.   Such evidence is improper and irrelevant to determining compensatory damages.   And, of course, this evidence is highly prejudicial to CSAA.

Compensatory and punitive damages serve entirely different purposes.   *State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408, 416 (2003).   Oklahoma law governing punitive damage awards requires the jury to consider the issue of such damages in a ***separate proceeding*** conducted after the jury has considered actual damages.   *See Lierly v. Tidewater Petroleum Corp.*, 2006 OK 47, ¶¶ 30-32, 139 P.3d 897, 905-906; 23 O.S. Supp. 2002, § 9.1(B)-(D).   Consequently, Plaintiffs' counsel should be directed to refrain from raising any argument relating to punitive damages in the first phase of trial.

Both state and federal decisions in Oklahoma uniformly forbid mentioning punitive damages during the first phase of trial.   In *Harwick v. Dye*, 1999 OK 8, ¶ 4, 975 P.2d 453, 456, the Oklahoma Supreme Court found that it was entirely appropriate and within the sound discretion of the trial judge to prohibit discussion of punitive damages prior to evidence supporting those damages.   *Id*.   The court reemphasized that "a claim for punitive damages is incidental to a claim for actual damages and cannot be awarded unless there are actual damages."   *Id*., citing *State ex rel. Southwestern Bell Telephone Company v. Brown*, 1974 OK 19, 519 P.2d 491.   Accordingly, such evidence should be excluded from the liability phase of litigation.   *See* 12 O.S. § 2402.

Similarly, in *Moody v. Ford Motor Co.*, Case No. 03-CV-0784 2007 WL 869693, at *11 (N.D. Okla. March 20, 2007), the district court issued a *limine* ruling which restricted references to punishment or punitive damages in the liability phase of the case, explaining:

> So if punitive damages are going to be an issue in this case, my rule is ***punitive damages are not mentioned in phase one***, reckless disregard of the public safety may be mentioned, may be part of your opening statement, may be part of your closing argument.   I submit a special interrogatory to the jury where they find whether they do or do not find that the defendant's conduct was in reckless disregard of the public safety.   ***Then and only then do we proceed to phase two where plaintiff may put on additional evidence relating to punitive damages*** and I have a separate set of phase two instructions and verdict forms.   ***But statement of the case, opening statements, testimony from witnesses, closing argument, no mention of punitive damages unless and until you get a finding from the jury***.

The prohibition on discussion of punitive damages in the first phase of the trial extends to arguments and testimony that the defendant should be punished.   In *Moody*, 2007 WL 869693 at *12, Plaintiffs' counsel (1) made "Golden Rule" arguments, intended to make jurors envision themselves in Plaintiffs' position and to punish a defendant for

certain conduct; *id*.; (2) offered statements in closing which implied that jurors should send a message to Ford; *id*. at *13; and (3) disclosed the punitive damages phase of the trial proceedings to the jurors. *Id*. at 14. Sustaining Ford's request for a new trial, the district court found "a substantial likelihood that the award of compensatory damages contained a punitive element." *Id*.; *see also, B.H. v. Gold Fields Mining Corp.*, 2007 WL 439031, Case No. 04-CV-0564 (N.D. Okla. Feb. 1, 2007 (holding that the words "'punitive damages,' 'punish' or 'send a message' and the like are not to be mentioned during phase one, and the jury would hear evidence related to Plaintiffs' claim for actual damages only").

Here, any statement or reference by Plaintiffs' counsel which urges jurors to send a message with its verdict would be irrelevant and unduly prejudicial to CSAA. *See* Rules 402 and 403. Any such statement would be irrelevant to the claims at issue. Even if any such statement were marginally relevant to the issues in stage one of this case, it should be excluded as unduly prejudicial and an attempt to inflame the jury. This would only serve to encourage jurors to impose punitive measures and is tantamount to requesting punitive damages in the first phase of trial. *See, Central of Georgia Railroad Company v. Swindle*, 398 S.E.2d 365, 367 (Ga. 1990); *see also Moody,* supra.

