IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY COVINGTON and<br>JEFFREY COVINGTON,<br><br>            Plaintiffs,<br><br>vs.<br><br>CSAA FIRE AND CASUALTY<br>INSURANCE, d/b/a AAA FIRE AND<br>CASUALTY INSURANCE COMPANY, INC.,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 19-cv-00718-PRW<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S OBJECTIONS TO PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

Defendant CSAA Fire and Casualty Insurance Company ("CSAA") respectfully objects to the following proposed jury instructions submitted by Plaintiffs. [Dkt. No. 54]. CSAA reserves the right to further its objections as to the proposed instructions below, or others propounded by Plaintiffs depending on the Court's rulings prior to and during trial, and the evidence presented by Plaintiffs.

- **Proposed Instruction No. 1**

CSAA objects to this instruction as it is overly long, confusing and does not reflect a neutral statement of the issues in this case. CSAA would propose the Court utilize the preliminary statement in the Final Pretrial Report [Dkt. No. 58] for this instruction.

- **Proposed Instruction No. 3**

CSAA objects to this instruction as there is no wear and tear damage at issue in this case. Plaintiffs' proposed instruction does, however, raise an issue that merits further discussion. In *Pitman v. Blue Cross & Blue Shield of Oklahoma*, 217 F.3d 1291, 1298 (10th Cir. 2000), the authority cited by Plaintiffs for the instruction, the Tenth Circuit opined:

> A basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy. *See McGee,* 953 F.2d at 1205; *Blair,* 974 F.2d at 1221; *Jenkins v. Montgomery Indus. Inc.,* 77 F.3d 740, 743 (4th Cir.1996); *Fehring v. Universal Fidelity Life Ins. Co.,* 721 P.2d 796, 799 (Okla.1986) (holding that insurer failed to sustain burden of proving loss came within scope of exclusionary clause).

As reflected in the denial letter (CSAA_COVINGTON 0445-446), the instant case involves both "Perils Insured Against" and "Exclusions." The applicable "Perils Insured Against" are as follows:

> **SECTION I PERILS INSURED AGAINST**
>
> We insure against risk of direct physical loss to property described in Coverages A, B and C.
>
> We do not insure, however, for loss…[c]aused by…[c]onstant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Conversely, the exclusions are found in a separate section of the Policy:

**SECTION I EXCLUSIONS**

>We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area…"Fungi", Wet Or Dry Rot, Or Bacteria…
>
>We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered...Faulty, inadequate or defective…[d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; [m]aterials used in repair, construction, renovation or remodeling; or [m]aintenance…of part or all of any property whether on or off the "residence premises.".

To the extent CSAA seeks to establish the applicability of any "Exclusion" – here, the loss caused by fungi or bacteria or loss caused by faulty construction, design, repair or maintenance – CSAA agrees that, once Plaintiffs establish the existence of a covered loss, the burden of proof shifts to CSAA to establish that the covered loss is excluded.

However, this is not the case for the seepage/moisture provision, as it is not an "Exclusion," but rather part of the definition of coverage itself. *See e.g., Chadwell v. New Jersey Mfrs. Ins. Co.*, No. A-3931-09T3, 2011 WL 31353, at *3–4 (N.J. Super. Ct. App. Div. Jan. 6, 2011) ("[The insurer] does not rely on a…exclusion. [It] relies on the unambiguous language of the mold endorsement defining the scope of the coverage."). This distinction is comparable to the legal treatment of elements of a cause of action and affirmative defenses. A plaintiff must establish the elements of an action, i.e., a contract claim requires the existence of a contract (which is itself defined by the existence of offer, acceptance and consideration), breach of the contract and resulting damages, while the

defendant may prove that the breach occurred six years ago, and thus be relieved of liability, despite the plaintiff having proved all the elements of the action.

