IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) TAMMY COVINGTON, and <br> (2) JEFFREY COVINGTON <br><br>     PLAINTIFFS, <br><br> vs. <br><br> (1) CSAA FIRE AND CASUALTY INSURANCE, d/b/a AAA FIRE AND CASUALTY INSURANCE COMPANY, INC. <br><br>     DEFENDANT. | Case No. CIV-19-718-PRW |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S TRIAL BRIEF**

Plaintiffs respectfully submit the following Response to the Trial Brief filed herein by Defendant CSAA Fire & Casualty Insurance Company ("CSAA").

## **INTRODUCTION**

On the evening of August 8, 2017, Mr. Covington arrived home to find darkened wood around his floorboards near the HVAC closet. He also noticed standing water in the cracks of his bamboo flooring. The water extended from the walls of the HVAC closet into the dining room. Mr. Covington used a dustpan and towels to sop up the standing water, mainly the standing water under the HVAC unit. He also used two fans to assist in drying the moisture. Mrs. Covington returned home later that evening and saw her husband placing towels near the east side of the HVAC closet. He was also scooping water out from under the HVAC unit. She assisted him in using towels to absorb the standing water and dry

1

the floors. The water damage was mainly localized around their HVAC closet and throughout their hallway.

The following day, Mr. Covington borrowed two large air movers from a friend. He used one to pull air out from the subfloor and blow out into the garage, and another air mover to put pressure into the house from the east wall. Mr. Covington kept these air movers in and under the house for three days. August 8, 2017 was the only date the Covingtons observed standing water on their floors. About a month after the initial date of loss, the Covingtons first noticed bubbling in the wood floors. The floors were not wet at that time.

May 13, 2018 was the first time the Covingtons thought contact their insurance company regarding the extensive water damage. While celebrating the holiday, Mrs. Covington's brother, Ian Rupert, noticed discoloration of the floor and some bubbling. After learning there had been water damage to these floors nine months ago, Mr. Rupert advised them to make an insurance claim. On May 15, 2018, the Covingtons called CSAA to make the claim.  Following this phone conversation with CSAA, the Covingtons hired Mr. Rupert, who is also a Public Adjuster, to represent them on this loss. Mr. Rupert was then placed in charge of all contact with CSAA and additional issues regarding this claim.  Mr. Rupert is an experienced public adjuster and owner of Ian's Enterprise.

On May 25, 2018, CSAA field adjuster Alan Heise investigated the property alongside Mr. Rupert. While Mr. Heise inspected the property, Mr. Rupert remained nearby assuming Mr. Heise would have questions regarding Mr.

Rupert's mitigation and proof of loss. Mr. Heise remained disinterested in discussing any issues with Mr. Rupert. On June 1, 2018 CSAA hired Hi-Tech Plumbing & Leak Detect, Inc., to perform leak detection on the HVAC system, mainly the condensation drain line. Their report assumed an improper installation of the condensation drain contributed to the clogging and overflowing of the HVAC drain into the home. Also, according to Hi-Tech, the lack of proper crawl space ventilation caused high humidity and condensation on the wood under the home. On July 6, 2018, CSAA hired Boardwalk Floor Company, LLC, to inspect the property. Boardwalk determined the water damage is a result of an AC leak, which they "suspect" was leaking for quite some time, causing water to get trapped under the flooring and moisture barrier.

Mr. Rupert's opinion – like that of the Covingtons - is that the leak was a one-time clog of the HVAC condensate line. The Covingtons did everything they could to mitigate damage after the original date of loss. No amount of drying could fix the floors, as they were permanently damaged by the moisture. The damage Mr. Rupert observed in May 2018 is the same damage that initially occurred in August 2017.

CSAA initially denied the Covingtons' claim on July 10, 2018 because they asserted there was water damage throughout the home caused by improper construction (not enough ventilation in crawl space) and constant or repeated seepage of water over a period of time.

Don Sharp, Engineer, inspected the Covingtons' residence on July 6, 2018. Mr. Sharp prepared a report on behalf of the Covingtons, which indicated that a clog manifested in the drain line of the HVAC, which the property owners were unaware of for some time. It was not until the subfloor had become fully saturated, creating the water discharge to back up enough to become visible on the surface. Following receipt of the engineer report from Mr. Sharp, CSAA stood on its denial of the claim.

Mr. and Mrs. Covington bring this action seeking to hold their insurance company accountable for its improper conduct in the denial of their claim. Mr. and Mrs. Covington assert that CSAA's actions were intentional in claiming facts that it knew was not true for the denial of this claim and that CSAA should be responsible for any damages resulting from this improper conduct. Plaintiffs also seek an award of punitive damages, if allowed by the Court, in order to deter such conduct and denials in the future.

Plaintiffs now file this Response in order to set forth their response to CSAA's inaccurate assertions.