The following comments, *inter alia*, during opening or closing arguments of the first phase of the trial must be reserved for the second phase, if applicable:

1.    Ladies and Gentlemen, you have an opportunity here to send a message to the community and to companies just like CSAA;

2.    Let your verdict reflect that you are not going to tolerate this type of conduct by CSAA; and

3.      If you return a verdict against CSAA for only a million dollars, that adjuster sitting in the back of the courtroom will be thrilled to make a phone call to his/her boss and advise that they have just dodged a bullet.   They will celebrate tonight.

Objections during trial would be too late.   The statement would have already been made, and CSAA will have suffered unfair and irreparable prejudice as a result, even if the court should admonish the jury not to consider that statement for any purpose.

### NO. 8 - ANY REFERENCE TO CSAA'S CLAIM HANDLING GUIDELINES IS INADMISSIBLE

Claims manuals and guidelines do not establish standards of care for bad faith purposes.   CSAA's liability for bad faith must be determined according to Oklahoma law. In most instances, insurance companies' claim manuals, guidelines, or best practices are aspirational ideals:   they do not constitute standards of care and a failure to meet or to comply with them provides no basis for imposing liability.[5] As the Tenth Circuit held in *Johnson v. Liberty Mutual Ins. Co.*, 648 F.3d 1162, 1166 (10th Cir. 2011):

---

[5]  *See Zappile v. Amex Assur. Co.*, 928 A.2d 251, 258 (Pa. Super. 2007) (Insured argued that insurer was guilty of bad faith because the insurer had not made any partial payments and the claims manual required that such payments be made.   The Court rejected the argument because it was the law that controlled, not the claims manual, and the law did not create a legal duty to make a partial payment); *Lincoln General Ins. Co. v. Access Claims Adm'rs, Inc.*, 596 F.Supp.2d 1351, 1368 (E.D. Cal. 2009) (Failure to follow manual did not even constitute a breach of contract, since the insurance contract did not require the insurer to follow the manual); *Fichtel v. Board of Directors of Rivershore of Naperville Condominium Ass'n*, 907 N.E.2d 903, 910 (Ill. App. 2009) (Where the law does not impose a duty, one will not generally be created by Defendant's rules or internal guidelines); *State Farm v. Balmer*, 891 F.2d 874, 877 (11th Cir. 1990) (Insurer did not act in bad faith even though it had "failed to follow in-house rules concerning the investigation of fire losses," since by the end of its investigation, it had learned of facts that constituted a debatable reason for denying the claim); *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1110 (9th Cir. 2011) (Court did not allow insured to introduce evidence that Allstate violated its own procedures because it was not material); *Singleton v. State Farm Fire & Cas. Co.*, 928

When you violate a corporate policy, you may well be in trouble with your boss, but that doesn't necessarily mean you have committed a tort.   Our role as a court of law is not to enforce private corporate policy, but to assess public legal liability.   And the Johnsons never show how, in this case, the existence of the one (the corporate retention policy) might be evidence of a violation of the other (the law).

For the above reasons, this evidence should be excluded pursuant to Rules 402 and 403 of

the Federal Rules of Evidence.

<div style="margin-left:40%">

Respectfully submitted,


s/ Gerard F. Pignato
Gerard F. Pignato, OBA No. 11473
Matthew C. Kane, OBA No. 19502
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
Telephone:   405-239-6040
Facsimile:   405-239-6766
Email:       jerry@ryanwhaley.com
             mkane@ryanwhaley.com

**ATTORNEYS FOR DEFENDANT**

</div>

---

So.2d 280 (Ala. 2005) (lack of strict compliance with the letter of the State Farms claims manual might indicate poor judgment or negligence, but not bad faith).

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.   Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Douglas J. Shelton, Esquire
SHELTON & WALKLEY LAW GROUP
7701 South Western Avenue, Suite 201
Oklahoma City, Oklahoma 73139
dshelton@sheltonlawOK.com

s/ Gerard F. Pignato
For the Firm

26