Thus, in *Advantage Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1008 (10th Cir. 2006), the Tenth Circuit (applying Kansas law), provided:

> [T]he insured has the "burden of proving he or she falls within the coverage provisions" of the policy. *Brumley v. Lee,* 265 Kan. 810, 963 P.2d 1224, 1232 (Kan.1998). More specifically, "***the insured has the burden of proof to establish the nature and extent of any loss and that the loss claimed was caused by one of the perils insured against ('covered') by the policy***." *Kansas Farm Bureau Ins. Co. v. Reynolds,* 16 Kan.App.2d 326, 823 P.2d 216, 218 (Kan.App.1991) (internal quotation marks omitted). Assuming the insured can satisfy this burden, the insurer then has the burden of proving that any exclusionary clauses within the policy apply to preclude coverage. *Exploration Place, Inc. v. Midwest Drywall Co.,* 277 Kan. 898, 89 P.3d 536, 541 (Kan.2004).

(Emphasis added).

*McCarty v. Occidental Life Ins. Co. of Cal.*, 1954 OK 55, 268 P.2d 221, 225, discussed distinction between "conditions of liability" and "exclusions." On appeal, the plaintiff complained that the trial court should have given a jury instruction which imposed the burden of proof of "affirmative defenses" (policy terms relating to medical conditions or crime assault that were the cause or contributed to the injury) on the defendant. The plaintiff contended that the enumerated provisions "constitute[d] exclusions from the accidental death benefits provisions, as distinguished from the conditions of liability contained in the policy." *Id.* The Oklahoma Supreme Court affirmed the trial court's refusal to give such an instruction: "[T]he insurer contracted to pay in the event of accidental death. This being the condition of liability it was incumbent upon plaintiff to accept and discharge the burden of establishing death by accidental means." *See also,*

4

*Metro. Life Ins. Co. v. Rosier*, 1941 OK 314, 189 Okla. 448, 117 P.2d 793, 795 (reaching a similar conclusion regarding a life policy's double indemnity clause for accidental death). In sum, Oklahoma courts recognize the distinction between conditions of liability, which address the scope of coverage (the equivalent of the elements of a cause of action), and exclusions (affirmative defenses). In the former instance, the burden of proof is on the plaintiff, not the defendant.

CSAA reserves any further objections to this type of instruction, given Plaintiffs have not specifically identified what exclusions or other policy provisions they intend to include here.

- **Proposed Instruction No. 5**

The parties have not engaged expert witnesses in this litigation.

- **Proposed Instruction No. 7**

The modification of the uniform instruction is unnecessary, confusing and inaccurate. In particular, "the amounts due under the policy," if any, are not inherently the same as "the amounts claimed due by Plaintiffs."

- **Proposed Instruction No. 9**

The modification of the uniform instruction is unnecessary and confusing.

- **Proposed Instruction No. 11**

There is no issue of a non-delegable duty in this case.

- **Proposed Instruction No. 12**

Plaintiffs request a jury instruction that would provide:

> You are instructed that the knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim. Defendant may not rely upon a defense that was not communicated to Plaintiffs as a reason for delay or denial of the claim at that time.

Dkt. No. 54 at 16.

Plaintiffs do not present any authority supporting for their contention. *Buzzard v. McDanel*, 1987 OK 28, 736 P.2d 157, 159 (quoted by both *Buzzard v. Farmers Ins. Co.*, 1991 OK 127, 824 P.2d 1105, 1109, and *Newport v. USAA*, 2000 OK 59, ¶ 10, 11 P.3d 190, 195, which Plaintiffs also cite) simply states that the key issue in a bad faith claim is whether the insurer had a "good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy."[1] These cases do not in any way indicate that such information can only be gleaned from the denial letter – there are certainly other sources such as notes in the claim file, testimony of the adjusters involved with the file and even the policy itself). Nor do the cases suggest that the insurer has waived a defense that is not included.