## ARGUMENT AND AUTHORITY

**I.    DEFENDANT'S CONTRACT CLAIMS**

The Plaintiffs' homeowners' policy with CSAA is an "all-risk" policy, not a "named-perils" policy. As discussed in *Switzer v. State Farm Fire & Cas. Co.*, 2007 WL 841111, at *3–4 (W.D. Okla. Feb. 7, 2007), Professor Couch explains the two types of policies as follows:

4

> "Named perils" or "specific perils" policies provide coverage only for the specific risks enumerated in the policy and exclude all other risks. "All-Risk" policies provide coverage for all risks unless the specific risk is excluded ....
>
> The purpose of an "All-Risk" policy is to insure losses when the cause of the loss is unknown or the specific risk was not explicitly contemplated by either party. This purpose is, in part, accomplished by a mechanism of burden- shifting as to which party bears the risk of an unexplained or uncontemplated loss. In an "All-Risk" policy, the insured has the initial burden to prove that the loss occurred. The burden then shifts to the insurer to prove that the cause of the loss is excluded by the policy. Under this burden-shifting mechanism, the insured does not need to prove the cause of the loss.
>
> Because an "All-Risk" policy is considered by many jurisdictions to provide broad and comprehensive coverage, some courts may conclude that the term "All-Risk" may raise the insured's expectations that the policy provides coverage for all losses that are not intentional or expected. However, this expectation should only be enforced by court if it is reasonable in light of the actual policy provisions or if there was a promise of coverage that the insurer may have induced [citing 7 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 101:7 (3d ed.1997) (footnotes omitted)].

In the Covingtons' case, the policy at issue states:

> SECTION I – PROPERTY COVERAGES
>    A. Coverage A – Dwelling
>       1. We cover:
>       a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling;
>
> SECTION I – PERILS INSURED AGAINST
>    We insure against risk of direct physical loss to property described in Coverages A, B and C.
>    We do not insure, however, for loss:
>         A. Under Coverages A, B and C:
>             1. Excluded under Section I – Exclusions;
>
> SECTION I – PERILS INSURED AGAINST
>    A. Under Coverages A, B and C

5

> (Paragraph 2.d is deleted and replaced by:)
>> a. Constant or repeated seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Here, the Covingtons have demonstrated that the loss at issue was caused by a clog in the condensate line – a cause of loss that was covered under the CSAA policy.

Oklahoma has adopted the efficient proximate cause doctrine. *See Shirey v. Tri– State Ins. Co.,* 1954 OK 214, 274 P.2d 386, 388–89. Under the efficient proximate cause doctrine, *"[i]f the insured successfully demonstrates that the proximate cause of the loss is covered under the policy,* the entire loss is covered notwithstanding the fact that an event in the chain of causation was specifically excluded from coverage. *Duensing v. State Farm Fire & Cas. Co.*, 2006 OK CIV APP 15, ¶ 16, 131 P.3d 127, 133 (citing *Kelly v. Farmers Insurance Company, Inc.,* 281 F. Supp.2d 1290, 1296 (W. D. Okla. 2003) (emphasis in original). Under this doctrine, once the predominant cause of the loss is identified, coverage turns on whether it is a covered or excluded cause of loss under the policy. Here, the leak caused by the clogged condensate line, is indisputably a covered cause of loss and is the efficient proximate cause of any and all damges. As noted in *Kelly v. Farmers Ins. Co., Inc.*, 281 F. Supp. 2d 1290, 1300 (W.D. Okla. 2003):

> [T]o contract around the [efficient proximate cause] doctrine, the policy provision intended to affect the circumvention must explicitly and specifically disclaim coverage for losses that arise from a combination of excluded and covered causes, regardless of the sequence in which the various causes occurred.

In CSAA's denial of Covingtons' claim they admit that the initial cause of the loss was the HVAC condensate line backup. However, they then claim it is not covered because damage was caused by constant or repeated seepage or leakage of water over a period of weeks, months or years, which is an exclusion. However, CSAA fails to note that all the water came from the HVAC condensate clog. CSAA also fails to address the <u>exception</u> to the exclusion, which states: **unless** such seepage or leakage of "water" or the presence or condensation of humidity, moisture or vapor is **unknown to all "insureds"** and is **hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure**." (Emphasis added).

CSAA also attempts to deny coverage with this language in the Section I – Exclusions portion of its policy:

SECTION I – EXCLUSIONS
    B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any <u>ensuing loss</u> … is covered.
       1. Weather conditions.
       2. Acts or decisions
       3. Faulty, inadequate or defective:
          b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compactions;
          c. Materials used in repair, construction, renovation or remodeling; or
          d. Maintenance;

> Of part or all of any property whether on or off the "residence premises".

CSAA denied the claim under this exclusion because they assert there was inadequate ventilation, which again allowed the "constant or repeated water" damage at the Covingtons' house. However, it fails to acknowledge that the only damages are to the floor and that any issue before or after August 8, 2017 was most certainly and undeniably <u>unknown to the insureds and hidden beneath the floors</u>, rendering it a covered loss.