To the contrary, **"[c]ourts in this Circuit have declined to prohibit an insurer from enforcing a policy exclusion that it did not cite as the basis for initial claim denial."** *McCrary v. Country Mut. Ins. Co.*, 180 F. Supp. 3d 915, 921 (N.D. Okla. 2016); *see also, Cust–O–Fab Serv. Co., LLC v. Admiral Ins. Co.*, 158 Fed.Appx. 123, 129–30 (10th

---

[1] Similarly, the Rhode Island case cited by Plaintiffs simply provides: "Insurers doing business in Rhode Island have an implied obligation to promptly and fully respond to their insured, to investigate a claim and to subject that claim to appropriate review. An insurer has a responsibility to assemble all the facts necessary for a fair and comprehensive investigation *before* it refuses to pay a claim and may not base a defense to bad faith on later acquired information." *Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1010 (R.I. 2002).

Cir.2005); *Gallegos v. Safeco Ins. Co. of Am.*, 646 F. App'x 689, 695 (10th Cir. 2016). Like the denial letters in both *McCrary,* 180 F. Supp. 3d at 921, and *Cust-O-Fab*, 158 Fed.App. at 129, the denial letter here expressly included a provision reserving additional defenses: "We reserve the right to provide any additional facts or legal support for our decision." CSAA_COVINGTON 446. Plaintiffs were similarly afforded the right to provide additional information in support of their claim, *id.,* an option which they did, in fact, pursue, by submitting a subsequent engineering report, although, after review, CSAA maintained it original position (as the report did not add any additional material information).

Plaintiffs can presumably challenge what facts, provisions of the policy or other information CSAA relied upon when it made its determination – contending, for example, that CSAA did, in fact, put all such information in its denial letter – but CSAA is also entitled, should it chose to do so, to submit evidence from the claim file, testimony of witnesses and the policy itself, of other grounds considered in reaching its determination.

- **Proposed Instruction No. 16**

If appropriate (which CSAA denies as there are no grounds for punitive damages whatsoever), Plaintiffs' modified/combined instruction is unnecessarily lengthy and confusing. CSAA would propose the Court utilize the model instruction OUJI-Civ. No. 22.7, subject to the deletion of language not supported by the evidence.

- **Proposed Instruction No. 17**

CSAA objects to the proposed breach of contract verdict form as it does not provide a means for the jury to identify which party is prevailing. OUJI-Civ. No. 5.7, the cited

provision, does not apply to breach of contract claims.  CSAA would propose the Court utilize OUJI-Civ. No. 1.12 for the breach of contract verdict form.

- **Proposed Instruction No. 18**

If appropriate (which CSAA denies as there are no grounds for punitive damages whatsoever), the form submitted by Plaintiffs does not include a means by which the jury can select if it does or does not find that CSAA acted with either reckless disregard or intentionally and with malice (i.e., it reads: "We do do not ___").  If necessary, Defendant would propose the Court utilize OUJI-Civ. No. 5.6 and 5.7.

- **Proposed Instruction No. 18**

If appropriate (which CSAA denies as there are no grounds for punitive damages whatsoever), the form submitted by Plaintiffs is not supported by any authority.  Defendant would propose the Court utilize, if necessary, OUJI-Civ. No. 5.10 and 5.11.

Respectfully submitted,

s/ Matthew C. Kane
Gerard F. Pignato, OBA No. 11473
Matthew C. Kane, OBA No. 19502
Joshua K. Hefner, OBA No. 30870
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
Telephone:   405-239-6040
Facsimile:   405-239-6766
Email:       jerry@ryanwhaley.com
             mkane@ryanwhaley.com
             jhefner@ryanwhaley.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 3, 2020, I transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Douglas J. Shelton, Esquire
SHELTON & WALKLEY LAW GROUP
7701 South Western Avenue, Suite 201
Oklahoma City, Oklahoma 73139
Telephone: 405-605-8800
Facsimile: 405-601-0677
Email: dshelton@sheltonlawok.com

               s/ Matthew C. Kane
               For the Firm