If CSAA wishes to prove that the "cause" of Plaintiffs' loss was "constant or repeated seepage of [*sic*] leakage of water over a period of weeks, months, or years resulting in visible water damage throughout the home and mold in the furnace room", it has the burden of establishing this defense. CSAA also has the burden of proving that the insureds knew of the hidden water. *See, e.g.*, *Pitman v. Blue Cross and Blue Shield of Okla.,* 217 F.3d 1291, 1298 (10th Cir. 2000) (noting that "[a] basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred, <u>while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy</u>.") (emphasis added); *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992) ("It is a basic rule of insurance law that the insured carries the burden of showing a covered loss has occurred and the insurer must prove facts that bring a loss within an exclusionary clause of the policy."); *Gen. Acc., Fire & Life Assur. Corp. v. Hymes*, 1919 OK 363, 77 Okla.

20, 185 P. 1085, 1085 ("The burden of proof rests upon the insurer to establish the fact that death or injury has resulted from one of the excepted clauses enumerated in a policy of accident insurance."). Here, Defendant cannot provide sufficient proof the efficient proximate cause was either "constant or repeated seepage of water", or that the proximate cause occurred over a "period of weeks, months, or years resulting in visible water damage throughout the house."

## II.   BAD FAITH

Under Oklahoma law, an insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Newport v. USAA,* 2000 OK 59, 11 P.3d 190, 195 (citing *Christian v. American Home Assurance Co.,* 1977 OK 141, 577 P.2d 899, 901). The essence of a bad faith action "is the insurer's unreasonable bad-faith conduct, including the unjustified withholding of payment due under the policy." *Id.*, 11 P.3d at 195 (citation omitted).

It is CSAA's responsibility to **properly** investigate its insured's claim. *Brown v. Patel*, 2007 OK 16, 157 P.3d 117, 122 (noting that "a duty to *timely* and *properly* investigate an insurance claim is intrinsic to an insurer's duty to *timely* pay a valid claim") (emphasis in original). When presented with a claim by its insured, an insurer "must conduct an investigation reasonably appropriate under the circumstances" and "the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Newport v. USAA,* 2000 OK 59, 11 P.3d 190, 195 (citing *Buzzard*

*v. Farmers Ins. Co.* ["*Buzzard II*"], 1991 OK 127, 824 P.2d 1105). "The decisive question is whether the insurer had a 'good faith belief, **at the time its performance was requested**, that it had a justifiable reason for withholding payment under the policy." *Buzzard II,* 824 P.2d at 1109 (citing *Buzzard v. McDanel,* 1987 OK 28, 736 P.2d 157 [*Buzzard I*]) (emphasis added). "The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim." *Buzzard v. McDanel,* 1987 OK 28, 736 P.2d 157, 159 [*Buzzard I*.].

> As noted in *McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, 637 P.2d 583:
>
> [T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct….., and **if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case**. [637 P.2d at 587] [emphasis added].

CSAA intentionally ignored the causation statements of Covingtons, which established the water came from the HVAC condensate line clog, and they were unaware of this water damage until the damage became visible. CSAA ignored this evidence, which effectively chagned the coverage determination from a covered cause of loss to a non-covered cause of loss ("known constant or repeated seepage") in order to deny this claim. Defendant's duty was not simply to investigate Plaintiffs' claim. Rather, its duty was "to …*properly* investigate" this claim as an intrinsic part of its duty to pay a valid claim. *Brown v. Patel*, 2007 OK 16, ¶ 11, 157 P.3d 117, 122.

The evidence that will be presented at trial more than amply supports

a verdict finding that CSAA breached its duty of good faith and fair dealing to the Plaintiffs. CSAA's assertion to the contrary simply ignores the available evidence and should therefore be rejected.

Respectfully submitted,

By: s/Douglas J. Shelton
Douglas J. Shelton, OBA #8159
dshelton@sheltonlawok.com
SHELTON & WALKLEY LAW GROUP
7701 S. Western Ave., Suite 201
Oklahoma City, OK 73139
(405) 605-8800 - office
(405) 601-0677 - Facsimile
*ATTORNEY FOR PLAINTIFFS,*
*TAMMY COVINGTON AND JEFFREY COVINGTON*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Gerard F. Pignato, OBA #11473
Matthew C. Kane, OBA #19502
Joshua K. Hefner, OBA #30870
RYAN WHALEY COLDIRON JANTZEN
PETERS & WEBBER PLLC
400 North Walnut Ave.
Oklahoma City, OK  73104
jerry@ryanwhaley.com
mkane@ryanwhaley.com
jhefner@ryanwhaley.com
*ATTORNEYS FOR DEFENDANT*


/s/ Douglas J. Shelton
Douglas J. Shelton